Janet M. Herold
Regional Solicitor
Susan Seletsky
Counsel for FLSA
**Natalie Nardecchia**
Trial Attorney (CSBN #246486)
**Nancy E. Steffan**
Trial Attorney (CSBN #280958)
Office of the Solicitor
United States Department of Labor
350 South Figueroa Street, Suite 370
Los Angeles, California 90071-1202
Telephone: (213) 894-3284
Facsimile:  (213) 894-2064
Nardecchia.Natalie@dol.gov
Attorneys for the Plaintiff
Secretary of Labor

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THOMAS E. PEREZ**, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHWEST FUEL MANAGEMENT, INC., dba BREA CAR WASH & DETAIL CENTER,** a California corporation; **VAHID DAVID DELRAHIM**, an individual, and as managing agent of the Corporate Defendants; **MARTIN LIZARRAGA**, an individual, and as managing agent of the Corporate Defendants; **GOLDENWEST SOLUTIONS GROUP, INC.**, a California corporation; and **CALIFORNIA PAYROLL GROUP, INC.**, a California corporation.<br><br>Defendants. | Case No.: 2:16-cv-04547-FMO-AGR<br><br>**SECRETARY'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Hearing Date: January 19, 2017<br>Time: 10:00 a.m.<br>Location: 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012<br><br>Discovery Cutoff: February 10, 2017<br>Pretrial Conference: August 4, 2017<br>Trial: August 22, 2017 |

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that a hearing will be held on the Secretary's Motion for Sanctions for Spoliation of Evidence on Thursday, January 19, 2017 at 10:00 a.m. at the United States Courthouse, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012.

The Secretary moves the Court for an order granting his Motion for Sanctions for Spoliation of Evidence. This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Natalie Nardecchia in Support of the Secretary's Motion for Sanctions for Spoliation of Evidence, the Exhibits attached thereto, and oral argument, if heard, from the Secretary.

This motion is made following several conferences of counsel pursuant to L.R. 7-3 which took place on October 13, 2016, November 8, 2016, and December 19, 2016. The December 19, 2016 meet and confer was transcribed by a court reporter pursuant to Dkt. 41 (attached as Exhibit 8).

Dated:  December 22, 2016

M. PATRICIA SMITH
Solicitor of Labor
JANET M. HEROLD
Regional Solicitor
SUSAN SELETSKY
Counsel for FLSA
NANCY E. STEFFAN
Trial Attorney


  _/s/ Natalie Nardecchia_
NATALIE NARDECCHIA, Trial Attorney

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ……………………………………………………………………1

II. FACTUAL BACKGROUND……………………………………….……………...2

    A. Defendants' Duty to Preserve Evidence Was Triggered On July 14, 2015….2

    B. On August 31, 2016 the Secretary Expressly Requested that Defendants Produce Responsive Surveillance Footage, Text Messages, and Emails……......3

    C. Defendants Failed to Preserve Critical Videotaped Evidence, Text Messages, and Emails…………………………………………………………………………....5

        1. Video Recordings from Surveillance and/or Security Systems………...5

        2. Text Messages……………………………………………………………6

        3. Emails……………….……………………………………………………7

        4. Intentional Spoliation………………………………………….………8

    E. The Secretary Attempted Numerous Times to Resolve This Informally……..9

III. LEGAL ANALYSIS…………………………………………………………….12

    A. Courts Have the Inherent Authority to Issue Evidentiary Sanctions Where a Party Destroys Evidence after Being on Notice of Its Duty to Preserve………..12

        1. Defendants Were On Notice of the Duty to Preserve but Failed to Do So......................................................................................13

        2. The Secretary Has Suffered Extreme Prejudice………………………..16

        3. Belated Production (Assuming Any) Would Not Cure the Prejudice….17

    B. Federal Rule 37(e) Also Provides for Sanctions for Spoliation of Electronically Stored Information Specifically…………………........................19

        1. Sanctions under Rule 37(e)(1)……………………………....................19

        2. Sanctions under Rule 37(e)(2)……………………………....................20

    C. Federal Rule 37(c)(1) Provides for Evidence Preclusion for Failure to Disclose and Produce…………..…………………………………………....................22

IV. CONCLUSION ………………………………………………………………….23

# **TABLE OF AUTHORITIES**

**CASES**

Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806-07 (7th Cir. 1995)…………..13

Anheuser-Busch, Inc. v. Natural Bev. Distribs., 69 F.3d 337, 348 (9th Cir.1995)…..21

Apple, Inc. v. Samsung Electronics Co. Ltd., 888 F. Supp. 2d 976, 991, 989 (N.D. Cal. 2012)……………………….…………………………………………....12, 13

Apple, Inc. v. Samsung Electronics Co. Ltd., 881 F. Supp. 2d 1132, 1137 (E.D. Cal. 2012)……………………………….. ……………………………… .14, 15, 21

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)…………………………..12, 13, 22

Financial Security, Inc. v. Freedom Equity Group, LLC, 2016 WL 5870218, at * 2-3 (N.D. Cal. October 7, 2016)…… .…………………………………………………....20

Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1341 (9th Cir. 1985)………..13

G-K Properties v. Redevelopment Agency of City of San Jose, 577 F.2d 645, 647–48 (9th Cir.1978)…… …………………………………………………....18, 22

Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993)… …………………………..12, 13

Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993)… …………………..13, 18

Hoffman v. Construction Protective Services, Inc., 541 F.3d 1175, 1177, 1180 (9th Cir. 2008)… ……………………………………….………………………..22

Hooks v. Forman Holt Eliades & Ravin LLC, No. 11 Civ. 2767 (LAP), 2015 WL 5333513, at *4 (S.D.N.Y. Sept. 14, 2015)………………………………………………22

In re Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006).. passim

Lee v. Walters, 172 F.R.D. 421 (D. Or.1997)……………………………………18

Leon v. IDX Systems Corp., 2004 WL 5571412, *3 (W.D. Wash. 2004)……………12

Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006)………………………13

N. Am. Watch Corp. v. Princess Erm. Jewels, 786 F.2d 1447, 1451 (9th Cir. 1986)….18

O'Berry v. Turner, 2016 WL 1700403 (M.D. Ga. Apr. 27, 2016)…………....……..20, 21

Owen v. No Parking Today, Inc., 280 F.R.D. 106, 111 (S.D.N.Y. 2011)…………..19

State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc., 523 F. Supp. 2d 992, 997 (D. Ariz.

2007)………………………………………………………………………21

Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir.

1992)…… ………………………………………………………12, 13

Wm. T. Thompson Co. v. GNC, 593 F. Supp. 1443, 1455 (C.D. Cal.1984)………..3, 12

Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001)…22

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)…..3, 13, 14, 15

**OTHER**

Fed. R. Civ. P. 37(e) …………………………………………12, 19, 20, 21, 22

Fed. R. Civ. P. 37(c) …………………………………………………………22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this Motion, the Secretary seeks sanctions against Defendants and their counsel for spoliation of evidence.  Defendants operate car washes where their employees are systematically instructed to not clock in for work until the business is sufficiently busy and to clock out during slow periods.  The workers are not paid for the time they are clocked out, even though they must wait on the premises until the next customer comes in.  The Secretary filed the Complaint in this action alleging that Defendants failed to pay minimum wage and/or overtime to their employees for all hours they worked, and failed to maintain accurate time and payroll records, in violation of the FLSA.

Defendants maintain a multi-camera video recording system focused on the areas where employees work and wait at their car washes.  Such evidence, if it was kept, would likely be extremely probative as to the hours worked by the employees.  Defendants testified that no efforts have been made to preserve the video recordings, which routinely delete and cannot be accessed thereafter.  Given that Defendants have failed to maintain accurate records of when their employees actually worked, the destroyed video footage is the best documentary evidence of employee hours worked.  This evidence is no longer available to the Secretary because Defendants have continued to delete it, despite having been put on notice back in July of 2015 of the duty to preserve potentially relevant evidence.  Defendants have also testified to deleting and not preserving text messages regarding *inter alia* scheduling and hours worked, and to having lost access to an entire email account used by Defendants.

Notably, Defendants have not produced any video surveillance footage, text messages, or emails to the Secretary.  Defendants testified that they have made no effort to locate or preserve such evidence, and have admitted destruction of evidence.  Defendants are no strangers to their obligations as litigants – Defendant Delrahim is a highly sophisticated businessman who operates a network of roughly 100 car washes,

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    1

gas stations, and petroleum companies, and has been involved in myriad lawsuits relating to these businesses.  Defendants' counsel is also keenly aware of the requirements to preserve evidence.

The Secretary asks the Court to sanction Defendants to remedy their admitted spoliation of evidence and the resulting severe prejudice to the Secretary's case. Defendants' wanton destruction of extremely probative evidence and failure to follow even the most basic rules regarding preservation warrants imposition of the most severe sanction – that is, a default judgment finding Defendants liable for the FLSA violations with which they are charged.  Even if, assuming *arguendo*, Defendants are able to belatedly produce some of this evidence to the Secretary, spoliation sanctions are nevertheless warranted given the undue delay and severe prejudice caused to the Secretary's ability to set forth his case.

## II.     FACTUAL BACKGROUND

### A.     Defendants' Duty to Preserve Evidence Was Triggered On July 14, 2015

On July 14, 2015, the Wage Hour Division ("Wage Hour") of the Department of Labor ("Department") sent a letter to Defendants Delrahim and Lizarraga, advising them that Brea Car Wash was under federal investigation to determine its compliance with the provisions of the FLSA.  See Exhibit 1, attached to Declaration of Natalie Nardecchia ("Nardecchia Decl.").[1]  The Wage Hour letter requested records from Defendants, including time and payroll records for all employees.  Id.  Throughout its investigation, the Department continued to communicate with Defendants and their counsel, and explained on February 17, 2016 its finding that back wages were owed to employees for minimum wage and overtime violations.  Nardecchia Decl. ¶ 21.

On June 8, 2016, the Secretary's counsel sent a letter to Defendants' counsel advising that the case had been referred for litigation and providing Defendants with an additional opportunity to informally resolve the matter.  See Exhibit 2.  The letter also

---

[1] All exhibits are attached to Nardecchia Decl., filed concurrently herewith.

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                                    2

stated, in pertinent part:

> [A]s potential litigants, Southwest Fuel and its agents, officers, representatives, employees, custodians, contractors, successors, parties in interest and all others with evidence that is potentially relevant to this case are under an obligation to preserve and not destroy such evidence. Southwest Fuel also has an obligation to instruct all individuals with potentially responsive documentation to affirmatively preserve and retain such documentation. [Citations to three cases omitted].

Id.

As demonstrated below, Defendants failed to preserve and not destroy, and failed to instruct all individuals with potentially responsive documents to preserve and retain them. See, e.g., Wm. T. Thompson Co. v. GNC, 593 F. Supp. 1443, 1455 (C.D. Cal.1984); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); In re Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (cases cited in June 8, 2016 letter).

**B.    On August 31, 2016 the Secretary Expressly Requested that Defendants Produce Responsive Surveillance Footage, Text Messages, and Emails**

On August 31, 2016, the Secretary propounded his First Set of Requests for Production of Documents on Defendants Southwest Fuel, Delrahim, and Lizarraga. See Exhibits 3-5. The Secretary's document requests defined "document" broadly to include "emails, text messages, videos, DVDs, CDs…" Id. The Secretary also specifically requested documents regarding: "hours worked by Employees" (Request 1); "wages and other remuneration paid to employees" (Request 2); "work schedules" (Request 3); "gross income from sales" (Request 11); "employee manuals, handbooks, training materials, or other written guidelines regarding employment" (Request 13); "the recording or documenting of hours worked" (Request 14); "All written communications, including but not limited to emails, text messages, notes, and posters, from you or your agents, managers, employees, or representatives, to any employee that pertain in any

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    3

way to hours of work, terms or conditions of employment, wages, tips, commissions or any other compensation for work, or recording of time, such as clocking in or clocking out" (Request 17); "any communications – electronic or otherwise" with employees regarding this case or the underlying investigation" (Request 18); "All recordings of any type made as the result of surveillance and/or a security system at all locations where your employees have worked during the subject period." (Request 20); "payment of, or calculation of, bonuses or commissions to employees" (Request 25); and "All written communications, including but not limited to emails, text messages, notes, or complaints, to you or your agents, managers, employees, or representatives, from any employee that pertain in any way to hours of work, terms or conditions of employment, wages, tips, commissions or any other compensation for work, or recording of time, such as clocking in or clocking out." (Request 35).  See Exhibit 3.

All of the spoliated documents at issue – video surveillance recordings, text messages, and emails – are responsive to one or more of the Secretary's requests. See, e.g. Exhibits 6 and 7 (outlining the document requests and spoliated documents responsive to each); see also Exhibits 3-5 and requests above that specifically request video surveillance recordings, text messages, and emails.

In response to the August 31, 2016 document requests, Defendants provided a combined total of thirty-three (33) pages of documents.  Then, not until October 28, 2016 did the Secretary receive another (albeit woefully incomplete) production.  See Dkt. 39, p. 4:20-27.  Again, no video footage, responsive text messages, or emails have been produced to date. See, e.g., Exhibit 7; Nardecchia Decl. ¶ 9; see also December 19, 2016 Meet and Confer Transcript ("Meet and Confer Tr.").[2]

---

[2] The meet and confer transcript of December 19, 2016 is attached hereto as Exhibit 8.

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                                   4

**C.     Defendants Failed to Preserve Critical Videotaped Evidence, Text Messages, and Emails**

    1.     Video Recordings from Surveillance and/or Security Systems

There are roughly thirty cameras at Brea – ten or eleven of which are currently operating. Liz. Tr. 198:6-20.[3]  Notably, there are functioning cameras where the car wash employees work, and a camera in the outside area where car wash employees wait to clock-in. Liz. Tr. 204:14-23; 281:12-20 ("depends where [employees are] hanging out; you might catch them on camera").  Defendants also maintain video surveillance cameras at their other car wash locations. Del. Tr. 303:23-304:2.

Lizarraga testified that he can watch the video footage in his office, but that it is not being saved, he has not been asked to save the footage, and that it retains "roughly two weeks" worth of footage and then "it's kind of like your phone, it drops off." Liz. Tr. 197:14-198:5; 199:1-200:18; 201:4-13.  After that, "[y]ou just don't have access to it if you are trying to view something that far back." Liz. Tr. 205:10-21.

Delrahim similarly testified that the video footage from the surveillance cameras at Brea is kept for only "about 30 days." Del. Tr. 76:11-14.  Delrahim testified that he has no knowledge of whether there has been any effort to preserve the surveillance footage. Del. Tr. 133:9-22; 134:2-18.  Nor has he made any effort to ask whether there is any video footage that exists. Del. Tr. 134:25-135:17.  He does not know whether there is any video surveillance footage that has been erased or destroyed since July 2015. Del. Tr. 135:19-136:3.

Following this testimony, Defendants' attorneys remarkably never offered any explanation about the destroyed footage, and have instead offered shifting justifications as to why no footage has been produced.  Not until November 17, 2016 (almost three

_____

[3] Excerpts from the depositions of David Delrahim ("Del. Tr.") and Martin Lizarraga ("Liz. Tr.") are attached to Nardecchia Decl. as Exhibits 15 and 16 respectively.

months after the Secretary's document demands) did Defendants' counsel state that they "need[ed] to engage a third party vendor," to "ensure the footage is being properly maintained." See Exhibit 9, pp. 2-3. Defendants' counsel has also claimed that it is too expensive and too burdensome to maintain or produce the video surveillance footage. Id.; see also Meet and Confer Tr. 41:9-45:22.

As Defendants testified to the destruction of footage, they have not produced any footage, and their counsel has only offered shifting explanations for why none has or will be produced, the inescapable conclusion is that this evidence (or at least most of it), has been permanently destroyed.

2.    Text Messages

Lizarraga testified that he has back and forth text message communications with Brea employees for various reasons, including regarding their schedules and work-related questions. Liz. Tr. 127:25-133:18; 140:1-4; 190:22-191:7; 264:23-265:5. In addition, Lizarraga testified that he and his supervisor, Michael Watson (Delrahim's General Manager over all car wash operations and Goldenwest employee, see Del. Tr. 62:18-63:8), send one another work-related text messages. Liz. Tr. 189.17-190:2. Felipe Perez, Assistant Manager at Brea, also texts employees on rainy days if they are "adjusting the schedules" and to notify employees if the car wash will be closed.[4]

Even Delrahim recalled some texts he received regarding the operation of the car wash,[5] but he made no effort to search for responsive text messages. Del. Tr. 302:1-12. When asked whether he had ever deleted any text message in the last two years, Delrahim admitted, "I started deleting some so I have more – you know, more storage."

_____

[4] Information regarding rainy days, and purported scheduling, is important to determining hours worked. In the car wash industry, as Lizarraga put it, you may call [employees] off or call them in later." Liz. Tr. 140:5-15.

[5] Delrahim evasively testified that "it is possible" that he has sent or received work related text messages with car wash managers since 2013. Del. Tr. 158:7-159:1; 160:6-18. He testified that General Manager Watson has sent him texts. Del. Tr. 160:20-25; 161:16-:162:9.

1  Del. Tr. 168:11-15.

2         Yet, despite this evidence that the managers of the car wash texted each other and

3  employees about the operation of the car wash and scheduling, no text messages have

4  been produced.  As Lizarraga's attorney testified at the deposition that Lizarraga "has no

5  control over what a – T-Mobile does, because sometimes they will drop off," and that

6  Lizarraga does not have "an obligation to try to contact T-Mobile and have them change

7  or try to preserve things," Liz. Tr. 133:20-134:20, it appears that this evidence, too, has

8  been destroyed and continues to "drop off" or be "deleted" as Defendants appear to have

9  done nothing to comply with their obligation to find, preserve, and maintain relevant

10  evidence.

11        Lizarraga testified that he purportedly looked for responsive text messages in an

12  "old" phone he "had from before," but did not find any.  Liz. Tr. 127:10-21.  When

13  asked during deposition if he had text messages on his current phone from any Brea

14  employees, Lizarraga testified, "Possibly, yeah."  Liz. Tr. 133:13-18.  However, his

15  counsel prohibited him from reading any possible text messages into the record during

16  deposition, or even informing the Secretary as to whether or not any text messages had

17  been preserved, leaving the Secretary in the dark as to the scope of destruction.  Liz. Tr.

18  115:6-15; 116:1-4; 124:5-21; 318:3-319:6; 319:15-320:1; 322:11-323:15; 324:3-16;

19  329:11-330:8.

20        Despite Defendants' testimony to "deleting" and not saving responsive text

21  messages, and various correspondence from the Secretary, there has been radio silence

22  from Defendants' attorneys, who have produced no text messages or denied that text

23  messages have been permanently destroyed.

24        3.    Emails

25        Both Lizarraga and Delrahim testified to using email for work, see Del. Tr.

26  143:14-18; Liz. Tr. 112:1-18, though not one such email has been produced.  Lizarraga

27  testified that he has sent and received emails from his work email account on various

28  topics related to employees including: problems with the payroll records that require his

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    7

review or correction (Liz. Tr. 111:6-23), new versions of the employee handbook that require employees' signatures (Id. 70:1-71:1), the breaks and lunch periods acknowledgement that employees are required to sign (Id. 79:23-80:22), and written disciplinary warnings (Id. 90:11-91:2). Delrahim again evasively testified that it was "possible" that he exchanged emails with managers of the various car washes. Del. Tr. 145:15-146:19. When asked if he has access to emails he has sent or received since 2013, Delrahim responded: "I – I delete my emails.... I delete them." Del. Tr. 147:9-25. Delrahim also testified that he made no effort to search his email for emails responsive to the Secretary's document requests, nor had he instructed anyone else to do so. Del. Tr. 289:14-21; 292:10-18; 301:4-24.

Significantly, Lizarraga testified that he "no longer" has access to one work email account or "even know[s] if it exists." Liz Tr. 112:1-113:5. Lizarraga's current work email address is breacarwash@gsg.email. Liz. Tr. 112:1-9. Lizarraga evasively testified that he "[p]ossibly" sent an email to Delrahim, "possibly" found responsive emails, but did not give anyone any emails he thought might be responsive. Liz. Tr. 122:19-25; 124:2-15; 125:25-127:8; 208:11-14.

Again, despite this testimony, and various correspondence from the Secretary, Defendants' attorneys have not produced any emails or denied that Lizarraga's Brea email account, or any other emails, have been permanently destroyed.

4.   Intentional Spoliation

There is no question in this case that evidence has been destroyed, that no litigation holds – much less sufficient litigation holds – have been placed by Defendants, that no one has been asked to locate, identify, or preserve documents, and that no one has been asked to refrain from destroying any documents.[6]

_____

[6] In addition to the above-mentioned testimony, Delrahim testified that he does not know what a litigation hold is (Del. Tr. 292:20-293:1), does not know whether anyone has been asked to suspend or refrain from document destruction (Del. Tr. 293:5-294:9, that he made no effort to look for responsive documents, that he did not ask any

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    8

Even after Defendants testified to the destruction of evidence, they have failed to produce any surveillance footage, emails, or text messages or provide any explanation as to why they have not been produced or what, if any, efforts are being made to attempt to retrieve the destroyed evidence. Defendants refuse to explain the scope of the spoliation or take steps to address it. This despite the fact that during Lizarraga's November 8, 2016 deposition, the Secretary put Defendants and counsel on clear notice that he would be moving for sanctions for spoliation based on prejudice to the Secretary – pointing to *inter alia* the destruction of video footage and the lack of any efforts to preserve documents, including an entire e-mail account for Brea that Lizarraga could no longer "access."[7] Liz. Tr. 318:24-319:6; 322:11-323:15; 324:3-14.

## E.    The Secretary Attempted Numerous Times to Resolve This Informally

As noted above, on November 8, 2016, counsel for the Secretary engaged in an extensive on-the-record meet and confer with defense counsel regarding the Secretary's motion for sanctions. This followed numerous meet and confer phone calls and letters from the Secretary.

In addition, on October 13, 2016, the parties had an in-person meet and confer at the Secretary's office to discuss the substance of the Secretary's anticipated motions. See Exhibit 10. Defendants agreed at this meeting to make a "complete document

---

of his employees to look for responsive documents, that he does not know if any person looked for responsive documents, and that he deletes his text messages and emails. Del. Tr. 147:9-25; 289:14-21. Delrahim signed verifications under penalty of perjury for both Southwest Fuel and himself to the Secretary's document demands. See Exhibit 17.

[7] Counsel for the Secretary stated, "For the sake of our spoliation issue," the Secretary needs to ask Lizarraga more questions such as "whether he was asked to save documents," but defense counsel refused to permit Lizarraga to answer because he was "exhausted." Liz. Tr. 325:13-22. The Secretary again put his concerns of spoliation on the record, and the need for Lizarraga to read any possible text messages to employees into the record or permit the Secretary to take a photograph of the text messages. Liz. Tr. 326:16-327:8. The Secretary provided defense counsel the opportunity to review the text messages first but defense counsel refused. Liz. Tr. 327:22-24.

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    9

1  production" and produce a privilege log by "no later than **Friday, October 21, 2016**."
2  Id. (emphasis in original).  Defendants' counsel never even disclosed the existence of
3  any emails, text messages, or video surveillance footage at the October 13, 2016 in-
4  person meet and confer, yet they identified different categories of responsive documents
5  that they were not going to produce.  See id.

6      Not until October, 27, 2016, did Defendants – for the first time – inform the
7  Secretary of the existence, at some point, of responsive video surveillance footage.
8  Exhibit 11, p. 1.  As memorialized in an October 28, 2016 email, the parties agreed on
9  October 27, in person, that the "first priority is for the footage that currently exists be
10  produced by Defendants to the Secretary as soon as possible (as it's responsive to the
11  Secretary's document demands that were served on 8/31/16)."  Exhibit 12.

12      To reiterate, Defendants' counsel has never provided any footage or even
13  informed the Secretary as to what, if any, footage purportedly exists – despite numerous
14  attempts by the Secretary to ascertain this information.  Defendants' sworn testimony is
15  that the footage is destroyed after two weeks or thirty days, and it is not being preserved.

16      On October 31, 2016, the Secretary sent another email attempting to meet and
17  confer.  Exhibit 11.  Defendants' counsel responded evasively by stating, "The
18  remaining issues were addressed during our in-person meeting on October 13, 2016."
19  Id.  The Secretary responded by repeating his request to know if "responsive documents
20  are currently being withheld" and, for surveillance footage, to request a date of
21  production, if any.  Id.  Defendants refused to answer these direct questions.

22      Attempting one last time before the depositions to receive an answer, the
23  Secretary wrote a November 4, 2016 email, setting forth the Secretary's belief that
24  Defendants were improperly withholding (or had destroyed) emails, text messages, and
25  video surveillance footage.  Exhibit 13.  The Secretary reiterated the need to receive and
26  review all documents (if any) before the depositions – otherwise "the Secretary will be
27  unduly prejudiced."  Id.  Defendants did not respond or produce any documents.
28

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    10

On November 10, 2016, following Lizarraga's deposition, the Secretary memorialized by email the notice provided on the record that the Secretary would be moving for sanctions for spoliation of evidence. Exhibit 14.  The Secretary also provided Defendants with a detailed nineteen (19) page document on November 28, 2016 highlighting "the bases (including deposition testimony)" for the motions. Exhibit 6. Again, silence from Defendants.

On December 19, 2016, the parties held an in-person meet and confer on the record, consistent with the Court's Order, see Dkt. 41.  See Exhibit 8.  With regard to the video recordings, the Secretary's counsel referred to Defendants' testimony that "there hasn't been any preservation of the footage."  Meet and Confer Tr. 37:18-38:4.  Defense counsel offered countless convoluted explanations for not having produced any footage, asserted it was too burdensome and expensive to "retain" footage, and refused to produce any that purportedly exists. Id. at 38:5-45:25.  Defendants' own testimony is that video recordings have been destroyed and it stands to reason that defense counsel would have corrected the record if possible, but they did not.  Similarly, with regard to text messages, counsel for Defendants did not deny that responsive text messages have been permanently destroyed, which is consistent with Defendants' testimony. Id. at 35:4-37:13.  Notably, the only step toward preservation that defense counsel identified was on November 8, 2016 – during Lizarraga's deposition, when the Secretary specifically asked Lizarraga about text messages – and where both parties' attorneys asked him to preserve text messages going forward. Id. at 35:11-23; Liz. Tr. 134:2-6.  It is unclear if he did even that as none have been produced.  Defendants' testimony is that Delrahim deletes his text messages, and Lizarraga failed to preserve his.  As to emails, counsel for Defendants again did not deny that Lizarraga's entire Brea email account has been permanently destroyed, or know if other responsive emails are "gone," nor did they, at this very late stage in discovery, know if there are any "retention or back-up systems" in place to preserve emails.  Meet and Confer Tr. 32:12-35:3.

### III.   LEGAL ANALYSIS

**A.   Courts Have the Inherent Authority to Issue Evidentiary Sanctions Where a Party Destroys Evidence after Being on Notice of Its Duty to Preserve**

District courts have the power to sanction parties that breach their duty to preserve evidence, either through the discovery misconduct provisions of Rule 37, or their inherent authority to manage their cases.  Courts are vested with a range of implied powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).  Among them, federal courts possess inherent authority to make evidentiary rulings and levy sanctions against a party that prejudices its opponent through the destruction or spoliation of relevant evidence. See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); see also Leon v. IDX Systems Corp., 2004 WL 5571412, *3 (W.D. Wash. 2004); see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992); see also In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006).

"Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information." Wm. T. Thompson Co., 593 F. Supp. at 1455.  A litigant is "under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." Id.; see also Apple, Inc. v. Samsung Electronics Co. Ltd., 888 F. Supp. 2d 976, 991, 989 (N.D. Cal. 2012) ("Apple II") (spoliation occurs where a party destroys or alters material evidence or fails to preserve property for another's use as evidence in pending or reasonably foreseeable litigation).

Before sanctioning a party for spoliation, the court must first determine whether the spoliator possessed a duty to preserve the evidence at issue. See Leon, 2004 WL

5571412 at *3.  Upon locating a duty to preserve, the court considers the prejudice suffered by the non-spoiling party and the level of culpability of the spoliator.  See id.  A party's spoliation need not have been in bad faith to warrant the imposition of sanctions. See Glover, 6 F.3d at 1329; In re Napster, Inc., 462 F.Supp.2d at 1066.

Courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation.  See Glover, 6 F.3d at 1329; see also Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993) (quoting Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1341 (9th Cir. 1985)) (default judgment appropriate in the absence of bad faith where the punished conduct was merely within the litigant's control).  That said, the spoliator's motive or degree of fault is relevant to the court's choice of sanctions.  Id. at 1066-67.  Appropriate sanctions include an adverse inference instruction, exclusion of evidence proffered by the spoiling party, and dismissal or default.  Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006); Glover, 6 F.3d at 1329; see also Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806-07 (7th Cir. 1995) (affirming that destruction of material evidence warranted dismissal); see also Chambers, 501 U.S. at 45 (noting that "outright dismissal . . . is a particularly severe sanction, yet is within the court's discretion").

  1. <u>Defendants Were On Notice of the Duty to Preserve but Failed to Do So</u>

Defendants, as well as their counsel, were on actual, written notice of Defendants' obligation to preserve evidence as early as July 14, 2015, when potential claims under the FLSA were specifically identified in written correspondence sent by Wage Hour. See Exhibit 1.  The duty to preserve evidence attaches even before litigation is ever initiated.  See Unigard, 982 F.2d at 365, 369 (upholding district court's exclusion of plaintiff's expert testimony based on evidence destroyed by plaintiff two years before filing suit); Apple II, 888 F.Supp.2d at 991; In re Napster, Inc., 462 F. Supp. 2d at 1067 ("[a]s soon as a potential claim is identified; a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.") (Emphasis added) (quoting Zubulake, 220 F.R.D. at 216 ("[t]he duty to preserve

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE    13

1  documents attaches 'when a party should have known that the evidence <u>may be relevant</u>
2  <u>to future litigation</u>.'") (Emphasis added)).

3      Defendants' counsel appears to concede that Defendants' duty to preserve was
4  triggered as of July of 2015, when the investigation initiated. <u>See</u> Meet and Confer Tr.
5  36:9-21. They have never argued otherwise. Defendants should have recognized the
6  direct relevancy of the video footage to determining which employees worked and
7  during which hours, as information concerning hours worked was asked of Defendants
8  back in July 2015. Defendants should have also realized the text messages and Brea
9  email account contained relevant information on these issues, as well as on employer
10  status (also requested back in July 2015).

11      Thereafter, on June 8, 2016, the Secretary's counsel specifically put Defendants
12  and defense counsel on notice of the duty to preserve all "potentially relevant"
13  information. Exhibit 2.

14      On June 23, 2016, the Secretary filed his Complaint alleging that Defendants had
15  violated various provisions of the FLSA. (Dkt. 1). By this time, Defendants certainly
16  knew of the existence of <u>actual</u>, pending litigation brought by the Secretary and was,
17  again, clearly under a duty to preserve evidence relevant to the litigation. <u>See</u> <u>In re</u>
18  <u>Napster, Inc.</u>, 462 F. Supp. 2d at 1067.

19      On August 31, 2016, Defendants were on actual, written notice that the Secretary
20  was requesting the precise documents that Defendants destroyed when it was served
21  with the Secretary's RFPs.

22      Despite Defendants' meritless argument to the contrary, each of the Defendants
23  had a duty to "identify, locate, and maintain," and then produce, responsive documents.
24  <u>Apple, Inc. v. Samsung Electronics Co. Ltd.</u>, 881 F. Supp. 2d 1132, 1137 (E.D. Cal.
25  2012) ("Apple I") ("The duty to preserve evidence also includes an obligation to
26  identify, locate, and maintain, information."). Defense counsel was also under an
27  obligation to "take affirmative steps to monitor compliance so that all sources of
28  discoverable information are identified and searched." <u>Zubulake</u>, 220 F.R.D. at 216.

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE          14

Defendants failed to take reasonable steps to preserve evidence as required. "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." In re Napster, Inc., 462 F. Supp. 2d at 1070 (quoting Zubulake, 220 F.R.D. at 218); Apple I, 881 F.Supp.2d at 1147 (where a party failed to modify its policy of automatically deleting emails after it should have been aware that litigation was possible, and failed to ensure that its instructions to preserve relevant emails were followed, that party's "conscious disregard" for its duty to preserve evidence constituted a willful violation of that duty).

The spoliation is willful here as well, where no litigation holds were put in place and Defendants' practice of having the video footage automatically "drop off" or delete continued unabated. Significantly, Defendants have never stated if or when their automatic destruction practice ended or shed any light on the extent of the destruction. As no footage has or will be produced, the Secretary must seek redress from the Court. Nor did Delrahim ever change his practice of deleting his text messages to have more storage. Even Lizarraga, who may have tried to find his text messages, admittedly failed to preserve them, and cannot even access, or know if an entire Brea email account has been permanently destroyed. Defendants are not aware of any litigation holds or efforts to identify, locate, and maintain such relevant information.

Defendants' failure to preserve evidence is all the more egregious given that Defendants were, at all relevant times, represented by counsel who also had actual, written notice of the potential, then actual, litigation at hand. Moreover, only roughly twenty-five (25) agents and managers work at Defendants' corporate office in Agoura Hills and there is only one manager (Lizarraga) and one assistant manager at Brea. This is not an overwhelming number of individuals to place on litigation hold notice. It is evident that Defendants failed to comply with their obligation to suspend any existing practices or policies related to deleting or destroying files and preserve all relevant documents related to the litigation. See In re Napster, Inc., 462 F. Supp. 2d at 1070.

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    15

Defendants were obligated to retain documents – and to "communicate those obligations to employees in possession of discoverable materials[,]" id. (citation omitted), which they clearly failed to do.  The facts in this case are worse than in Napster or Apple I, as Defendants: failed to suspend document destruction policies or practices; failed to issue any litigation hold notices – including to named Defendants; failed to make any effort to follow up with their employees and agents; and failed to monitor, or even determine if any preservation efforts were taken whatsoever.

2.  The Secretary Has Suffered Extreme Prejudice

Because Defendants spoliated the aforementioned evidence, the Secretary has, and will suffer, enormous prejudice at trial as he is unable to review and utilize the destroyed video footage, text messages, and emails to prove his case in chief.  Nor will the Secretary be able to utilize the destroyed evidence to test Defendants' affirmative defenses and cross-examine witnesses.  The evidence has been destroyed by Defendants and is now lost.  Defendants' spoliation has rendered the evidence incomplete and any belated production (assuming there will be any) would limited to what Defendants preserved long after litigation began.  Defendants have therefore denied both the Secretary and the Court the opportunity to fully examine this case.

Most egregious is the probative nature of the videotape evidence.  These cameras were on throughout the work day, and focused on employees, purportedly in order to prevent or address allegations of theft or damage to customer vehicles.  Thus, when customers complained about vehicles being damaged, or, a customer's possession being stolen, Defendants used the video evidence to show, that, for example, the customer's cell phone was not stolen.  The footage would show which employees were working and during which hours.  Defendants have denied the Secretary the opportunity to review and utilize the footage as proof of hours employees actually worked, and to demonstrate that Defendants' purported records of employees' hours are inaccurate.

It is difficult to imagine much greater harm to a litigant than what Defendants

have done to the Secretary here.  The lost footage goes to the core issues in this litigation. The Secretary has alleged minimum wage, overtime and recordkeeping violations of the FLSA and falsification of records.  The actual hours employees worked and Defendants' records are at issue.  The security footage from Defendants' onsite cameras, which capture employees working, is the most reliable documentary account of the dates and times employees actually worked and is therefore highly probative of the Secretary's central allegations.  Indeed, no more probative evidence of the hours employees worked, other than the workers' own testimony, can exist.  As Defendants know the massive number of hours that they did not pay their employees for, and the powerful effect the video evidence provides in supporting the worker testimony, the destruction of this highly relevant evidence would seem to be in their interest.

The deleted text messages and email account would have also provided important documentary proof regarding how and when Defendants scheduled their workers, directed them to arrive at work, "adjusted" schedules on rainy days, the hours worked, employer status of each of the Defendants, and myriad work-related issues – the full breadth of which the Secretary and the Court will now not know.

Moreover, the prejudice to the public interest also warrants due consideration. The Secretary is charged by Congress to actively enforce the FLSA, and to that end, is eager to promptly try this case and vindicate these employees' rights.  The public interest demands swift resolution of this dispute, as these car wash employees have been deprived of the rights and safeguards afforded by the FLSA, including federal minimum wage, and have been required to work numerous hours without compensation, all for Defendants' benefit.

3.    Belated Production (Assuming Any) Would Not Cure the Prejudice

It is beyond dispute that evidence has been destroyed and that Defendants have failed to produce any responsive footage, emails, or text messages.

If – assuming *arguendo* that documents, or a subset of them, have not been

permanently destroyed – Defendants belatedly produce documents (or the select documents Defendants chose to preserve and produce), the Secretary has still been prejudiced greatly.  In Perez v. Shippers Transport Express, Inc. 2:13-cv-04255-BRO-PLA (C.D. Cal. July 8, 2014),[8] District Court Judge Reid O'Connell found that the Secretary had been prejudiced by the opposing party's deletion of some text messages despite assurances of belated production.  The Court found the defendant's argument that the Secretary was not prejudiced "because trial is still six months away" to be "unpersuasive," noting:

> A great deal of time and strategic planning goes into preparing for a trial, and the existence or nonexistence of certain facts can shape a party's entire approach to preparing for trial. It is largely a recognition of how much preparation a trial entails that leads courts to set discovery cutoff dates far in advance of trial. *[Citations omitted]*. Six months is not as much preparation time as Shippers characterizes it to be, and Shippers has not even suggested when it might be able to finish any supplemental production. Thus, even if Shippers produces all the missing documents to the Secretary, the Secretary is still prejudiced by Shippers' conduct simply because the Secretary's counsel will be restricted in the time she has to review the evidence and prepare for the December 1 trial.

Indeed, the Ninth Circuit has "repeatedly" rejected the argument that "[b]elated compliance" precludes the imposition of sanctions.  Lee v. Walters, 172 F.R.D. 421 (D. Or.1997) (citing N. Am. Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447, 1451 (9th Cir. 1986); Gill Indus., Inc., 983 F.2d at 947; G-K Properties v. Redevelopment Agency of City of San Jose, 577 F.2d 645, 647–48 (9th Cir.1978) ("last minute tender of discovery does not cure effects of discovery misconduct")).

Furthermore, Defendants' spoliation has rendered the evidence it may belatedly produce as incomplete and it would be limited to that which Defendants chose to preserve.  This has prevented a full development of the Secretary's case.  Finally, as

_____

[8] This Order is attached as Exhibit 18.  The Court granted the order even though the defendant, immediately following deposition testimony regarding the existence of (and deletion of) text messages, attempted to recover and then produced some text messages.  Here, Defendants have not even taken those remedial measures.

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    18

1   these documents should have been produced several months ago in response to the

2   Secretary's August 31, 2016 RFPs, any additional delay would further prejudice

3   Defendants' employees and, in turn, the Secretary, and does not warrant postponing

4   resolution of this matter any further.

5       The Secretary also requests – assuming any last-minute production of some select

6   emails – that the Court sanction Defendants by permitting the Secretary to conduct a

7   second day of depositions for Defendants Lizarraga and Delrahim, ordering Defendants

8   to bear all costs of those depositions, and awarding costs and attorneys' fees to the

9   Secretary for work incurred due to Defendants' recalcitrance.  See Owen v. No Parking

10  Today, Inc., 280 F.R.D. 106, 111 (S.D.N.Y. 2011) (imposing these sanctions – even

11  though all relevant documents were eventually produced – where, as here, the party

12  failed to respond fully to discovery requests, misled plaintiff as to the nature of the

13  search conducted, and engaged in evasive or untruthful behavior to avoid responding

14  fully to the discovery requests).

15  **B.**   **Federal Rule 37(e) Also Provides for Sanctions for Spoliation of**

16          **Electronically Stored Information Specifically**

17      Federal Rule of Civil Procedure 37(e) defines when spoliation of electronically

18  stored information (ESI) has occurred and specifies applicable remedies upon a finding

19  of prejudice.  The Rule provides two paths for imposing sanctions that are similar to the

20  analysis above, and both of which are applicable here to the destruction of the

21  surveillance footage, text messages, and emails.  Under Rule 37(e)(2), default sanctions

22  are warranted.

23      1.   Sanctions under Rule 37(e)(1)

24      Under Rule 37(e)(1), when the court finds a party is prejudiced by the loss of the

25  information, it may order measures to cure the prejudice. Fed. R. Civ. P. 37(e)(1).  The

26  rule intentionally leaves it to the Court to determine the appropriate measures to cure the

27  prejudice.  Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.

28  These may include measures such as forbidding the party that failed to preserve

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                           19

1    information from putting on certain evidence.  Id.

2           As highlighted in the preceding section, it is evident that the Secretary is being

3    severely prejudice by Defendant's admitted destruction of evidence and that serious

4    measures are needed as a curative remedy.

5           2.     Sanctions under Rule 37(e)(2)

6           Under Subdivision (e)(2), when a party acts with intent to deprive another party of

7    information, severe measures are appropriate to address failures to preserve ESI.  Fed. R.

8    Civ. P. 37(e)(2); see Financial Security, Inc. v. Freedom Equity Group, LLC, 2016 WL

9    5870218, at * 2-3 (N.D. Cal. October 7, 2016) (awarding sanctions for spoliation of text

10   messages under Fed. R. Civ. P. 37(e)(2), noting the spoliating party acted "with the

11   intent to deprive" the other side of the use of the deleted text messages).  Significantly,

12   in Financial Security, the spoliating party, like Delrahim, had a "habit of routinely

13   deleting text messages" and "failed to provide any evidence to explain why [he] deleted

14   text messages."  Id.  Indeed, Delrahim's rationale was "you know, more storage."  Del.

15   Tr. 168:11-15.  Lizarraga also testified to having failed to preserve text messages and

16   that his text messages are destroyed in the very same manner as the video recordings:

17   "it's kind of like your phone, it drops off."  Liz. Tr. 197:14-198:5; 199:1-200:18; 201:4-

18   13.  This echoed verbatim defense counsel's testimony that Lizarraga "has no control

19   over what a – T-Mobile does, because sometimes they will drop off."  Liz. Tr. 134:3-20.

20          Here, Defendants' continued deletion and destruction of documents, and failures

21   to take any (much less reasonable) steps to preserve, even after receiving the litigation

22   hold and the Secretary's numerous requests for the documents, demonstrates intent to

23   deprive the Secretary of this information.  Indeed, Defendants and their counsel have

24   gone to extraordinary lengths to intentionally prevent this information from getting into

25   the record.  Notably, the lost video footage, text messages, and email account "cannot be

26   restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e)(2).

27          The court's reasoning under similar facts in O'Berry v. Turner, 2016 WL 1700403

28   (M.D. Ga. Apr. 27, 2016) is instructive.  In O'Berry, plaintiff sent defendants a

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    20

spoliation letter, made repeated requests for specific ESI and never received the requested evidence. O'Berry, 2016 WL 1700403, at *1 (M.D. Ga. Apr. 27, 2016). When plaintiffs contacted the Court regarding defendants' failure to provide the information, defendants finally stated that the desired information had been inadvertently destroyed. Id. The court found that "[s]uch irresponsible and shiftless behavior can only lead to one conclusion— [defendants] acted with the intent to deprive plaintiff of the use of this information at trial." Id. at *4.[9]

Just as in O'Berry, Defendants disregarded a litigation hold notice, ignored repeated requests for ESI, delayed and evaded the Secretary's inquiries into the ESI, failed to take steps to preserve the evidence, and allowed it to be deleted. Defendants continued to delete and allow evidence to be destroyed even after they provided verified discovery responses on September 30, 2016. Defendants' conduct and the surrounding circumstances lead to the logical conclusion that they intentionally deprived, and continue to deprive, the Secretary of information. Therefore, sanctions outlined in 37(e)(2) are warranted.

Furthermore, the conduct by Defendants and their counsel, and the resulting prejudice to the Secretary, is severe enough to warrant default sanctions against Defendants, including and up to the entry of default judgment. See, e.g., Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir.1995); see also State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc., 523 F. Supp. 2d 992, 997 (D. Ariz. 2007) (dismissal appropriate where spoliation rendered "the evidence incomplete, … [and] limited to that which [the spoliator] chose to preserve…" because "the spoliation therefore threatens to interfere with the rightful decision of the case by preventing full

---

[9] See also Apple I, 881 F.Supp.2d at 1147 (where a party failed to modify its policy of automatically deleting emails after it should have been aware that litigation was possible, and failed to ensure that its instructions to preserve relevant emails were followed, that party's "conscious disregard" for its duty to preserve evidence constituted a willful violation of that duty).

MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE                    21

development of" the non-spoliating party's case); see also G-K Properties, 577 F.2d at 647 (where, as here, "counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for noncompliance.").  Default sanctions are, moreover, available and warranted under both the Court's inherent authority and under Fed. R. Civ. P. 37(e)(2).  See Chambers, 501 U.S. at 45, 49 ("outright dismissal" is within the court's discretion and "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct").

## C.     Federal Rule 37(c)(1) Provides for Evidence Preclusion for Failure to Disclose and Produce

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Notably, evidence preclusion is a "self-executing, automatic sanction" available under Rule 37(c)(1) that requires no finding of willfulness or bad faith.  Hoffman v. Construction Protective Services, Inc., 541 F.3d 1175, 1177, 1180 (9th Cir. 2008).  Additionally, "particularly wide latitude" is given to the district court's discretion to issue sanctions under Rule 37(c)(1). Id. (citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001)).  "The intention of this preclusionary measure is to prevent the practice of 'sandbagging' an opposing party with new evidence." Hooks v. Forman Holt Eliades & Ravin LLC, No. 11 Civ. 2767 (LAP), 2015 WL 5333513, at *4 (S.D.N.Y. Sept. 14, 2015).

Here, Defendants should be sanctioned under Rule 37(c)(1) and – assuming they belatedly locate, retrieve, or produce any information that was requested on August 31, 2016 – they should not be permitted to use any such information for purposes of this or any other motion, at a hearing, or at trial.  Defendants, based on this record, will be

1  unable to demonstrate any substantial justification for their refusals and failures to

2  disclose and comply with discovery requests – and their failures are anything but

3  harmless.  To the contrary, they have severely prejudiced the Secretary's ability to

4  prepare for trial.

## IV.   CONCLUSION

6        For the reasons set forth above, the Secretary respectfully requests that the Court

7  grant this Motion and order default sanctions against Defendants.

9  Dated:  December 22, 2016                     M. PATRICIA SMITH
                                                 Solicitor of Labor
10                                               JANET M. HEROLD
                                                 Regional Solicitor
11                                               SUSAN SELETSKY
                                                 Counsel for FLSA
12                                               NANCY E. STEFFAN
                                                 Trial Attorney
13
14
15
16                                                _/s/ Natalie Nardecchia_____
                                                 NATALIE NARDECCHIA, Trial Attorney
17