Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD C. HUGLER,[1] Secretary of Labor, United States Department of Labor, | ) ) ) |
| Plaintiff, | ) Case No: 16 CV 4547- FMO (AGRx) |
| v. | ) ) (JAMS Ref. No: 1220055479) |
| SOUTHWEST FUEL MANAGEMENT, INC. dba BREA CAR WASH & DETAIL CENTER, a California corporation; VAHID DAVID DELRAHIM, an individual, and as managing agent of the Corporate Defendants;  MARTIN LIZARRAGA, an individual, and as managing agent of the Corporate Defendants; GOLDENWEST SOLUTIONS GROUP, INC., a California corporation; and CALIFORNIA PAYROLL GROUP, INC., a California corporation, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## ORDER RE PLAINTIFF'S REQUEST FOR SANCTIONS
## FOR SPOLIATION OF EVIDENCE

On January 12, 2017, Thomas E. Perez, then-Secretary of Labor of the United States

Department of Labor ("Plaintiff" or "Secretary") filed a Joint Stipulation for Sanctions for

---

[1]  On March 7, 2017, Edward C. Hugler, Acting Secretary of Labor, was substituted as Plaintiff in place of Thomas A. Perez, pursuant to Federal Rule of Civil Procedure 25(d).  [Dkt. 79].

1

Spoliation of Evidence ("Jt. Stip.") [Dkt.55],[2] the supporting declaration of Natalie Nardecchia with numerous exhibits ("Nardecchia Declaration" ("Decl.")) [Dkt. 55-1], and the opposing declarations of Jessica Kang with numerous exhibits ("Kang Declaration" ("Decl.")) [Dkt. 55-10], Gregg Blank ("Blank Declaration" ("Decl.")) [Dkt. 55-13], and Martin Lizzaraga ("Lizarraga Declaration" ("Decl."))[Dkt. 55-14].   On January 19, 2017, the Secretary filed Supplemental Briefing, pursuant to District Judge Olguin's permission.  [Dkt. 57-11].  On March 24, 2017, Plaintiff filed a supplemental memorandum ("Plaintiff's Supp. Memo.") [Dkt. 82], the supplemental declaration of Natalie Nardecchia ("Nardecchia Supplemental Declaration" ("Supp. Decl.")) [Dkt. 82-1], and Evidentiary Objections to the Lizarraga Declaration (Dkt. 55-14). [Dkt. 83].    On March 24, 2017, Defendants filed a supplemental memorandum ("Defendants' Supp. Memo."). [Dkt. 81].

The Secretary's request to withdraw the Supplemental Briefing filed January 19, 2017 [Dkt. 57-11] **is granted,** as the document is not relevant to Plaintiff's request for sanctions for spoliation. The Secretary's objections to two statements in the Lizzaraga Declaration **are granted, in part, and denied, in part**:  (i) paragraph 6 objection is overruled; and (ii) paragraph 10 objection is sustained on the ground the declarant lacks personal knowledge.

On April 24 2017, the Special Master issued a Tentative Order re Plaintiff's Request for Sanctions re Spoliation of Evidence.  Oral argument was held in-person before Hon. Rosalyn

---

[2]  Plaintiff did not file a notice of motion and motion, as required by Rule 7(b) and Local Rule 7-4-7-5. Defendants argue that the lack of a motion failed to give them due process notice regarding the sanctions Plaintiff requests, Jt. Stip. at 38-40; that is not so.  The body of the Joint Stipulation describes the sanctions Plaintiff requests, as does Plaintiff's supplemental memorandum.  Nevertheless, there is no excuse for Plaintiff's failure to comply with Rule 7, and Plaintiff is admonished for his failure.

Chapman, Special Master, on May 2, 2017.  Natalie Nardecchia and Nancy E. Steffan, Trial Attorneys with the Office of the Solicitor of the Department of Labor, appeared on behalf of Plaintiff and Rebecca M. Aragon and Simerdip Khangura, attorneys with the law firm Littler Mendelson PC, appeared on behalf of Defendants.

## Relevant Procedural History

### I.

On July 14, 2015, the Department of Labor ("DOL") notified Southwest Fuel Management, Inc. dba Brea Car Wash Detail & Castrol Express Lube ("Southwest") that it was conducting an investigation of  Brea Car Wash to determine compliance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and it would be "necessary... [to] examine certain records."  Nardecchia Decl. ¶ 2, Exh. 1.  Almost one year later, on June 8, 2016, the Secretary sent a letter to Southwest advising that the case had been referred for litigation.  *Id*. ¶ 3, Exh. 2.  In the letter, the Secretary stated:

> [A]s potential litigants, Southwest Fuel and its agents, officers, representatives, employees, custodians, contractors, successors, parties in interest and all others with evidence that is potentially relevant to this case are under an obligation to preserve and not destroy such evidence.  Southwest Fuel also has an obligation to instruct all individuals with potentially responsive documentation to affirmatively preserve and retain such documentation.

*Id*. (citations omitted).

3

On June 23, 2016, Plaintiff filed his original complaint for violation of the FLSA against Defendants Southwest, Vahid David Delrahim ("Delrahim") and Martin Lizarraga ("Lizarraga"). [Dkt. 1].  On November 28, 2016, District Judge Fernando M. Olguin granted Plaintiff's motion to file an amended complaint, noting that "it appears that plaintiff is seeking leave to amend the complaint – not for the purpose of unduly prejudicing defendants – but because defendants have been dilatory in producing documents that would timely reveal the identity of other potential co-employer defendants."  [Dkt. 40].

On November  29, 2016, Plaintiff filed a First Amended Complaint ("FAC") for violation of the FLSA against Defendants Southwest, Delrahim, Lizarraga, Goldenwest Solutions Group, Inc. ("Goldenwest") and California Payroll Group, Inc. ("California Payroll") (collectively, "Defendants"). [Dkt. 42].   Southwest is a California corporation which conducts business at several locations, including at least: 1700 East Lambert Road, Brea, California 92821 ("Brea"), which is a car wash; 11920 E. Foothill Blvd., Rancho Cucamonga, California 91739, which is a gas station and convenience store; and 1050 SE Plum Street, Olympia, Washington 98501, which is a gas station and convenience store.  (FAC ¶ 4(a)).  Defendant Delrahim is the owner and President of Southwest, Goldenwest, and California Payroll, and Defendant Lizarraga is the manager of Brea.  (Id. ¶¶ 5-6).  Defendants come within the definition of "employer" under the FLSA, 29 U.S.C. § 203(d).  (Id. ¶¶ 4-10).

The Secretary alleges that since June 23, 2013, and continuing to the present, Defendants have been violating the FLSA by:  (i) paying employees their wages at rates less than the

applicable federal minimum wage and overtime compensation; (ii) not compensating employees for workweeks in excess of 40 hours at rates not less than one and one-half times the regular rates; and (iii) by failing to maintain, keep and preserve records of employees and the wages, hours and other conditions, as required by Title 29, Code of Federal Regulations, Part 526. (Id. ¶¶ 11-14).  More specifically, the Secretary alleges that Defendants required their employees to work "off the clock" by having them "report to work and wait, directing and requiring them not to clock in until customers arrived" and having them "clock out when business slowed down"; and Defendants failed to include "non-discretionary commission pay" in the employees' regular pay.  (Id. ¶ 14).  As a result, the Secretary claims there are unpaid minimum wages and overtime compensation due past and present employees, including but not limited to those individuals listed on Exhibit 1 attached to the FAC.  (Id. ¶¶ 1, 14-15).

The Secretary seeks a permanent injunction restraining Defendants from violating Sections 6, 7, 11, and 15 of the FLSA, 29 U.S.C. §§ 206, 207, 211, and 215, an award in the amount of unpaid wages and compensation owed to Defendants' present and former employees, and liquidated damages equal to the amount of unpaid wages and compensation owed pursuant to Section 16(c) of the FLSA, 29 U.S.C. § 216(c).  (Id. ¶¶ 1, 16-18).

On December 8, 2016, Defendants filed an Answer to the FAC and raised thirty-two affirmative defenses.  [Dkt. 45].

## II.

On April 12, 2017, the Special Master issued an Order Granting, in Part, and Denying, in

Part, Plaintiff's motion to compel Defendants Southwest, Delrahim. and Lizarraga to respond or further respond to numerous requests in Plaintiff's First Set of Requests for Production of Documents ("First Set") and ordered Defendants to produce responsive documents within ten calendar days ("the Order"). [Dkt. 88]. In the Order, the Special Master found that none of Defendants' objections to the document requests had any merit, other than an objection to Request No. 19.

In noting that Southwest had make a miniscule document production of only 14,847 pages, the Special Master pointedly reminded Southwest that in responding to discovery:

> [a party] is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control. *A.Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (internal quotation marks omitted; citations omitted); *see also Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988) ("Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations … by failing to examine records within its control.").

[Dkt. 88].

The Special Master concluded that Defendant Southwest is "deliberately and willfully stone-walling on discovery."  In reaching this conclusion, the Special Master found that Defendants had produced only 34 emails (with redactions), no text messages and no surveillance

videos.  Regarding the paucity of emails and text messages, the Special Master opined that it was not believable that Defendants had so few emails and texts.   Noting that Santos Chavez, Southwest's former general manager, testified about his routine use of emails and text messages to Southwest's management and employees while working for Southwest, *see* Nardecchia Decl. ¶¶ 3-4, Exhs. 2-3, the Order stated:

> It is not possible to operate a business in 2017 – even a "mom and pop" operation -- without routinely using email and text message communications.   And Southwest is anything but a "mom and pop" operation as it has several far-flung locations.   Moreover, the deposition of Santos Chavez, a former manager …, demonstrates the routine use of emails and texts in the operations of Southwest's businesses.

Thus, the Order required Defendants to produce all emails and text messages pertaining to Southwest's operations and relations with its employees, from June 23, 2013 to the present.

The Order also required Southwest to produce videos from its surveillance system at Brea.  After weighing and considering the factors set forth in Rule 26(b)(1), the Special Master found that the videos may provide information relevant to the Secretary's FLSA claims, as Santos Chavez testified that the videos are used by Southwest's management to determine, among other things, whether to discipline employees.  As such, the Special Master opined that the videos would likely show how many Brea employees are present on any day and at any time; when employees arrive for work and leave work; when employees clock in and clock out; when

employees take breaks; and the like. The Special Master also found that Southwest had not shown that either burden or expense is a real factor weighing against the production of the videos and that, under Rule 26(b)(1),  the production of the videos is "proportional to the needs of the case…."  Fed.R.Civ.P. 26(b)(1); *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) ("District courts have broad discretion in determining relevancy for discovery purposes.").

There is no reason to revisit any of the foregoing conclusions and determinations in considering Plaintiff's request to sanction Defendants for spoliation.

## III.

### Discovery Dispute

The Secretary "requests default judgment against Defendants Southwest Fuel, Delrahim, and Lizarraga as to employees at Brea, or in the alternative an order that Defendants be precluded from putting on any evidence at trial as to the Brea employees' hours worked, or to dispute that Defendants Delrahim and Lizarraga are employers under the FLSA."  Plaintiff's Supp. Memo. at 1:13-17, n. 11.[3]  More specifically, the Secretary describes the alternative relief as "precluding Defendants from relying in any way on:  (1) text messages, emails, or footage beyond the 34 emails they produced from personnel files; and (2) any emails or texts the Secretary may be able to obtain from third parties."  *Id*. at 1:17, n. 3.

---

[3]  See footnote 2 above.

The Secretary further requests that, in the event Defendants make a "last-minute production" of documents, "the Court sanction Defendants by permitting the Secretary to conduct a second day of depositions for Defendants Lizarraga and Delrahim, ordering Defendants to bear all costs of those depositions, and awarding costs and attorneys' fees to the Secretary for the work incurred due to Defendants' recalcitrance."  Jt. Stip. at 34:12-16 (citation omitted).

The Secretary argues that Defendants' duty to preserve evidence was triggered on July 14, 2015, when the DOL notified Southwest of the FLSA investigation.  Since then, Defendants have produced only 34 emails, no text messages and no videos in response to document requests from the Secretary.  Defendants have failed to preserve and not destroy emails, text messages and video recordings, and failed to instruct all employees and others to preserve potentially responsive documents, as admitted by Lizarraga, Delrahim, and Gregg Blank ("Blank"), Defendants' Director of Technology, at their depositions taken on November 8 and 16, 2016, and January 13, 2017, respectively.  Nardecchia Decl. ¶¶ 17-19, Exhs. 15-17; Nardecchia Supp. Decl. ¶ 2, Exh. 1.

Defendants' spoliation of emails, text messages and video recordings has extremely prejudiced the Secretary's ability to prepare for trial, to test Defendants' affirmative defenses, and to cross-examine witnesses.  A belated production of evidence would not cure the prejudice, the Secretary argues, as it would be incomplete.  Defendants' intentional spoliation of evidence warrants sanctioning by the Court under its inherent powers, as well as Rule 37(e), which specifically pertains to sanctions for spoliation of electronically stored information.

Additionally, Defendants should be sanctioned under Rule 37(c), which requires the Court to preclude Defendants from using evidence at trial when they have failed to produce such evidence.

On the other hand, Defendants argue that there is no proof that any emails or text messages relating to Southwest's operations were deleted; the Secretary misunderstands the testimonies of Delrahim and Lizarraga.  Defendants further contend that they have produced all responsive emails, noting that although "Mr. Lizarraga and Mr. Delrahim use email for work purposes, … [they] do not agree that all emails are responsive to Plaintiff's requests." Jt. Stip. at 24:22-25. Defendants argue that the surveillance videos would have limited probative value to the Secretary's claims as the Brea cameras are not set up to record the employees' clocking in or out or resting.  *See* Blank Decl. ¶ 3.  And Defendants continue to urge the Court to find that Plaintiff's discovery request for videos is unreasonably broad and unduly burdensome since Southwest's equipment is not built to retain ongoing storage of videos.  *Id.*

As to sanctions, Defendants claim that the 2015 amendment to Rule 37(e) precludes the Court from exercising its inherent power to sanction a party for spoliation of electronically stored information.  And sanctions under Rule 37(e) are not warranted as the videos are not relevant to the Secretary's claims; the Secretary does not allege that employees were working "off the clock" and the videos have never been used for time-keeping purposes; employees were never videoed at the clock.  Since the videos are not relevant to the Secretary's claims, Defendants had, and continue to have, no obligation to preserve them.

As the videos are not relevant, Defendants argue, the Secretary cannot show that he has been prejudiced or impaired in his ability to prepare for trial.  The Secretary's argument of relevancy is totally speculative.  Moreover, the touchstone of prejudice is whether the relevant information can be replaced with other evidence.  The testimony of eyewitnesses can replace the videos.  Thus, the Secretary cannot show prejudice stemming from Defendants' failures to preserve the videos.  For the same reason, the Secretary cannot show that Defendants intended to deprive him of the use of relevant information, within the meaning of Rule 37(e)(2).

Lastly, Rule 37(c) is inapplicable since it applies to a party's failure to comply with a discovery order, not spoliation of evidence.  Moreover, the Secretary did not raise Rule 37(c) in its meet and confer letter as a ground to sanction Defendants.

## DISCUSSION

## IV.

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Zubulake v. UBS Warburg LLC*, 220 F.R.D.D. 212, 216 (S.D. N.Y. 2003) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).).   "As documents are increasingly maintained electronically, it has become easier to delete or tamper with evidence (both intentionally and inadvertently) and more difficult for litigants to craft policies that ensure all relevant documents are preserved." *Zubulake*, 220 F.R.D. at 214 (footnote omitted).  Since "[d]ocuments create a paper reality we call proof[, t]he absence of such documentary proof may stymie the search for the truth."   *Id.* (internal quotation marks and footnote omitted).

Accordingly, "[i]t has long been the rule that spoliators should not benefit from their wrongdoing, as illustrated by 'that favourite maxim of the law, *omnia presumuntur contra spoliatorem.*'" *West*, 167 F.3d at 779 (citations omitted).

Initially, the Special Master must determine *when* Defendants' duty to preserve attached in this case.  "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011); *see also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under  a duty to preserve evidence which it knows or reasonably should know is relevant to the action.").

Here, the DOL sent a letter to Southwest on July 14, 2015, advising it of an investigation under the FLSA.  The Secretary asserts that Defendants' duty to preserve arose at that time, and Defendants do not really dispute that assertion.   In any event, it cannot be denied that Defendants' duty to preserve documents arose, at the latest, on June 8, 2016, when the Secretary notified Southwest that the investigation had led to litigation.

Next, the Special Master must determine *what* evidence must be preserved.  Defendants do not dispute that emails and text messages relating to Southwest's operations must be preserved.  This means that as early as July 14, 2015, or as late as June 8, 2016, Southwest and its officers and managers, including Delrahim and Lizarraga, should have suspended their routine destruction of emails and text messages and placed a "litigation hold" on destroying such

documents by taking reasonable steps to preserve them, such as saving them to the iCloud or making other arrangements for preservation. *See In re Napster*, 462 F. Supp. 2d at 1070 ("Once [the] duty to preserve took effect … [defendant] was required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation."); *Zubulake*, 220 F.R.D. at 218 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").

But Defendants did not do this.  In fact, as recently as January 17, 2017, Defendants Southwest and Delrahim had not placed a "litigation hold" on the destruction of any types of documents, whether emails, text messages or videos, as attested by Blank at his deposition.[4]  *See* Nardecchia Supp. Decl. ¶ 2, Exh. 1 at 142-143, 153-155, 159-160, 163-165, 188-189, 192-195, 219-220.  And as Blank further testified, a couple of email accounts used by Defendants, i.e., petrolink.net and goldenwestsolutionsgroup.com, "were either deleted, [or] migrated to a new address" by Defendants Southwest and its owner Delrahim without preserving any of the emails. *Id.* at 176 – 193.

As the Secretary notes, at least one of the deleted email accounts was used by Defendant Lizarraga to communicate with Defendant Delrahim and Southwest's employees, and emails and text messages from that account would have afforded the Secretary proof of Lizarraga's status as employer.  *See, e.g., Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009)  ("Where an

---

[4]   In light of Blank's testimony, it is not necessary for the Special Master to determine whether Defendants' duties to preserve documents such as emails and text messages attached on July 14, 2015, or June 8, 2016.

individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA], and is subject to liability." (quoting *Lambert v. Ackerley*, 180 F.3d 997, 102 (9th Cir. 1999 (en banc) (internal quotation marks and citations omitted)).)   Similarly, one can reasonably infer that emails and text messages from the deleted email accounts would have shown Defendant Delrahim's role as employer, in light of Santos Chavez's testimony that he exchanged texts and emails with Delrahim almost daily about Southwest's operations. *See* Nardecchia Supp. Decl. ¶¶ 3-4, Exhs. 2-3.   Thus, it is clear that Defendants did not live up to their obligations as litigants to **t**ake reasonable steps to preserve emails and text messages as evidence for the Secretary. *See Zubulake*, 220 F.R.D. at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").

The question of whether Defendants Southwest and Delrahim were required to take reasonable steps to preserve the videos is more problematic.   Defendants argue that they were not, and are not, required place a litigation hold on the videos, or to suspend their routine policy of taping over existing videos, or to arrange for the videos to be saved to an external hard drive because the videos are not relevant to the litigation.   *See, e.g., Zubulake*, 220 F.R.D. at 217 ("anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, *relevant* evidence that might be useful to an adversary" (emphasis added)); *In re Napster*, 462 F. Supp. 2d at 1067 (same).   On the other hand, the Secretary argues that the videos *may* show relevant information about Southwest's employees, particularly when they arrive at work, when they clock in and out, whether they take breaks, and the like.

Determining the relevancy of the video evidence is essential to determining whether Defendants Southwest and Delrahim had, and continue to have, a duty to preserve the videos. In the Order, the Special Master determined that the videos are relevant information for discovery purposes.   Nevertheless, Southwest's and Delrahim's duties to preserve the videos did not necessarily commence on the same date as their duties to preserve other documentary evidence, such as emails and text messages.   Rather, it can reasonably be argued that their duties to preserve the videos attached only when Defendants Southwest and Delrahim reasonably knew or should have known the videos are relevant to the litigation.   The Special Master finds that occurred on August 31, 2016, when the Secretary served the First Set on each of them requesting, in part, the production of the videos.   As of that date, Defendants Southwest and Delrahim had actual notice that they must take reasonable steps to preserve the videos.   Their failures to do so are at their own peril. *Zubulake*, 220 F.R.D. at 220.

## V.

"There are two sources of authority under which a court can sanction a party who has despoiled evidence:  the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37[]…." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).   The Secretary seeks to sanction Defendants under both "sources of authority."

The Supreme Court has long recognized that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court because they are necessary to the exercise of all others." *Chambers v.*

*NASCO*, 501 U.S. 32, 43 (1991) (internal quotation marks and citation omitted);  *id.*, 501 U.S. at 46 (there is "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct").  The implied or inherent power of the Court includes the "power to dismiss an action [or enter a default judgment] when a party has deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."  *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (citing *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 802, 806 (9th Cir. 1982)); *Leon*, 464 F.3d at 958-961.  In the Ninth Circuit, when a court assesses whether to dismiss a case or enter a default judgment against a defendant, the court must consider "whether the failure to comply [with discovery] is due to willfulness, bad faith, or fault of the party." *Wyle*, 709 F.2d at 589; *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996).

When considering whether to impose the ultimate sanctions of dismissal or a default judgment, a court in the Ninth Circuit must examine five factors:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [party seeking sanctions]; (4) the public policy favoring disposition of cases on their merit; and (5) the availability of less drastic sanctions."  *Thompson v. Housing Authority of the City of Los Angeles*, 782 F.2d 829, 831 (9th Cir.), *cert. denied*, 479 U.S. 829 (1986); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385 (9th Cir. 1988).  "The first two of these factors favor the imposition of sanctions in most cases, while the fourth factor cuts against a default or dismissal sanction.  Thus, the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnstone*, 910 F.2d 652, 656 (9th Cir. 1990); *see also U.S. for Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1988) ("As a general

rule, the district court must consider less severe alternatives [than dismissal or default judgment] and discuss them if it elects to dismiss [or render a default].").

The Secretary relies on two provisions in the Federal Rules of Civil Procedure to support his request for spoliation sanctions:  Rule 37(e) and Rule 37(c).  Rule 37(e) addresses the failure of a party to preserve electronically stored information.  Defendants argue that the 2015 amendment to Rule 37(e) precludes the Court from relying upon its inherent or implied power to sanction a party for spoliation of electronically stored information.  *See* 2015 Adv. Comm. Notes to 2015 Amendment to Rule 37(e) ("New Rule 37(e) … authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures.  It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.").

The Special Master disagrees.  It is an irrefutable principle of law that the Supreme Court's authority cannot be limited by a body such as the Advisory Committee. Moreover, as almost all documents are now electronically stored, and destruction or alteration of electronically stored documents often occurs, it would be poor public policy to require the courts to rely solely upon the Rules to address improper conduct such as spoliation of evidence by the parties appearing before them; limiting the courts to the Rules would unnecessarily deprive them of the broader inherent powers.  *See, e.g., CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497-98 S.D.N.Y. 2016) (Despite 2015 amendment to Rule 37(e), "[w]here exercise of inherent power is necessary to remedy abuse of the judicial process, it matters not whether there might be another source of authority that could address the same issue.").  Nevertheless, the Supreme

17

Court cautioned in *Chambers* that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.*, 501 U.S. at 50.

## VI.

The Secretary primarily seeks a default judgment against Defendants as to claims under the FLSA regarding employees at Brea. Alternatively, the Secretary seeks an order precluding Defendants from relying on:  (1) any text messages, emails, or video footage other than the 34 emails produced from personnel files in response to the First Set; and (2) any emails or texts the Secretary may be able to obtain from third parties.   Additionally, if there is a "last-minute production" by Defendants, the Secretary seeks to take second depositions of Delrahim and Lizarraga with costs being paid by Defendants.

The proper sanction for spoliation "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F.3d at 779 (citations omitted).

A default judgment may be imposed by the Court as a sanction for improper conduct such as spoliation of evidence under the Court's inherent powers, as discussed above in Part V, and under subdivision (2) of Rule 37(e).  Rule 37(e) provides:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court

(1)  upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A)   presume that the lost information was unfavorable to the party;

(B)  instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed.R.Civ.P. 37(e)(1), (2).

Rule 37(e) requires the Court to determine, as the first step, whether the information which should have been preserved "cannot be restored or replaced through additional discovery." Only after the Court determines that the lost evidence cannot be restored or replaced through additional discovery may the Court consider the alternative measures set forth in subdivisions (1) and (2).  In other words, if the despoiled information can be restored or replaced through additional discovery, the Court cannot impose sanctions under Rule 37(e).  In order to consider

whether Rule 37(e) supports the Secretary's request for the ultimate, terminating  sanction of default judgment, the Court analyzes the Secretary's loss of the emails and text messages separately from the loss of the videos.

*Emails and text messages:*

There is no doubt that the email accounts which were deleted or "migrated" by Southwest and Delharim have relevant or even vital information.  According to Blank, the deleted or "migrated" email accounts were maintained by Google and Yahoo.  *See* Nardecchia Supp. Decl. ¶ 2, Exh. 1 at 189-192.  Whether the deleted or migrated email accounts and their contents can be restored or replaced by additional discovery is the key question under Rule 37(e)(1).  Certainly Blank's use of the word "migrated" suggests that the emails on the deleted accounts may still exist on another service provider.  In any event, it is possible that Google and Yahoo maintain backups for the deleted or migrated email accounts.  Similarly, it is possible that the service providers used by Defendants Delrahim and Lizarraga have backups of the emails deleted by those defendants.

However, the parties have not addressed these issues.  They have not shown, by expert testimony or other competent evidence, whether the deleted or migrated email accounts and the emails and texts on those accounts – or information on other accounts used by Defendants Delrahim and Lizarraga -- can be restored or replaced with additional discovery.  Without this information, the Court cannot conclude that the deleted or migrated email accounts or any deleted emails or texts on any other accounts "cannot be restored or replaced through additional discovery" so that measures can be taken to sanction Defendants under Rule 37(e).  *See* Adv.

Comm. Notes to 2015 Amendment to Rule 37(e)(1)  ("Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.").

For the foregoing reasons, the Secretary's request for sanctions for spoliation of email and text messages **is denied without prejudice** to renewal at a later date, after the Secretary explores whether the deleted or migrated email accounts and their contents, as well as other emails and texts deleted by Defendants Delrahim and Lizarraga, can be restored or replaced through additional discovery.

*Videos:*

The lost videos are a different matter, however; they cannot be restored or replaced with additional discovery.   Accordingly, the Court must consider whether Southwest's and Delrahim's spoliation of the videos meets the requirements for taking measures under Rule 37(e)(1) or (2). Under subdivision (1), the Court must determine whether the Secretary, as the party deprived of the evidence, has been prejudiced by the loss of the videos.  See Advisory Committee Note to 2015 Amendment to Rule 37(e)(1) ("A court may resort to [subdivision] (e)(1) measures only 'upon finding prejudice to another party from loss of the information.' An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance to the litigation. [¶]  The rule does not place a burden of proving or disproving prejudice on one party or the other….  The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.").

1
2
3
4

Courts in the Ninth Circuit presume prejudice from lost evidence:

5
6
7
8
9
10
11
12

> spoliation of evidence raises a presumption that the destroyed evidence goes to
> the merits of the case, and further, that such evidence was adverse to the party that
> destroyed it. [I]f spoliation is shown, the burden of proof logically shifts to the
> guilty party to show that no prejudice resulted from the spoliation because that
> party is in a much better position to show what was destroyed and should not be
> able to benefit from its wrongdoing.

13
14
15

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (internal

16

quotation marks omitted) (citations omitted)).  In light of Southwest's and Delrahim's failures to

17

take reasonable steps to preserve the videos after they were required to do so, the Court presumes

18

that the Secretary has been prejudiced by the loss of the videos.  *Id.*

19
20

Apart from this reasonable presumption, the testimony of Santos Chavez supports the

21

finding of prejudice, as Southwest's management routinely viewed the videos to determine

22

whether its employees were conducting themselves properly or should be disciplined; employees

23

and their actions could be identified from the videos.  Nevertheless, it is difficult at this stage of

24

the proceedings and the discovery process to determine the severity of the prejudice to the

25
26

Secretary from the loss of the videos.

27
28

On the one hand, it may be possible for the Secretary to present the testimony of witnesses who have worked or continue to work at Brea instead of the videos to show when employees start to work vis-à-vis when they clock-in for work; or the Secretary may discover other evidence to replace the lost videos, as discovery progresses.  On the other hand, the Secretary may be able to show that the videos portray vital information, or to paraphrase the district court in *Zubulake*, that the "videos create a reality we call proof," making their loss extremely prejudicial.

Under subdivision (2), the Court must determine whether Southwest and Delrahim "acted with intent to deprive [the Secretary] of the information's use." Fed.R.Civ.P. 37(e)(2).  If so, the Court may: (A) "presume that the lost information was unfavorable …"; (B) "instruct the jury that it may or must presume the information was unfavorable …"; or (C) "dismiss the action or enter a default judgment."  Fed.R.Civ.P. 37(e)(2)(A)-(C).

Southwest's and Delrahim's resistance to preserving the Brea videos supports the reasonable inference that Defendants acted with the *intent* to deprive the Secretary of the use of the videos; they did not act negligently, and Defendants do not claim negligence. Although Defendants were well-aware that the Secretary seeks the production of the videos, and the Court has found that neither burden nor expense is a real factor weighing against Defendants' production of the videos and the production is "proportional to the needs of the case," Defendants have not voluntarily turned over any videos to the Secretary.  It is clear that Defendants Southwest and Delrahim made an intentional decision not to preserve the videos despite knowing the Secretary seeks to view them.  Accordingly, the Special Master reasonably

infers or presumes that the videos are unfavorable to Defendants Southwest and Delrahim.

Fed.R.Civ.P. 37(e)(2)(A).   It is not premature to draw this inference or presumption without

actually seeing the videos; the inference or presumption flows from the conclusion that

Southwest and Delrahim "acted with intent to deprive [the Secretary] of the information's use."

Under Ninth Circuit case law, the Court must consider the key factors of prejudice and

availability of lesser sanctions in determining whether a party's conduct warrants the ultimate

sanction of dismissal or default judgment.   *See e.g., Wanderer,* 910 F.2d at 656; *Toth*, 862 F.2d

at 1385.   Our determination that the Court is unable, at this stage of the proceedings, to

determine the degree of severity of prejudice to the Secretary from the loss of the videos

precludes the Court, at this time, from granting the Secretary's request for a default judgment

under the Court's inherent powers.   *Ibid.*

However, Rule 37(e)(2) "does not include a requirement that the court find prejudice to

the party deprived of the information.   This is because the finding of intent required by the

subdivision can support … an inference that the opposing party was prejudiced by the loss of

information that would have favored its position."   Adv. Comm. Notes to 2015 Amendment to

Rule 37(e)(2).   Nevertheless, to sanction a party for spoliation of evidence by entering a default

judgment against under Rule 37(e)(2) would be extremely harsh when the Court is unable, at this

stage of the proceedings, to determine the degree of prejudice to the Secretary from the loss of

the videos. As noted by the Advisory Committee:

Courts should exercise caution, however, in using the measures specified in

(e)(2).  Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2).  The remedy should fit the wrong, and the severe measures authorized by the subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in (e)(1) would be sufficient to redress the loss.

Adv. Comm. Notes to 2015 Amendment of Rule 37(e)(2).  For these reasons, the Special Master **denies without prejudice** the Secretary's request for entry of a default judgment against Defendants, pursuant to the Court's inherent power and Rule 37(e)(2).

Alternatively, the Secretary seeks sanctions against Defendants precluding them from relying on:  (1) any text messages, emails, or video footage other than the 34 emails they produced from personnel files in response to the First Set; and (2) any emails or texts the Secretary may be able to obtain from third parties.  Additionally, if there is a "last-minute" or late production of evidence, the Secretary seeks permission to take second depositions of Delrahim and Lizarraga with costs being paid by Defendants.

Generally, these alternative requests come within the ambit of Rule 37(e)(1), which limits the available remedies to "measures no greater than necessary to cure the prejudice." Fed.R.Civ.P. 37(e)(1).  To date, an appropriate remedy under Rule 37(e)(1) is to preclude Defendants from using any Brea videos to support any motion (including a discovery motion), at any hearing, and at the bench trial.  However, as stated above, the Court is unable to determine

the degree of prejudice to the Secretary from the loss of the videos at this stage of the proceedings.  Thus, the Court cannot determine whether additional remedies are necessary to "cure" the prejudice to the Secretary until more evidence is developed to establish the degree of prejudice suffered by the Secretary due to the loss of the videos, among other things.  Thus, the Court also **denies without prejudice** the Secretary's alternative requests for sanctions.

### VII.

Rule 37(c)(1) is directed to a party who has failed to disclose information under Rule 26(a) or who has failed to supplement under Rule 26(e) an incomplete or incorrect discovery response.  It provides for sanctions against a party, as follows:

> If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court on motion, and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees , caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C)  may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[5]

---

5   Rule 37(b)(2)(A)(i)-(vi) provides that the court may issue an order:

1

2   Fed.R.Civ.P. 37(c)(1).

3

4

5      Rule 37(c) may be applied to sanction a party who has despoiled evidence if that party

6   has failed to disclose such evidence or has failed to supplement an incomplete disclosure or

7   response by omitting the evidence. It does not apply to the circumstances underlying the pending

8   request for sanctions.  For these reasons, Plaintiff's request for sanctions against Defendants

9

10  pursuant to Rule 37(c) **is denied.**

11

12                                        **ORDER**

13     1.  Plaintiff's request for any sanctions, including terminating sanctions, i.e., entry of

14  default judgment against Defendants, for spoliation of emails and text messages **is denied**

15

16  **without prejudice**.

17

18     2.  Plaintiff's request for terminating sanctions, i.e., entry of default judgment against

19  Defendants, for spoliation of video evidence **is denied without prejudice**.

20

21

22     3.   Plaintiff's request for other or non-terminating sanctions against Defendants for

23  _____

24        (i) directing that the matters embraced in the order or other designated facts be taken as    established    for
25     purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting
       or opposing designated claims or defenses, or from   introducing designated matters in evidence; (iii)
26     striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v)
       dismissing the action or proceeding in whole or in part; [and] (vi) rendering a default judgment against the
27     disobedient party[.]

28  Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

                                        27

spoliation of video evidence **is granted, in part, and denied in part**:

    a. Defendants shall be precluded from using any Brea videos in any motion, at any hearing  and at the bench trial; however, in the event Plaintiff uses any Brea videos he obtained in discovery from Defendants in any motion, at any hearing or at the bench trial, Defendants may use the same videos to rebut Plaintiff's claims; and

    b. Plaintiff's request for other or non-terminating sanctions against Defendants for spoliation of video evidence **is denied without prejudice**.

    4.  The Case Manager shall serve this Order on the parties and the district court.

May 2, 2017

1220055479.3

By: _Rosalyn M Chapman_____
Hon. Rosalyn Chapman (Ret.)
Special Master

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28