FILED

CLERK, U.S. DISTRICT COURT

MAY 31 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ vdr _____ DEPUTY

Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
SPECIAL MASTER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

R. ALEXANDER ACOSTA,[1] Secretary of Labor, )
United States Department of Labor, )
                       )
             Plaintiff, )   Case No: 16 CV 4547- FMO (AGRx)
         v. )
                       )   (JAMS Ref. No: 1220055479)
SOUTHWEST FUEL MANAGEMENT, INC. )
dba BREA CAR WASH & DETAIL CENTER, )
a California corporation; VAHID DAVID )
DELRAHIM, an individual, and as managing agent )
of the Corporate Defendants;  MARTIN )
LIZARRAGA, an individual, and as managing )
agent of the Corporate Defendants; )
GOLDENWEST SOLUTIONS GROUP, INC., )
a California corporation; and CALIFORNIA )
PAYROLL GROUP, INC., a California )
corporation, )
                    Defendants. )
_____ )

## ORDER GRANTING PLAINTIFF'S SECOND MOTION TO COMPEL; AND GRANTING PLAINTIFF'S REQUEST FOR SANCTIONS

On April 20, 2017, Edward Hugler, then-Acting Secretary of Labor of the United States

Department of Labor ("Plaintiff" or "Secretary") filed a Notice of Motion and Second Motion to

Compel Production of Documents [Dkt. 95], Joint Stipulation ("Jt. Stip.") [Dkt. 95-1], the

---

[1]  On April 28, 2017, R. Alexander Acosta was sworn in as Secretary of Labor.  He is substituted as Plaintiff
pursuant to Federal Rule of Civil Procedure 25(d).  [Dkt. 100].

1

supporting declaration of Nancy Steffan with numerous exhibits ("Steffan Declaration" ("Decl.")) [Dkt. 96], and the opposing declaration of Jessica Kang with numerous exhibits ("Kang Declaration" ("Decl.")).  [Dkt. 97].  On May 4, 2017, Plaintiff filed a supplemental memorandum ("Supp. Memo.") and the supplemental declaration of Nancy Steffan ("Steffan Supplemental Declaration" ("Supp. Decl.")) with several exhibits.  [Dkt. 100-100-2]. Defendants did not file a supplemental memorandum.

On May 9, 2017, the Special Master issued a Tentative Order Granting Plaintiff's Second Motion to Compel and Plaintiff's Request for Reasonable Expenses, and JAMS served the parties with the Order.  Oral argument was postponed pending mediation between the parties. The mediation was not successful [Dkt. No.109], and the oral argument was rescheduled.  Oral argument was held in-person before Hon. Rosalyn Chapman, Special Master, on May 31, 2017. Natalie Nardecchia and Nancy E. Steffan, Trial Attorneys with the Office of the Solicitor of the Department of Labor, appeared on behalf of Plaintiff and Rebecca M. Aragon and Jessica S. Kang, attorneys with the law firm Littler Mendelson PC, appeared on behalf of Defendants.

## I.

This action commenced on June 23, 2016, when Plaintiff filed his original complaint for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., against Defendants Southwest Fuel Management, Inc. dba Brea Car Wash Detail & Castrol Express Lube ("Southwest"), Vahid David Delrahim ("Delrahim") and Martin Lizarraga ("Lizarraga"). [Dkt. 1].  On November 28, 2016, District Judge Fernando M. Olguin granted Plaintiff's motion to file an amended complaint, noting that "it appears that plaintiff is seeking leave to amend the

complaint – not for the purpose of unduly prejudicing defendants – but because defendants have been dilatory in producing documents that would timely reveal the identity of other potential co-employer defendants."  [Dkt. 40].

On November  29, 2016, Plaintiff filed a First Amended Complaint ("FAC") for violation of the FLSA against Defendants Southwest, Delrahim, Lizarraga, Goldenwest Solutions Group, Inc. ("Goldenwest") and California Payroll Group, Inc. ("CPG"). [Dkt. 42].  Southwest is a California corporation which conducts business at several locations, including at least: 1700 East Lambert Road, Brea, California 92821 ("Brea"), a car wash; 11920 E. Foothill Blvd., Rancho Cucamonga, California 91739, a gas station and convenience store; and 1050 SE Plum Street, Olympia, Washington 98501, a gas station and convenience store.  (FAC ¶ 4(a)).  Defendant Delrahim is the owner and President of Southwest, Goldenwest and CPG, and Defendant Lizarraga is the manager of Brea.  (Id. ¶¶ 5-6).  All Defendants come within the definition of "employer" under the FLSA, 29 U.S.C. § 203(d).  (Id. ¶¶ 4-10).

The Secretary alleges that since June 23, 2013, and continuing to the present, Defendants have been violating the FLSA by:  (i) paying employees their wages at rates less than the applicable federal minimum wage and overtime compensation; (ii) not compensating employees for workweeks in excess of 40 hours at rates not less than one and one-half times the regular rates; and (iii) by failing to maintain, keep and preserve records of employees and the wages, hours and other conditions, as required by Title 29, Code of Federal Regulations, Part 526. (Id. ¶¶ 11-14).  More specifically, the Secretary alleges that Defendants require their employees to work "off the clock" by having them "report to work and wait, directing and requiring them not

to clock in until customers arrive[]" and having them "clock out when business slow[s] down"; and Defendants fail to include "non-discretionary commission pay" in the employees' regular pay.  (Id. ¶ 14).  As a result, the Secretary claims there are unpaid minimum wages and overtime compensation due past and present employees, including but not limited to those individuals listed on Exhibit 1 attached to the FAC.  (Id. ¶¶ 1, 14-15).

The Secretary seeks a permanent injunction restraining Defendants from violating Sections 6, 7, 11, and 15 of the FLSA, 29 U.S.C. §§ 206, 207, 211, and 215, an award in the amount of unpaid wages and compensation owed to Defendants' present and former employees, and liquidated damages equal to the amount of unpaid wages and compensation owed pursuant to Section 16(c) of the FLSA, 29 U.S.C. § 216(c).  (Id. ¶¶ 1, 16-18).

On December 8, 2016, Defendants filed an Answer to the FAC and raised thirty-two affirmative defenses.  [Dkt. 45].

On May 22, 2017, the Secretary filed a Second Amended Complaint ("SAC"), which adds Shannon Delrahim as an individual defendant and otherwise is identical to the FAC.[2]

**II.**

On April 12, 2017, the Special Master issued an Order Granting, in Part, and Denying, in Part, Plaintiff's motion to compel Defendants Southwest, Delrahim and Lizarraga to respond to

---

[2]  Since the SAC was filed between the issuance of the Tentative Order and oral argument, this Order refer to the FAC, rather than the SAC.

numerous requests in Plaintiff's First Set of Requests for Production of Documents,  and ordered those defendants to produce responsive documents within ten calendar days ("First Discovery Order"). [Dkt. 88]. In the First Discovery Order, the Special Master found that none of defendants' objections to the document requests had any merit, other than an objection to Request No. 19.

In noting that Southwest had make a miniscule document production of only 14,847 pages, the Special Master pointedly reminded Southwest that in responding to discovery:

> [a party] is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.  *A.Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (internal quotation marks omitted; citations omitted); *see also Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988) ("Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations … by failing to examine records within its control.").

[Dkt. 88].

The Special Master concluded that Defendant Southwest is "deliberately and willfully stone-walling on discovery."   In reaching this conclusion, the Special Master found that Defendants Southwest, Delrahim and Lizzaraga had produced only 34 emails (with redactions), no text messages and no surveillance videos.  Regarding the paucity of emails and text messages,

the Special Master opined that it is not believable that Defendants have so few emails and texts. Thus, the First Discovery Order requires Defendants Southwest, Delrahim and Lizarraga to produce all emails and text messages pertaining to Southwest's operations and relations with its employees from June 23, 2013 to the present.  Further, the First Discovery Order requires Defendant Southwest to produce financial records and tax returns, allowing Southwest to mark those documents as "Confidential."

The First Discovery Order also requires Defendant Southwest to produce videos from its surveillance system at Brea.  After weighing and considering the factors set forth in Rule 26(b)(1), the Special Master found that the videos may provide information relevant to the Secretary's FLSA claims, as Santos Chavez testified that the videos are used by Southwest's management to determine, among other things, whether to discipline employees.  As such, the Special Master opined that the videos would likely show how many employees are present on any day and at any time; when employees arrive for work and leave work; when employees clock in and clock out; when employees take breaks; and the like. The Special Master also found that Southwest had not shown that either burden or expense is a real factor weighing against the production of the videos and that, under Rule 26(b)(1), the production of the videos is "proportional to the needs of the case…."  Fed.R.Civ.P. 26(b)(1); *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) ("District courts have broad discretion in determining relevancy for discovery purposes.").

On April 27, 2017, the Secretary received from Southwest "two hard drives containing

documents … in response to the [First Discovery Order]….   One of the hard drives contains video recordings[,]" which Defendants' counsel represents "are from the Brea location and cover a period of roughly 40 days in October and November 2016.   The other hard drive contains approximately 60,000 pages of documents.   The Secretary has been unable to view any of these documents due to the encryption setting on the hard drive.   The Secretary brought this problem to Defendants' attention, and Defendants agreed on May 1 that they would produce the documents via a file transfer website or otherwise so the Secretary can access them; but this had not yet occurred" as of May 4, 2017.   Steffan Supp. Decl. ¶ 10.   At the time of the oral argument, the Secretary had received the responsive documents in a format that was not encrypted.

**III.**

On December 2, 2016, Plaintiff served a First Set of Document Demands ("First Set") on Defendants Goldenwest and CPG, separately. Steffan Decl. ¶ 2, Exhs. A-B.   On January 3, 2017, Defendants Goldenwest and CPG each served Plaintiff with responses to the First Set. Id. ¶ 3, Exhs. C-D.   On April 18, 2017, Defendants Goldenwest and CPG each served Plaintiff with supplemental responses to some, but not all, of the requests in the First Set.   Kang Decl. ¶¶ 18, Exhs. O-P.   And on March 8, 2017, Defendants Goldenwest and CPG each served Plaintiff with privilege logs.   Steffan Decl.   ¶ 21, Exhs. R-S.

For discussion purposes, Plaintiff groups the requests in the First Set as follows:   (a) requests regarding employees' wages and hours, Request Nos. 1-5, 12, 16, 23, 36-37 and 49 ("Wage & Hour Requests"); (b) requests regarding employment policies and the roles of Defendants Goldenwest and CPG as employers, Request Nos. 7-8, 10, 20, 22, 24, 29, 34-35, 51-

52, and 57-58 ("Management Requests");  (c)  request for surveillance videos, Request No. 30; and (d) requests for sales and financial records, Request Nos. 14-15, 17-18, and 48.  Jt. Stip. at 4-15; Supp. Memo. at 2, n. 3.

More specifically, the Wage & Hour Requests seek the following discovery: Request No. 1 seeks documents regarding "hours worked by employees," such as timesheets, time cards, schedules and pay stubs; Request No. 2 seeks documents regarding "wages and other remuneration paid to employees," such as payrolls and canceled checks; Request No. 3 seeks documents regarding "any changes made to hours worked by an employee after the hours were initially inputted into an electronic timekeeping system"; Request No. 4 seeks documents "relating to any missed or late payroll, or 'missed punches'" at Southwest's locations; Request No. 5 seeks all documents "regarding employee work schedules"; Request No. 12 seeks all documents identified in the Rule 26(a) Initial Disclosures; Rule No. 16 seeks all documents "constituting sales commission reports" or "computation of sales commissions, for any locations"; Request No. 23 seeks all communications regarding employees' hours work, hiring, terms or conditions of employment, scheduling, job codes, assignments, wages, tips, recording of time, and the like;  Request No. 36 seeks all documents referring to employees' bonuses, tips or commissions; Request No. 37 seeks all documents referring to deductions from employees' pay; and Request No. 49 seeks all communications from any employee regarding hours of work, terms or conditions of employment, wages, tips, commissions, or recording of time.  Jt. Stip. at 4-7.

The Management Requests seek the following discovery:  Request No. 7 seeks all documents "reflecting recruiting or hiring of employees," such as job announcements, applications, and interview notes; Request No. 8 seeks "[a] personnel file for one car wash employee at each of your locations" (subject to redaction of personal information); Request No. 10 seeks "[a] personnel file for one car wash ticket writer employee at each of your locations" (subject to redaction of personal information); Request No. 20 seeks documents regarding "the recording or documenting of hours worked"; Request No. 22 seeks all documents "bearing the signature of any employee"; Request No. 24 seeks all communications from Delrahim, Lizarraga, Nicole White, Ann Marie Michael, Shannon Delrahim, Michael Watson, Stephanie Rock, Dana Rock, Brian Whalen, Felipe Perez, Gregg Blank, Eden Rivera, Jorge Negrete, Jose Diaz, Jose Hermosillo, Jose Camacho, Steven Zarate and Santos Chavez regarding "hiring, termination, discipline, written warnings, hours worked, pay rates …, payroll, wages, job assignments or locations, scheduling, or other terms or conditions of employment";  Request No. 29 seeks all documents "prepared for an employee's or multiple employees' signature(s)"; Request No. 34 seeks all documents relating to "bonuses or commissions to employees"; Request No. 35 seeks all documents relating to "tips or tip sharing"; Request No. 51 seeks all communications reflecting "any meeting at which the managers of more than one of your locations were present"; Request No. 52 seeks all documents regarding any instance wherein an employee "has been asked or assigned … to perform work at another" location; Request No. 57 seeks all documents, signed or unsigned, entitled "Notice to Employee as to Change in Relationship" and "Status Change Form"; and Request No. 58 seeks all documents that refer to you as "employer," such as documents pertaining to workers' compensation or unemployment insurance (subject to redaction of personal information).  Jt. Stip. at 7-12.

Request No. 30 seeks "[a]ll recordings of … images of the areas where car wash employees work at all of your locations.…"   Jt. Stip. at 12-13.   Videos are not listed on Defendants Goldenwest's and CPG's privilege logs.  Steffan Decl. ¶ 21.

The requests for sales and financial records seek the following discovery:  Request No. 14 seeks all documents "regarding gross income from sales and/or services at all of your locations"; Request No. 15 seeks all documents referencing the "'labor average percentage,' or labor costs as a percentage of other costs, for any of your locations"; Request No. 17 seeks all communications related to "the amount of sales, labor costs, or labor percentage costs or averages at any of your locations"; Request No. 18 seeks all state and federal tax returns for the years 2013, 2014, 2015, and 2016; and Request No. 48 seeks all financial records, including "audited financial statements, balance sheets, invoice statements, and accounts receivable."  Jt. Stip. at 13-15.

The First Set defines the applicable time period for responsive documents as June 23, 2013 to the present.  Steffan Decl. ¶¶3, Exhs. A-B.  It also defines the terms "employees" and "your locations" to cover "both former and current employees" at twelve car washes (including Brea):

and encompasses any individuals who work or have worked for or on behalf of you or any other Defendants at any locations that contain full-service or hand car washes, including but not limited to individuals who work or have worked at [1] Southwest Fuel Management, Inc. dba Brea Car Wash & Detail Center; [2]

Goldenstate Petroleum, Inc. dba Redlands Car Wash and Detail Center; [3] Redlands Enterprises, Inc. dba Redlands Auto Spa; [4] Delkind, Inc. dba Agoura Hills Car Wash; [5] Chino Hills Oil, Inc. dba Placentia Car Wash; [6] Moreno Valley Delrahim, Inc. dba Moreno Valley Car Wash; [7] Petrolink Superior, Inc. dba Laguna Hills Auto Spa, [8] Alicia Auto Spa, [9] Coast Hand Car Wash, and [10] Las Posas Car Wash; and [11] Newport Coast Car Wash [and (12) Steve's Detail] [collectively, "your locations"] …  and includes *but is not limited to* those individuals listed on Exhibit 1 of the First Amended Complaint (Dkt. 42, pp. 9-11), as well as individuals you deem or deemed to be *contractors* who performed work for or on behalf of any of any [sic] of the above full full-service or hand car wash locations.

Id.  (emphasis added).

In their responses, Defendants Goldenwest and CPG made numerous objections to the definitions in the First Set.  Steffan Decl. ¶ 3, Exhs. C-D.    Among other things, Defendants objected that they do not control documents of "former agents, representatives, employees" and others; the definitions of "employees" and "your locations" go beyond the scope of the FAC, which focuses on Southwest's operations at three locations, not an additional eleven locations; and the definitions "purport[] to impose obligations greater than those set forth in the Federal Rules…."  Id.  In addition to objecting to the definitions in the First Set, Defendants Goldenwest and CPG generally objected to all requests on the grounds of "unduly burdensome, oppressive and harassing as it purports to require Defendant to respond on behalf of another Defendant in

this matter ..."; "unnecessarily duplicative of requests …to admitted employer"; "vague, ambiguous and unintelligible as written"; attorney-client privilege and work product doctrine; "violate[s] the privacy rights of third parties"; and "overbroad in scope and time and seeks information that is not relevant ..., nor reasonably calculated to lead to … admissible evidence." Id.  As to the financial requests, Defendants raised additional objections to the disclosure of private and confidential information and that Defendants' tax returns are privileged under California law.  Id.

## IV.

Plaintiff's motion to compel seeks responses from Defendants Goldenwest and CPG to 33 document requests in the First Set:  Request Nos. 1-5, 7-8, 10-12, 14-20, 22-24, 29-31, 34-37, 48-49, 51-52, and 57-58.  Notice of Motion.  Plaintiff no longer seeks to compel responses to Request Nos. 11, 19, and 31, as stated in his supplemental memorandum.  Supp. Memo. at 2, n.3.

Plaintiff complains that Defendants Goldenwest and CPG "have not produced any documents" including video recordings "responsive to the Secretary's [First Set], except for the roster produced on March 10."[3]  Steffan Decl. ¶¶ 13, 24.  He further complains that Defendants' failure to produce documents is inexplicable because, during the meet and confer process and in their supplemental responses, Defendants agreed to produce documents responsive to Request

---

[3]   "The roster included the employees' [sic] name, location of work, employee ID number, company code, department code, status of employment, description of department, job title, hire date, rehire date (if any), termination date (if any), address, telephone number and emails known to Defendants."  Kang Decl. ¶ 16.

Nos. 1, 2, 5, 8, 10, 12, 22, 24, 29, 36, 37, 51, 57, and 58.  Supp. Memo. at 2-3 (citing Steffan Decl. ¶ 6, Exh. G; Kang Decl. ¶ 18, Exhs. O-P).

Defendants Goldenwest and CPG raise two main objections to the motion to compel. First, they contend that the Secretary has failed to engage in a meaningful meet and confer process, as required by Rule 37(a)(1) and Local Rule 37-1.  In particular, Defendants claim that during the meet and confer process, the Secretary did not identify the requests which would be the subject of a motion to compel and did not discuss the sanctions he would seek.  Jt. Stip. at 15-16.

Second, Defendants complain that the motion is premature.  They argue that the Secretary should have waited for Southwest's responses to the First Discovery Order, which were due by April 24, 2017, before determining whether Defendants should respond to the First Set; many of the documents Southwest will produce overlap the documents Plaintiff now seeks. Jt. Stip. at 17-19.  Waiting one week to review Southwest's production of documents would have prevented unnecessary work by all counsel, as well as the Special Master – especially as the Secretary waited more than three months after the initial conferences between counsel to file the pending motion.  Id.

In the Joint Stipulation, Defendants raise four main objections to the discovery.  First, they contend that the requests are not relevant to the proceeding.  Jt. Stip. at 19-20.  Second, they argue that the Secretary has not shown that they --  Defendants Goldenwest and CPG --  are the parties who have possession, custody or control of the documents, as required by Rule 34.  Id. at

21-22.  Third, Defendants continue to object that the Secretary's definitions are overbroad and seek irrelevant information, noting in particular that the definition of "employees" encompasses outside *contractors* who provide services to Defendants at twelve separate locations, which includes vendors, accountants and even attorneys, and the definition of "your locations," by  use of the phrase *"including but not limited to,"* encompasses additional locations to those set forth in the definition.  Fourth,  as eleven of the twelve car washes are owned and operated by corporate entities who are not named defendants in the FLSA action, Defendants argue that it would be more convenient and less burdensome for the Secretary to seek third-party discovery directly from these corporate entities about the operations of the car washes, rather than from Defendants. Id. at 22-27.

# DISCUSSION

## V.

Counsel for the parties held lengthy meetings lasting several hours on January 11 and January 13, 2017, in an attempt to resolve the discovery disputes; the transcripts of those meetings are attached to Ms. Steffan's declaration.  *See* Steffan Decl. ¶¶ 4-14, Exhs. E-I.  The purpose or intent behind Local Rule 37-1 is for the parties to resolve their discovery disputes so a hearing before the Court is not necessary.  *See* Local Rule 37-1 (the parties must meet and confer "in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible").  In light of this purpose, there is no requirement for the parties to discuss what will happen if they are unable to resolve their disputes, i.e., the contents of a motion to compel. The focus of the parties' conference is resolution; not new litigation.

Having reviewed counsel's correspondence and the transcripts of their meetings, the Special Master finds that Plaintiff's counsel conferred with Defendants' counsel "in a good faith effort" to avoid bringing a motion to compel, as required by Local Rule 37-1 and Rule 37(a). In fact, during the meet and confer process, Plaintiff's counsel attempted to assist Defendants in searching for responsive documents by providing Defendants' counsel with "search terms" and possible custodians of records, Steffan Decl. ¶ 8, Exh. H, as well as a list of typical documents the Secretary expects an employer to have in an employee's personnel file. Id. ¶ 9, Exh. G. Further, the Secretary agreed to limit expansive phrases such as "reflecting, referring to, or regarding" and "including but not limited to" and to remove the phrase "included but not limited to documents" in Request No. 29. Id. ¶ 10. In turn, Defendants' counsel agreed with Plaintiff's counsel on the meaning of the terms "full-service car wash" and "hand car wash." Id. ¶ 16, Exh. J.

It also appears that during the meet and confer process, Defendants agreed to produce documents responsive to certain requests, Steffan Decl. ¶ 6, Exh. G; however, they did not do so. Defendants' failure to comply with agreements reached during the meet and confer process raises serious questions about *Defendants'* good faith participation in the process.

## VI.

Generally, the purpose of discovery is to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble*, 358 U.S. 677, 682 (1958). Discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their

dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635-36 (C.D. Cal. 2005); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005).).

As the parties know, the scope of discovery in this proceeding is governed by Rule 26(b)(1), which provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering six factors:  the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*

Rule 26(b)(2)(C) *requires* the Court to impose limitations to discovery when "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, and less expensive;  (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed.R.Civ.P.

26(b)(2)(C) (emphasis added). Subdivision (iii) is a recasting of most of the factors set forth in Rule 26(b)(1).

## VII.

In the First Discovery Order, the Special Master ruled that relevant discovery in this FLSA action covers documents relating to all employees who have worked and are working at Southwest's Brea car wash from June 23, 2013 to the present. The First Set to Defendants Goldenwest and CPG covers the same time period and expands the discovery to documents relating to all employees who have worked and are working at twelve car washes (including Brea) (defined as "your locations") owned and operated by Defendant Delrahim.

Initially, there is no merit to Defendants' claim that the First Set seeks irrelevant information. Defendants Goldenwest and CPG are named defendants in the FAC, subject to Plaintiff's claims under the FLSA. Thus, discovery regarding Defendants' operations and relations with their employees is relevant to the FLSA claims against them. Additionally, Delrahim is named as an individual defendant in the FLSA action. Defendant Delrahim is the sole owner, shareholder and President of Defendants Goldenwest and CPG, as well as eight corporations which own and operate twelve car washes which come within the definitions of the First Set: (1) Southwest Fuel Management, Inc. dba Brea Car Wash & Detail Center; (2) Goldenstate Petroleum, Inc. dba Redlands Car Wash and Detail Center; (3) Redlands Enterprises, Inc. dba Redlands Auto Spa; (4) Delkind, Inc. dba Agoura Hills Car Wash; (5) Chino Hills Oil, Inc. dba Placentia Car Wash; (6) Moreno Valley Delrahim, Inc. dba Moreno Valley Car Wash; (7) Petrolink Superior, Inc. dba Laguna Hills Auto Spa, (8) Alicia Auto Spa,

(9) Coast Hand Car Wash, and (10) Las Posas Car Wash; and (11) Newport Coast Car Wash and
(12) Steve's Detail.   As such, discovery regarding the twelve car washes' operations and
relations with their employees is relevant to Plaintiff's FLSA claims against Defendant
Delrahim.

At his deposition, Defendant Delrahim testified that the car washes he owns and operates
send employees' payroll information to Defendant Goldenwest, which serves as a "conduit" and
forwards the information for processing.   Steffan Supp. Decl. ¶ 11, Exh. D.   He also testified
that Defendant CPG processes the car washes' payrolls and sets employment policies for the car
washes.   Id.   When a new employee receives a "new hire packet," documents in the packet
identify CPG as the "employer."   Id. ¶ 12.   The evidence establishes that Defendants Goldenwest
and CPG have possession, custody or control of documents pertaining to the twelve car washes'
operations and relations with employees -- as well as Defendants' own operations and relations
with their employees  – all of which are responsive to the First Set.

Defendant Delrahim's many corporations employ approximately 650 employees.   Id. ¶
15, Exh. G.   Due to the very nature of the corporations, with Defendant Delrahim as the sole
owner, shareholder and President, it is fair to say that Delrahim unilaterally can determine how
each corporation conducts its business and whether each corporation's activities and functions
are limited to a specific car wash or location.   Documents from Defendants Goldenwest and CPG
should assist the Secretary in determining the roles of the various corporations and how the
corporations are being utilized by Defendant Delrahim vis-à-vis his obligations as an employer
under the FLSA.

18

Discovery about Defendants' own operations and relations with their employees undoubtedly will include information related to third parties with whom Defendants contract for materials and services, including contracts, proposals, bids, invoices and the like.   Such discovery is not overly broad in that it is relevant to the FSLA claims in that many employers attempt to classify employees as independent contractors, rather than employees, and documents pertaining to "contractors" will disclose such misclassifications.   Additionally, such discovery supplements Defendants' responses to Plaintiff's financial requests and is relevant for the same reasons.   Finally, such discovery will inform Plaintiff of third parties upon whom subpoenas may be served to confirm the information received from Defendants.   Accordingly, Defendants' objections to the scope of the definitions of "you," "yours" and "employees" in the First Set are overruled.

The Special Master, however, finds merit in Defendants' objection to the definition of the term "your locations," due to the use of the phrase "including but not limited to."   For purposes of the First Set, the definition should be limited to the twelve car washes set forth in the definition; not additional car washes the Secretary may discovery in the future.   As to newly discovered car washes owned and operated by Defendant Delrahim, the Secretary will need to serve a new set of document requests, rather than rely on the phrase "including but not limited to" to place an ongoing obligation on the Defendants to supplement responses they provide relating to the twelve car washes identified in the definition.   Thus, the phrase "including but not limited to" is stricken from the definition of "your locations" in the First Set.

The Special Master recognizes that the First Set seeks discovery covering the Brea car wash, which was the subject of the First Discovery Order. Some of the documents responsive to the First Set may be documents Southwest has produced or will produce under the First Discovery Order.  But those documents should not be the majority of the documents responsive to the First Set.  Brea car wash is only one of twelve car washes covered by the First Set, so it is unlikely that more than 8% of the documents responsive to the First Set would pertain to Brea car wash or would be duplicative of Southwest's production.   Thus, there is no merit to Defendants' objection that Plaintiff's motion to compel is premature and should not have been brought before Plaintiff receives documents from Southwest under the First Discovery Order.

Nevertheless, there will be some overlap with documents produced in response to the First Discovery Order.   During the meet and confer process,   however, Plaintiff's counsel advised Defendants' counsel that Defendants Goldenwest and CPG need not produce the *same* documents *other defendants* produce to Plaintiff.  *See* Kang Decl. ¶ 11, Exh. J  ("If responsive documents relating to the Brea location were already produced in response to the Secretary's requests for production to the three original Defendants, [Goldenwest and CPG] need not produce the same documents again, but please indicate this in your written responses.").  And in their supplemental responses to the First Set, Defendants Goldenwest and CPG acknowledged that they were *not* producing documents previously produced to Plaintiff by others.  *See* Kang Decl. ¶ 18, Exh. P at 22 ("Defendant responds that the responsive documents have already been produced in this matter.  *See* Bates Numbers SW009248-SW009337, SW010401-SW010621.").  Thus, there is no merit to Defendants' objection that the First Set is "unreasonably duplicative" within the meaning of Rule 26(b)(2)(C).  To the contrary, duplication should not exceed roughly

8%, as discussed above, and Defendants need not produce duplicative documents.

Defendants Goldenwest and CPG also contend that it would be less "burdensome" and "more convenient" within the meaning of Rule 26(b)(2)(C), for Plaintiff to seek discovery regarding the twlve car washes from the non-party corporations Defendant Delrahim owns, rather than from Defendants. There is not an iota of evidence to support this contention. Defendants have presented nothing to show that it is "burdensome" for them to produce documents responsive to the First Set, including the videos (as discussed below); all litigants have an obligation or a "burden" to produce documents. And Defendants have presented absolutely no evidence showing it is "more convenient" to obtain the discovery from third parties.

To the contrary, it appears to be considerably *less* convenient to obtain discovery from third parties. For example, in February 2017, Plaintiff sought to serve subpoenas on Defendants' third-party payroll and time clock providers, ADP, PayChex, and TimeClock Plus; however, *Defendants* objected although the subpoenaed parties did not. Steffan Decl. ¶¶ 18-19, Exhs. M-P. Consequently, counsel for the parties met and conferred, id. ¶ 20, Exh. Q, and on March 10 and March 14, 2017, Plaintiff served revised subpoenas on ADP and TimeClock. Id. ¶ 22. Plaintiff learned, however, that "neither TimeClock nor ADP currently has any records of hours worked or wages paid to Defendants' employees. Paychex provided cumulative pay records covering the period June to December 2013 only, as Paychex stopped providing services to Defendants after 2013." Id. Moreover, the records from PayChex lacked vital information "and do not eliminate the need to obtain all pay and time records from Defendants." Id.

Further, according to Plaintiff, it is impossible to conduct third-party discovery when Plaintiff "does not know which corporate names are associated with the employee records maintained by the third parties.  Multiple corporate entities have been involved in the management and administration of the various car washes between 2013 and the present…."  Id. ¶ 20.  Defendants have not refuted this claim.

The First Discovery Order addresses in detail the relevancy of particular categories of document requests, including wage and hour requests, videos, and financial documents.  There is no need to repeat the Special Master's analysis here.  Generally, those rulings apply to the First Set's requests, albeit with the understanding that some requests in the First Set are duplicative of discovery covered by  the First Discovery Order, and Defendants need not produce documents which other defendants produce to Plaintiff, as discussed above.

The Special Master also recognizes that some Wage & Hour Requests are duplicative of each other and of some Management Requests.  For example, Request Nos. 16 and 36 both seek discovery regarding commissions.  Nevertheless, *as a whole*, the First Set is not "unreasonably duplicative" within the meaning of Rule 26(b)(2)(C).  Of course, Defendants need not produce duplicative documents; however, Defendants should state in response to a request that they have produced responsive documents answering another request and identify that request by number; Defendants need not identify the duplicative documents  by Bates numbers.   Plaintiff's motion to compel responses to Request Nos. 1-5, 12, 16, 23, 36-37 and 49 **is granted**, with the limitations stated.

As to Request No. 30, Defendants have presented no evidence that producing the videos taken at any of the car washes is burdensome or expensive.  Nevertheless, Defendants argue that the cost of producing the videos should be shifted to Plaintiff.  Jt. Stip. at 42.  Without providing evidence of the cost of producing the videos, and evidence that the cost of production is a financial burden to Defendants, Defendants have not shown grounds exist to shift the cost of producing the videos to Plaintiff; thus, Defendants' request for cost-shifting **is denied.** Plaintiff's motion to compel a response to Request No. 30 **is granted**.

Discovery of Defendants' financial documents and tax returns is relevant to Plaintiff's FLSA claims against Defendants Goldenwest and CPG, both of whom are named defendants in the FAC, for the same reasons discussed in the First Discovery Order as to Defendant Southwest. This is especially true as to Defendant CPG, which the Secretary avers is listed as "employer" in new employees' packets.  Moreover, in light of Defendant Delrahim's ownership of Defendants Goldenwest and CPG, financial discovery is relevant to Plaintiff's FLSA claims against Defendant Delrahim. Defendants' other objections to the requests for financial and tax returns are denied for the reasons set forth in the First Discovery Order.  Defendants may designate responsive documents "Confidential," although they have not presented any evidence supporting a claim of "trade secrets" or other information requiring protection. Thus, Plaintiff's motion to compel responses to Request Nos. 14-15, 17-18, and 48 **is granted**; and Defendants may designate responsive documents "Confidential."

The First Discovery Order did not consider all of the types of requests characterized herein as "Management Requests." Essentially, these requests seek an employer's management-related documents, such as job announcements, applications, and interview notes; samples of personnel files; personnel handbooks, materials and other documents regarding hours worked, pay, scheduling, and conditions of employment; agendas and minutes or notes of  management meetings; notices and forms posted at locations or required to be at locations by management; documents showing the title "employer" filed with agencies, such as workers' compensation and unemployment insurance; and the like.

Some of the Management Requests seek discovery which overlaps with discovery under the First Discovery Order.  That issue has been resolved by the parties, as discussed above. Additionally, some of the Management Requests seek discovery which overlaps with the discovery sought by the Wage & Hour Requests, which also is discussed above. Defendants Goldenwest and CPG need not produce duplicative documents; however, Defendants should state that they have produced responsive documents in answering another request and identify that request by number; Defendants need not identify the duplicative documents by Bates numbers.  Plaintiff's motion to compel responses to Request Nos. 1, 8, 10, 20, 22, 24, 29, 34, 35, 51, 52, 57, and 58 **is granted**.

### VIII.

Rule 37(a)(5) provides that reasonable expenses must be awarded to the prevailing party when a motion to compel is granted, with certain exceptions:

(A)    If the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the … discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(A) (emphasis added).

Defendants argue against awarding sanctions to Plaintiff, stating "there is a substantial dispute on which reasonable minds could differ; thus sanctions are not warranted."  Jt. Stip. at 47-48.  Not so.  The First Discovery Order should have made clear to Defendants that discovery in the First Set which is identical to, or even similar to, discovery covered by the First Discovery Order is relevant, and that Defendants must produce videos to Plaintiff unless they can show production is an undue burden or expense (which they have not shown).  In other words, without Plaintiff filing a motion to compel responses to the First Set, Defendants should have produced numerous responsive documents, including videos; they produced only a roster and no videos.

25

The Special Master finds that Defendants' objections to the motion to compel and to the discovery in the First Set are not "substantially justified." Fed.R.Civ.P. 37(a)(5)(A)(ii). As set forth in Part V above, the Special Master further finds that Plaintiff attempted "in good faith to obtain the … discovery without court action[.]" Fed.R.Civ.P.37(a)(5)(A)(i).  Finally, the Special Master concludes that there are no other circumstances which would make unjust an award of reasonable expenses against Defendants.  Fed.R.Civ.P. 37(a)(5)(A)(iii).  Accordingly, Plaintiff's request for sanctions **is granted**.

## ORDER

1.  Plaintiff's motion to compel Defendant Goldenwest Solutions Group, Inc. to produce documents  responsive to First Set, Request Nos. 1-5, 7-8, 10, 12, 14-18, 20, 22-24, 29-30, 34-37, 48-49, 51-52, and 57-58 **is granted.**  Defendant Goldenwest Solutions Group, Inc. shall produce all responsive documents to the Secretary, except for duplicative documents produced in response to the First Discovery Order, no later than ten (10) days from the date of this Order. All responses shall be verified under oath by Defendant Delrahim, including any response that Defendant  has no documents responsive to a specific request.

2.  Plaintiff's motion to compel Defendant California Payroll Group, Inc. to produce documents  responsive to First Set, Request Nos. 1-5, 7-8, 10, 12, 14-18, 20, 22-24, 29-30, 34-37, 48-49, 51-52, and 57-58 **is granted.**  Defendant California Payroll Group, Inc. shall  produce all responsive documents to the Secretary, except for duplicative documents produced in response to the First Discovery Order, no later than ten (10) days from the date of this Order.  All responses shall be verified under oath by Defendant Delrahim, including any response that

Defendant has no documents responsive to a specific request.

3.  Plaintiff's request for reasonable expenses **is granted**, pursuant to Rule 37(a)(5)(A). The briefing schedule on the award of reasonable expenses follows:

Plaintiff shall provide evidence to support an award of reasonable expenses, including supporting declaration(s), no later than ten (10) days from the date of this Order;

Defendants may file an opposition, if any, no later than ten (10) days from the filing of Plaintiff's papers; and

Plaintiff may file a reply, if any, no later than five (5) days from the filing of Defendants' opposition.

The Special Master will set a date and time for oral argument on the amount of the award, after consulting the parties.

4.  The Case Manager shall promptly file and serve this Order on the parties and the District Court.

May 31, 2017                          By: _Rosalyn M Chapman_____
1220053347.5                          Hon. Rosalyn Chapman (Ret.), Special Master

27