JANET M. HEROLD
Regional Solicitor
ROSE DARLING
Senior Trial Attorney (CSBN #243893)
NANCY E. STEFFAN
Trial Attorney (CSBN #280958)
M. CRISTOPHER SANTOS
Trial Attorney (CSBN #306346)
Office of the Solicitor
United States Department of Labor
350 South Figueroa Street, Suite 370
Los Angeles, California 90071-1202
Telephone: (213) 894-5366
Facsimile: (213) 894-2064
steffan.nancy.e@dol.gov
Attorneys for Plaintiff, United States
Secretary of Labor

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **R. ALEXANDER ACOSTA**, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHWEST FUEL MANAGEMENT, INC.,** *dba* **BREA CAR WASH & DETAIL CENTER,** *et al.*,<br><br>Defendants | Case No.: 2:16-cv-4547-FMO-AGRx<br><br>**SECRETARY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR DEFENDANTS TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Hon. Fernando M. Olguin<br><br>Trial: July 17, 2018 |

## **TABLE OF CONTENTS**

I.      **INTRODUCTION** ...................................................................................1

II.     **FACTUAL BACKGROUND** ................................................................3

III.    **ARGUMENT** .........................................................................................6

    A.  **Legal Framework** .......................................................................6

        1.  Employees cannot waive their right to wages due under the FLSA. .............6

        2.  Standard for Issuing a TRO ...............................................................8

    B.  **The Court should issue a TRO and preliminary injunction to prevent Defendants and their attorneys from continuing to profit from their misconduct by intimidating, improperly influencing, coercing, or retaliating against potential witnesses.** .............................................9

        1.  The Secretary is likely to succeed on the merits of his claim that Defendants retaliated against employees by coercing them to sign declarations that contradict what the destroyed video evidence would have shown to be true and that may forfeit the employees' right to back wages in this case...........9

            *i. Protected Activity* .............................................................10

            *ii. Adverse Action* ...............................................................11

            *iii. Causation* .......................................................................13

        2.  The Secretary is likely to succeed on the merits of his claim that Defendants have violated Section 11(a) of the FLSA by obstructing the Secretary's enforcement activities. .............................................................14

        3.  Absent immediate injunctive relief, the Secretary, the public, and Defendants' employees will continue to suffer irreparable harm................15

        4.  The balance of equities tilts sharply in the Secretary's favor and an injunction is in the public interest. .............................................16

IV.   **CONCLUSION** ..................................................................................16

SECRETARY'S MEMORANDUM OF POINTS AND      Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

i

# **TABLE OF AUTHORITIES**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,

632 F.3d 1127 (9th Cir. 2011) ................................................................8

*Antoninetti v. Chipotle Mexican Grill, Inc.*,

643 F.3d 1165 (9th Cir. 2010) ...............................................................8

*Arcamuzi v. Continental Air Lines, Inc.*,

819 F.2d 935 (9th Cir. 1987) ...............................................................15

*Arias v. Raimondo*,

860 F.3d 1185 (9th Cir. 2017) .............................................................10

*Atchison, T. and S. F. Ry. Co. v. Lennen*,

640 F.2d 255 (10th Cir. 1981) ...............................................................9

*Barrentine v. Arkansas-Best Freight System*,

450 U.S. 728 (1981) ...........................................................................6, 7

*Blackie v. State of Me.*,

75 F.3d 716 (1st Cir. 1996) .................................................................13

*Brooklyn Savings Bank v. O'Neil*,

324 U.S. 697 (1945) ...............................................................................7

*Camp v. Alexander*,

300 F.R.D. 617 (N.D. Cal. 2014) ........................................................11

*Centeno-Bernuy v. Perry*,

302 F. Supp. 2d 128 (W.D.N.Y. 2003) ...............................................15

*Conner v. Schnuck Markets, Inc.*,

121 F.3d 1390 (10th Cir. 1997) ...........................................................13

*Guifu Li v. A Perfect Day Franchise, Inc.*,

270 F.R.D. 509 (N.D. Cal. 2010) ........................................................11

SECRETARY'S MEMORANDUM OF POINTS AND           Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

ii

*Hashimoto v. Bank of Hawaii,*
    999 F.2d 408 (9th Cir. 1993) ....................................................................10

*In Wells Fargo Home Mortg. Overtime Pay Litig.,*
    527 F. Supp. 2d 1053 (N.D. Cal. 2007) ......................................................11

*Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly,*
    572 F.3d 644 (9th Cir. 2009) ....................................................................16

*Kasten v. Saint-Gobian Performance Plastics Corp.,*
    563 U.S. 1 (2011)........................................................................ 13, 14, 15

*Kearney v. Town of Wareham,*
    316 F.3d 18 (1st Cir. 2002)........................................................................10

*Kleiner v. First National Bank of Atlanta,*
    751 F.2d 1193 (11th Cir. 1985) ................................................................11

*Lambert v. Ackerley,*
    180 F.3d 997 (9th Cir. 1999) ....................................................................10

*Marxe v. Jackson,*
    833 F.2d 1121 (3d Cir. 1987).......................................................................8

*Mevorah v. Wells Fargo Home Mortg., Inc.,*
    2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ...........................................12

*Mitchell v. Robert DeMario Jewelry, Inc.,*
    361 U.S. 288 (1960)....................................................... 9, 10, 14, 15

*Mullins v. City of New York,*
    626 F.3d 47 (2d Cir. 2010)......................................................................9, 15

*Raich v. Ashcroft,*
    352 F.3d 1222 (9th Cir. 2003) .....................................................................8

*Ray v. Henderson,*
    217 F. 3d 1234 (9th Cir. 2000) ..................................................................11

*Sauers v. Salt Lake Cnty.,*
    1 F.3d 1122 (10th Cir. 1993) ....................................................................10

SECRETARY'S MEMORANDUM OF POINTS AND          Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

*Sierra On–Line, Inc. v. Phoenix Software, Inc.*,

    739 F.2d 1415 (9th Cir. 1984) ...................................................................8

*Sjoblom v. Charter Communications, LLC*,

    2007 WL 5314916 (W.D. Wis. Dec. 26, 2007) .........................................12

*Socias v. Vornado Realty, L.P.*,

    297 F.R.D. 38 (E.D. N.Y. 2014) ................................................................7

*Tony and Susan Alamo Found. v. Sec'y of Labor*,

    471 U.S. 290 (1985) ..................................................................................7

*Trailer Train Co. v. State Bd. of Equalization*,

    697 F.2d 860 (9th Cir. 1983) ...............................................................8, 15

*United States v. Odessa Union Warehouse Co-op*,

    833 F.2d 172 (9th Cir. 1987) .....................................................................8

*Wang v. Chinese Daily News, Inc.*,

    236 F.R.D. 485 (C.D. Cal. 2006) .............................................................11

*Winter v. Natural Res. Def. Council, Inc.*,

    555 U.S. 7 (2008) ......................................................................................8

*Wright v. Adventures Rolling Cross Country, Inc.*,

    No. C–12–982, 2012 WL 2239797 (N.D. Cal. June 15, 2012) .............12, 13

**Statutes**

29 U.S.C. § 211(a) ...........................................................................................14

29 U.S.C. § 215(a)(3) ....................................................................................9, 10

29 U.S.C. §§ 211 and 217 .................................................................................9

**Rules**

Federal Rule of Civil Procedure 65 ...................................................................8

SECRETARY'S MEMORANDUM OF POINTS AND       Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

iv

## I.    INTRODUCTION

As this Court is aware, in May 2015, the Special Master found that Defendants intentionally destroyed video evidence regarding the core issue of liability in this case—the hours that Defendants' employees worked off the clock—and that this evidence would have been unfavorable to Defendants. As the Secretary recently learned, rather than take steps to preserve the status quo and ensure that no more evidence was destroyed, two months after this ruling, defense counsel initiated a campaign to secure dozens of declarations from employees stating that the off-the-clock work never occurred. Defendants filed 37 of these declarations with their summary judgment motion on November 21, 2017; 34 of the declarations were signed by employees in July 2011; all 37 declarations were concealed from the Secretary until long after the close of discovery.

These declarations are the latest example of Defendants' and their counsels' misconduct in this case.[1] At the time the declarations were secured, defense counsel was well aware that their clients had been sanctioned for destroying the best evidence of hours worked, i.e., the videos from dozens of cameras trained on the 12 jobsites during all relevant work hours. As the Special Master found, Defendants did not accidently

---

[1] In addition to the finding that they destroyed the best evidence of hours worked, Defendants and their counsel have been sanctioned three other times in this case: first for "deliberately and willfully stone-walling on discovery" by refusing for months to produce any documents in response to discovery requests (Dkt. 111 at 25-26, 5), then for filing an unjustified motion for protective order which sought retroactive relief from the multiple orders that they preserve and produce video (Dkt. 144 at 19-20), and most recently for filing an untimely and meritless motion to take 785 depositions (Dkt. 154 at 22-24). Defendants also filed meritless motions refusing to pay the Secretary's reasonable fees. *See* Dkt. 143 at 8 ("Not only are Defendants' Objections to the award of reasonable expenses to Plaintiff without merit, it appears to the Special Master that the Objections may have been made for the improper purpose of "needlessly increas[ing] the cost of litigation," within the meaning of Rule 11(b)(1)…."). In addition to these orders, Defendants and their counsel walked out of depositions (*see* Dkt. 56 at 6-7) and lied about their client's age in a court filing (*see* Dkt. 101 at 1, n.1).

destroy this video; they intentionally destroyed it to deprive the Secretary of its benefit, and as a result, a presumption exists that the video was unfavorable to them. *See* Dkt. 99 at 23-24. Fully aware of the court's view of their clients' misconduct, defense counsel nonetheless proceeded to solicit from their clients' employees statements that contradict what the video evidence would have shown to be true. Defendants' counsel was well aware that they do not represent the employees and that their clients' interests are adverse to the interests of the workers for whom the Secretary seeks to collect wages here. And defense counsel was keenly aware of the economic power their clients had over the employee declarants and that these workers were required to speak with defense counsel on work time and as a condition of employment. Finally, defense counsel knew that the Secretary had identified specific damages for each of the employee declarants and thus by soliciting these declarations, defense counsel was seeking waivers that are unenforceable as a matter of law. In short, defense counsel knew or should have known that the declarations were inherently coercive, and thus Defendants were potentially securing false testimony from their employees, thereby suborning perjury to this Court.

The cumulative effect of Defendants' misconduct has distorted the truth-finding process and compromised the integrity of this litigation. Urgent relief is needed to stop Defendants from continuing to intimidate and coerce witnesses and to prevent them from further distorting the record and profiting from their repeated bad faith conduct.

The Secretary's investigation of Defendants' declaration campaign is not yet complete, and cannot be completed without the opportunity to depose defense counsel regarding the circumstances under which they interviewed Defendants' vulnerable workforce and secured these declarations on work time. The information gathered to date by the Secretary suggests that defense counsel abandoned their ethical duties and failed to safeguard the integrity of the fact-finding process. Therefore, Defendants and their counsel should be enjoined from discussing this case with employees or soliciting declarations while the Secretary completes his investigation.

In addition to violating ethical requirements and the obligations owed as officers of the Court, Defendants' coercive and intimidating conduct—in particular, attempting to secure unenforceable waivers as a condition of employment—also violates Sections 15(a)(3) and 11(a) of the FLSA. Defendants should thus also be enjoined from retaliating or discriminating in any way against any current or former employee and from obstructing the Secretary's enforcement efforts.

The Secretary asks the Court to issue the attached TRO, which includes ordering Defendants to immediately produce all documents and evidence related to soliciting and securing declarations and for defense counsel to present themselves for deposition by the Secretary regarding these matters in the next 14 days. The Secretary further requests that the Court grant him leave, after he completes his investigation, to expand the Secretary's allegations at issue, including possibly naming defense counsel as defendants for violating Sections 11(a) and 15(a)(3) of the FLSA, and to seek appropriate sanctions.

## II.    FACTUAL BACKGROUND

In May 2017, the Special Master found that Defendants had intentionally destroyed car wash surveillance video and that the video would have been unfavorable to Defendants. Dkt. 99 at 23-24. Despite this finding, and despite two orders that Defendants produce all video in their possession (Dkts. 88 & 111), Defendants continued to destroy video for an additional three months. Dkts. 88, 99, 111. It was not until mid-August 2017 that Defendants agreed to begin preserving the video from all 12 car wash locations, which Defendants began producing to the Secretary after the close of discovery in September 2017. Dkt. 171-2 at P44.

It was after the finding that they had destroyed unfavorable evidence but before they agreed to begin preserving that evidence prospectively that defense counsel approached their clients' employees to solicit the declarations at issue. On November 21, 2017, in response to the Secretary's summary judgment motion, Defendants filed 37 of these declarations from their current non-managerial car wash employees. Dkts. 172-32

SECRETARY'S MEMORANDUM OF POINTS AND          Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

3

to 172-39.[2] 34 declarations were signed by employees in July 2017—three months before the close of discovery—and were not disclosed to the Secretary until the parties' summary judgment filings. Steffan Decl., Ex. A. All 37 declarations state in substantially similar terms that the employees never worked off-the-clock and were paid for all hours worked. *See id.* The declarations also consistently state that the "policy at [the car washes] is that [employees] are not allowed to work without being punched in, and all hours of work must be properly recorded on the time clock." *See, e.g.,* Dkt. 172-32 at 25, ¶ 4; Dkt. 172-32 at 41, ¶ 5; Dkt. 172-32 at 50, ¶ 4. The declarations further state that the employees' statements "may be used to defend [Defendants] in a lawsuit which may have been brought on my behalf by the Department of Labor." *See, e.g.,* Dkt. 172-32 at 9, ¶ 13; Dkt. 172-32 at 17, ¶ 11; Dkt. 172-32 at 33, ¶ 10.

Beginning in December 2017, the Secretary began investigating the circumstances under which Defendants secured the declarations. *See* Declaration of Wage and Hour Investigators Jean Lui, Maribel M. Tapia, Patricia Gatica, and Claudia Cotne-Martinez, filed concurrently with this TRO application. According to interviews with several current and former car wash employees, in or around July 2017, Defendants' supervisors instructed employees to meet in person with defense counsel during work hours to "sign papers" or provide a declaration. Lui Decl. ¶ 5; Tapia Decl. ¶ 5; Cotne Decl. ¶ 5; Gatica Decl. ¶ 5. One employee stated that he was called into the car wash office directly by one of Defendants' attorneys during his lunch break, was not told that the meeting was optional, and signed the declaration out of fear that he would lose his job or have his hours cut if he refused. Lui Decl. ¶ 9.  Another employee stated that management frequently asked employees to sign papers, often with inaccurate or false information. Lui Decl. ¶ 8. An employee who signed a declaration stated that it was inaccurate

---

[2] For the Court's convenience, a true and correct copy of the 37 declarations is attached as Exhibit A to the Declaration of Nancy E. Steffan, which is filed concurrently with the Secretary's TRO application.

1  because it failed to mention that he had worked off the clock during certain periods of

2  his employment. Lui Decl. ¶ 7. Likewise, another employee stated that he told defense

3  counsel that he had worked off the clock in the past, but that the attorney interviewing

4  him asked only about the present time. Gatica Decl. ¶ 5; *see also* Cotne Decl. ¶ 6.  The

5  entire process, including the interview and preparing, reviewing, and signing the

6  declaration took less than an hour. Lui Decl. ¶ 5; Cotne Decl. ¶¶ 7, 10. Employees were

7  not provided with copies of the papers they signed. Lui Decl. ¶¶ 7, 9, 10; Cotne Decl. ¶¶

8  10, 7. Notably, two employees stated they remembered signing something during their

9  meeting with defense counsel, but these documents were not included among the

10  declarations that Defendants produced to the Secretary in late November. Gatica Decl. ¶

11  6; Tapia Decl. ¶ 6.

12      On January 5, 2018, the undersigned counsel met with defense counsel to discuss

13  the issues raised in this application.[3] During the meeting, the Secretary summarized the

14  results of his recent investigation and raised the concerns discussed above regarding

15  defense counsels' conduct in securing the declarations. Steffan Decl., Ex. B at 15-16, 30-

16  33. In response, defense counsel asserted that the Secretary's concerns were

17  "speculation," and that there was "nothing unusual" about their "process" in obtaining

18  the declarations. *Id.* at 18:11-15, 20:8-24. Defendants refused, however, to disclose what

19  that process was or to identify the information and documents that they exchanged with

20  employees. *See id.* at 59:17-60:12. At one point, Defendants seemed to be inclined to

21  agree not to solicit any further employee declarations until the Court ruled on the

22  pending summary judgment motions, but later defense counsel withdrew that suggestion.

23  *Id.* at 70:23-71:13.

24

25

26

27  [3] A true and correct copy of the transcript of counsels' meeting is attached as Exhibit B

28  to the Declaration of Nancy E. Steffan, which is filed with the Secretary's TRO application.

SECRETARY'S MEMORANDUM OF POINTS AND                    Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

5

The Secretary also asserted his position during the meeting that the declarations are inadmissible because Defendants failed to produce them during discovery. *Id.* at 19:24-20:6. The Secretary further requested that Defendants immediately produce all other declarations or related documents that were prepared by Defendants but to date have been withheld from the Secretary. *Id.* at 51:5-20. In response, defense counsel claimed that the employee declarations were "work product, until we use them." *Id.* 22:4-6. Defendants admitted, however, that they never listed these documents on a privilege log. *See id.* at 26:15-19, 28:-29:2.

On January 12, 2018, Defendants produced several documents titled "Voluntary Interview Consent Form," which were signed by the employee declarants.[4] Steffan Decl. ¶ 4 & Ex. C. The consent forms purport to explain to employees the Secretary's action and defense counsels' role during the one-on-one meeting with employees. *Id.* Although the consent forms note that this lawsuit is pending, the forms fail to inform the employees that they are among the class of workers on whose behalf the Secretary seeks back wages or that the Secretary has already computed back wages owed to each of them. *See id.* Importantly, the consent forms do not, and likely could not, have advised employees that their employer had destroyed video evidence that may have shown that these employees were indeed working during precisely the same hours as to which these employees were being asked to sign declarations saying they had <u>not</u> worked. *See id.*

## III.   ARGUMENT

### A.   Legal Framework

1.   <u>Employees cannot waive their right to wages due under the FLSA.</u>

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working conditions. *Barrentine v. Arkansas-Best Freight System*,

---

[4] Other than the consent forms, Defendants have refused to disclose any other documents associated with their declaration campaign, including the additional signed declarations that were neither produced nor identified on any privilege log.

SECRETARY'S MEMORANDUM OF POINTS AND          Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

6

450 U.S. 728, 739 (1981). Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 710 (1945). "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (internal citations and quotation marks omitted). Moreover, because "[l]ow wage employees . . . often face extenuating economic and social circumstances and lack equal bargaining power, . . . they are more susceptible to coercion . . . ." *Socias v. Vornado Realty, L.P.*, 297 F.R.D. 38, 40 (E.D. N.Y. 2014).

Under this well-established precedent, the 37 non-managerial declarations that Defendants filed with their summary judgment motion, to the extent that they purport to waive or limit the individual employees' rights under the Act, are null and void as a matter of law.[5] Defendants have no reasonable or legal basis to believe they can attempt to settle the Secretary's FLSA litigation by securing releases directly from the employees. That defense counsel procured the alleged releases after their clients intentionally destroyed the smoking gun in this case only magnifies the coercive nature of the employees' statements. Thus, on its face, any provisions in the declarations that purport to waive an employee's right to back wages are unenforceable, do not curtail the rights of the employees under the Act, and have no effect on the Secretary's cause of

---

[5] To the extent Defendants intend to use the declarations to prove the "real" amount of back wages due to employees, they cannot be used for such a purpose. The employees' understanding of what they are owed under the FLSA is not relevant to this case. Even if they are satisfied with the wages they have received, the employees are not permitted to settle a claim for back wages without oversight of the Secretary or the Court. "The purposes of [the FLSA] require that it be applied <u>even to those who would decline its protections</u>." *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) (emphasis added).

SECRETARY'S MEMORANDUM OF POINTS AND       Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

7

action. They are merely evidence of Defendants' illegal conduct, which should be enjoined.

### 2. Standard for Issuing a TRO

A party seeking a TRO under Federal Rule of Civil Procedure 65 must establish that (i) he is likely to succeed on the merits of his claims; (ii) he is likely to suffer irreparable harm without preliminary relief; (iii) the balance of equities tips in his favor; and (iv) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (discussing standard for preliminary injunction); *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

Further, the Ninth Circuit has held that if a party seeks a preliminary injunction to prevent a violation of a federal statute and that statute specifically provides for injunctive relief, the moving party does not need to show irreparable harm. *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987); *see also Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175–76 (9th Cir. 2010) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.") (internal citations and quotation marks omitted).

As set forth below, the Secretary meets the requirements for a TRO and preliminary injunction. In addition, because the Secretary is seeking to enjoin Defendants from violating the FLSA, and Section 17 of the Act specifically provides for injunctive relief, he need not show irreparable harm for the Court to issue an injunction. *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983); *Marxe*

SECRETARY'S MEMORANDUM OF POINTS AND                    Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

8

*v. Jackson*, 833 F.2d 1121, 1128 n.3 (3d Cir. 1987); 29 U.S.C. §§ 211 and 217. Rather, the Secretary need only show that Defendants are engaged in, or about to engage in, the act or practices prohibited by the statute. *See Atchison, T. and S. F. Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981). As set forth below, however, the Secretary has taken the additional step in this case of showing that an injunction is necessary to prevent irreparable harm.

> **B.    The Court should issue a TRO and preliminary injunction to prevent Defendants and their attorneys from continuing to profit from their misconduct by intimidating, improperly influencing, coercing, or retaliating against potential witnesses.**

The TRO and preliminary injunction sought by the Secretary are extraordinary requests forced by Defendants' intentional spoliation of evidence and defense counsels' bad faith attempts to further obscure the factual record in this case. The Secretary attempted to obtain a stipulation from defense counsel on this issue, but Defendants have refused to cease their coercive conduct or halt their efforts to secure employee declarations.

> 1.    <u>The Secretary is likely to succeed on the merits of his claim that Defendants retaliated against employees by coercing them to sign declarations that contradict what the destroyed video evidence would have shown to be true and that may forfeit the employees' right to back wages in this case.</u>

Section 15(a)(3) of the FLSA provides that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). The anti-retaliation provision is a critical element in the enforcement scheme of the FLSA. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960); *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) ("Unchecked retaliation subverts the purpose of the FLSA.").

SECRETARY'S MEMORANDUM OF POINTS AND           Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

9

Here, on the heels on Defendants' destruction of evidence, Defendants and their counsel have abused their positions of power and engaged in improper conduct likely to "induce aggrieved employees quietly to accept substandard conditions" and to ensure that employees do not feel free to participate in this litigation, as is their right. *Robert DeMario Jewelry*, 361 U.S. at 292. It is precisely this activity that this TRO application aims to end. Section 15's prohibition on retaliation is broad, protecting current and former employees against both Defendants and their agents, including their counsel. *See Arias v. Raimondo*, 860 F.3d 1185, 1191-92 (9th Cir. 2017).

In order for the Secretary to establish a *prima facie* case of retaliation under the FLSA, he must show (i) the employee engaged in a statutorily protected activity under Section 15(a)(3); (ii) the employee suffered adverse employment action; and (iii) a causal link exists between the employee's conduct and the employment action. *Kearney v. Town of Wareham*, 316 F.3d 18, 23 (1st Cir. 2002).

### i. Protected Activity

Section 15(a)(3) protects an employee who ". . . has testified or is about to testify in" a proceeding under the FLSA. 29 U.S.C. § 215(a)(3); *Robert DeMario Jewelry*, 361 U.S. at 292. Generally speaking, conduct made in anticipation of employees engaging in protected activity is "no less retaliatory than action taken after the fact." *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1128 (10th Cir. 1993); *see also Hashimoto v. Bank of Hawaii*, 999 F.2d 408, 411 (9th Cir. 1993); *Lambert v. Ackerley*, 180 F.3d 997, 1005 (9th Cir. 1999) (if the FLSA "is to function effectively, inspectors must be free from the threat of retaliatory discharge for identifying safety and quality problems").

All 37 employees whom Defendants induced to sign declarations purporting to waive any back wages owed to them are potential witnesses for the Secretary in this litigation. Providing testimony in a proceeding arising under the FLSA is a "protected activity," subject to the protections of the anti-retaliation provision. 29 U.S.C. § 215(a)(3); *Robert DeMario Jewelry*, 361 U.S. at 292 ("Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their

grievances."). Accordingly, this element of the anti-retaliation cause of action is satisfied.

### ii. Adverse Action

Courts in the Ninth Circuit have defined an adverse employment action broadly to mean any employment decision "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F. 3d 1234, 1243 (9th Cir. 2000). Courts in this district have also recognized that in the context of an employment relationship, there is a particularly acute risk of coercion and abuse when the employer solicits liability waivers from its employees. "Unsupervised communications urging individuals to [waive their right to collect wages due under the FLSA], by their very nature, are likely to produce distorted statements on the one hand and the coercion of individuals on the other. This is especially true when the parties are engaged in an ongoing employer-employee relationship." *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 490 (C.D. Cal. 2006), *judgment vacated on other grounds by Chinese Daily News, Inc. v. Wang*, 565 U.S. 801 (2011) (*citing Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985)); *see also Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (noting that "[t]he caselaw nearly universally observes that employer-employee contact is particularly prone to coercion"). Such relationships can transform an employer's suggestions, requests, or observations into directives or threats. *See, e.g., In Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060-61 (N.D. Cal. 2007) (finding that employees' declarations prepared by the defendant were "selectively presented and carry within them possible pressure arising from ongoing employment relationships").

In a case with similar facts, the court found that in-person meetings between defendants and putative class members in an FLSA action were "inherently coercive" where the defendants obtained signed releases from a substantial majority of the employees but never provided employees with copies of what they signed. *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010). Similarly, in

*Sjoblom v. Charter Communications, LLC*, 2007 WL 5314916, *3 (W.D. Wis. Dec. 26, 2007), the court sanctioned an employer who had obtained numerous affidavits from potential FLSA class members in a "blitz campaign" after providing a consent form that described the litigation but failed to "notify them that they might be entitled to become a part of the lawsuit." *Sjoblom v. Charter Communications, LLC*, 2007 WL 5314916, *3 (W.D. Wis. Dec. 26, 2007). Finally, in *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005), the court restricted counsel's communications with potential class members because defense counsel solicited declarations without notifying the individuals that, *inter alia*, the information could be used in a manner adverse to their interests. *Id.* at *3 & *1.

As with the defendants' conduct in the cases described above, defense counsels' communications with Defendants' car wash employees were inherently coercive and "have plausibly had a chilling effect on participation in [this FLSA] action." *Wright v. Adventures Rolling Cross Country, Inc.*, No. C–12–982, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012). The Secretary's investigation revealed that employees were instructed by their supervisors to meet in person with defense counsel during work time to "sign papers." Defense counsel failed to inform the employees that they were among the workers on whose behalf the Secretary's lawsuit was brought and that the Secretary had determined they were owed back wages. And at least one employee was asked to sign, and did sign, a declaration containing information that was false and contrary to what he had told the attorney who interviewed him. Furthermore, nearly all of the declarations state that the company's policy prohibits employees from working off the clock. Imagine defense counsel reminding employees (whom they do not represent, whose interests are adverse to their clients, and whom their clients economically control) at an interview during work hours that it is against company policy to work off the clock, and then asking employees during that same interview whether in fact they worked off the clock. Given this scenario, it's hard to imagine an employee who would <u>not</u> feel intimated and coerced; thus, employees' statements that they "have never been

asked to work without recording [their] time" and "have always received [their] payment for all the time" are at best unreliable, and highly likely, even false. *See, e.g.* Dkt. 172-32 at 33, ¶ 7; Dkt. 172-33 at 12, ¶ 5; Dkt. 172-33 at 22, ¶ 11; 172-32 at 41, ¶ 7; Dkt. 172-33 at 51, ¶ 6; Dkt. 172-32 at 59, ¶ 7 . Such conduct undoubtedly chills employees' participation in the Secretary's lawsuit and seeks to prevent them from recovering the back wages they are due. Moreover, the risk of coercion and intimidation was especially acute here because defense counsels' communications with the employees fell on the heels of Defendants' intentional spoliation of evidence, which had already distorted the fact-finding process and prejudiced the Secretary's ability to prosecute his wage and hour claims. Under these circumstances, Defendants' and their attorneys' conduct constitute adverse actions within the meaning of the FLSA's anti-retaliation provision.

### iii. Causation

For the final element—a causal link between the protected activity and the adverse action—a party claiming retaliation under the FLSA must "proffer evidence from which a reasonable factfinder could infer that the employer retaliated against him for engaging in the protected activity." *Blackie v. State of Me.*, 75 F.3d 716, 723 (1st Cir. 1996). The "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (citations omitted).

There can be little doubt that Defendants' and their attorneys' conduct and attempt to procure declarations from the employees—shortly after Defendants were sanctioned for intentionally destroying evidence of employees' hours—stems from Defendants' belief that employees may cooperate or offer testimony in this FLSA litigation. This is precisely the type of intimidation that the FLSA's anti-retaliation provision was designed to prevent. *Kasten v. Saint-Gobian Performance Plastics Corp.*, 563 U.S. 1, 10 (2011).

For all the reasons stated above, the Secretary is likely to succeed in proving that Defendants' conduct was intended to induce employees to waive their rights under the FLSA and to discourage them from testifying in this litigation, in violation of Section 15(a)(3) of the FLSA.

2. The Secretary is likely to succeed on the merits of his claim that Defendants have violated Section 11(a) of the FLSA by obstructing the Secretary's enforcement activities.

The Secretary is likely to prevail in showing that Defendants violated section 11(a) of the FLSA, 29 U.S.C. § 211(a), by engaging in conduct that Defendants knew or should have known was likely to coerce employees into providing false statements and releasing their rights under the FLSA, thereby distorting the record and interfering with the Secretary's enforcement activities. Section 11 of the FLSA empowers the Secretary to "investigate and gather data regarding the wages, hours, and other conditions and practices of . . . employment," to "enter and inspect" workplaces, to inspect "records," and to "question . . . employees." *Id.* In addition, the Secretary may "investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of [the FLSA], or which may aid in the enforcement of [the FLSA]." *Id.* The FLSA grants the Secretary these investigative powers because the statute "relies for enforcement not upon 'continuing detailed deferral supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten*, 563 U.S. at 11 (*quoting Robert DeMario Jewelry*, 361 U.S. at 292).

In this case, Defendants have violated the FLSA's investigatory provision by securing declarations from their current employees under inherently coercive circumstances—this is precisely the kind of employer intimidation that chills employees' cooperation with a wage and hour litigation. This evidence makes clear that the Secretary is likely to succeed on the claim that Defendants' conduct is obstructing the Secretary's enforcement action in violation of Section 11(a) of the FLSA.

### 3. <u>Absent immediate injunctive relief, the Secretary, the public, and Defendants' employees will continue to suffer irreparable harm.</u>[6]

It is well-established that an employer's retaliatory acts can cause irreparable harm by deterring potential complainants or witnesses from coming forward to challenge the employer's illegal conduct. *See Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938–39 (9th Cir. 1987) ("allegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss"). The "resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application." *Mullins*, 626 F.3d at 55; *see also Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003).

Here, numerous parties will be irreparably harmed if Defendants are not enjoined from retaliating against employees and interfering with the Secretary's litigation: the Secretary, Defendants' current and former employees who may be dissuaded from participating in this lawsuit and providing truthful testimony, this Court and the judicial fact-finding process, and the public at large—particularly Defendants' law-abiding competitors whose businesses are undercut by Defendants' unfair and unlawful business practices. Without assurances from the Court that witnesses who desire to present truthful testimony and cooperate with the government are protected from coercion and retaliation, the Secretary cannot effectively enforce the law in this case. The "resulting weakened enforcement of the FLSA" directly interferes with and irreparably harms the Secretary's enforcement powers, and in turn, the public interest. *Mullins*, 626 F.3d at 55. The employees too will be irreparably harmed if the "fear of economic retaliation" induces them "quietly to accept substandard conditions." *Kasten*, 563 U.S. at 12 (*quoting Robert DeMario Jewelry*, 361 U.S. at 292). A court order that enjoins Defendants'

---

[6] As noted above, the Court may enter a TRO in this case without finding irreparable harm. *See Trailer Train*, 697 F.2d at 869 (9th Cir. 1983). The Secretary, however, has taken the additional step of showing that an injunction is necessary to prevent irreparable harm.

SECRETARY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

Case No.: 2:16-cv-4547-FMO-AGRx

declaration campaign, pending further investigation by the Secretary, will ensure that additional workers are not prevented from testifying truthfully in this proceeding and that Defendants are not rewarded for their destruction of evidence.

      4.  <u>The balance of equities tilts sharply in the Secretary's favor and an injunction is in the public interest.</u>

In balancing the hardship that may result from the issuance of an injunction, the public interest is entitled to great consideration. *See Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 657-58 (9th Cir. 2009). Defendants and their attorneys have no legitimate interest in continuing to profit from their misconduct by improperly influencing or coercing their employees into providing false statements or waiving their rights under the Act. The Secretary, on the other hand, seeks only an order requiring Defendants to comply with the law and cease their declaration gathering until the Secretary can complete his investigation. Restraining Defendants' unlawful conduct will ensure that they comply with the FLSA's investigative and anti-retaliation provisions and advance the public interest in ensuring that employees feel free to report violations and vindicate their rights under the FLSA.

## IV.  CONCLUSION

For the reasons set forth above, the Secretary respectfully requests that this Court:

(1)    Grant his application for a temporary restraining order, which includes ordering Defendants to produce all documents associated with securing or attempting to secure declarations from non-managerial employees and ordering Defendants' attorneys to submit to a deposition concerning the circumstances under which these declarations were solicited or secured;

(2)    Issue an order to show cause why a preliminary injunction should not issue enjoining and restraining Defendants from violating Sections 11(a) and 15(a)(3) of the FLSA;

(3)    Schedule a hearing on the Secretary's request for a preliminary injunction to be held as soon as is practicable for the Court;

SECRETARY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC     Case No.: 2:16-cv-4547-FMO-AGRx

(4)     Order Defendants to pay for the Secretary's costs and expenses in maintaining this application; and

(5)     Order all such relief that the Court deems appropriate, just, and proper.

Dated: January 23, 2018

KATE S. O'SCANNLAIN
Solicitor of Labor
JANET M. HEROLD
Regional Solicitor

*/s/ Nancy E. Steffan*
ROSE DARLING, Senior Trial Attorney
NANCY E. STEFFAN, Trial Attorney
M. CRISTOPHER SANTOS, Trial Attorney
Attorneys for Plaintiff Secretary of Labor

SECRETARY'S MEMORANDUM OF POINTS AND               Case No.: 2:16-cv-4547-FMO-AGRx
AUTHORITIES IN SUPPORT OF APPLICATION FOR TRO AND OSC

17