**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R. ALEXANDER ACOSTA, | Case No. CV 16-4547 FMO (AGRx) |
| Plaintiff, | |
| v. | **ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ISSUING ORDER TO SHOW CAUSE** |
| SOUTHWEST FUEL MANAGEMENT, INC., et al., | |
| Defendants. | |

Having reviewed and considered plaintiff's Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. 184, "Application"), the court concludes that oral argument is not necessary to resolve the Application. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## INTRODUCTION

On January 23, 2018, plaintiff filed the instant Application to: (1) "enjoin[] defendants, their agents, and their attorneys from retaliating or discriminating in any way against any current or former employee of the 12 car washes at issue in this litigation, or any potential witness in this litigation;" (2) "preclud[e] Defendants and their attorneys from using at trial or in support of or in response to any motion the 37 non-managerial employees declarations that Defendants attached to their Opposition to the Secretary's Motion for Partial Summary Judgment (see Dkt. 172) to prove the truth of the matters stated therein, or for any other purpose;" (3) "order[] Defendants to produce all documents associated with securing or attempting to secure declarations from non-managerial employees, including all notes, memos, forms, communications, recordings,

statements, declarations (whether signed or unsigned), signature pages, and drafts thereof;" (4) "order[] defendants' attorneys who were involved in securing or attempting to secure declarations from non-managerial employees to submit to a deposition concerning the circumstances under which these declarations were solicited or secured;" (5) "enjoin[] Defendants and their attorneys from asking or coercing any witnesses to sign a declaration or other written statement about their wages or other terms and conditions of their employment;" (6) "provid[e] for costs and expenses to reimburse the Secretary for having to prepare and bring this application;" and (7) "order[] all such other relief as may be appropriate, just, and proper, including imposing sanctions against Defendants and Defendants' attorneys."  (Dkt. 184, Application at 1-2) (footnote omitted). Defendants filed an Opposition on January 25, 2018.  (See Dkt. 188, Defendants' Response to Secretary's Application for Temporary Restraining Order [] ("Opposition")).  The Secretary filed a Reply on January 27, 2018.  (See Dkt. 189, Secretary's Reply [] ("Reply")).

## **BACKGROUND**

On June 23, 2016, plaintiff R. Alexander Acosta,[1] Secretary of the United States Department of Labor ("DOL") ("plaintiff" or "the Secretary") filed a complaint against defendants Southwest Fuel Management, Inc. dba Brea Car Wash Detail & Castrol Express Lube ("Southwest"), Vahid David Delrahim ("V. Delrahim"), and Martin Lizarraga ("Lizarraga"), asserting claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.  (See Dkt. 1, Complaint).  Plaintiff filed a First Amended Complaint ("FAC") on November 29, 2016, adding as defendants Goldenwest Solutions Group, Inc. ("Goldenwest") and California Payroll Group, Inc. ("CPG"), (see Dkt. 42, FAC), and the operative Second Amended Complaint ("SAC") on May 22, 2017, adding Shannon Delrahim ("S. Delrahim") as a defendant.  (See Dkt. 102, SAC).  The Secretary alleges that defendants violated the FLSA by failing to pay their employees overtime and the federal minimum wage, and by failing to maintain, keep and preserve records of

---

[1]  R. Alexander Acosta was sworn in as the Secretary of Labor on April 28, 2017, (see Dkt. 102, SAC at 1) and replaced Thomas E. Perez as plaintiff. (See Dkt. 1, Complaint at 1-2).

1  employees and their wages, including by requiring their employees to work "off the clock." (See

2  id at ¶¶ 1, 14-18).

3      On May 2, 2017, the Special Master found that defendants "failed to preserve and not

4  destroy emails, text messages and video recordings, and failed to instruct all employees and

5  others to preserve potentially responsive documents[.]"[2] (See Dkt. 99, Special Master's Order of

6  May 2, 2017, at 9).  The Special Master found that "Defendants' intentional spoliation of evidence

7  warrants sanctioning[.]" (See id.).  Because "Southwest's and Delrahim's resistance to preserving

8  the Brea Videos supports the reasonable inference that Defendants acted with the intent to

9  deprive the Secretary of the use of the videos[,]" the Special Master found "that the videos are

10  unfavorable to Defendants Southwest and Delrahim." (See id. at 23-24).  The Special Master had

11  previously concluded that Southwest was "deliberately and willfully stone-walling on discovery."

12  (See id. at 6) (internal quotation marks omitted).

13      Approximately two months after the Special Master's ruling, defendants' counsel began

14  gathering declarations from current employees stating that the employees never worked "off the

15  clock." (See, e.g., Dkts. 172-32–172-37, 172-39, Joint Evidentiary Appendix at Exhibits ("Exhs.")

16  122-45, 147-53, 158-59, 161, 183-85 ("Employee Declarations")).  Defendants disclosed the 37

17  declarations for the first time when they submitted their briefing in the cross motions for summary

18  judgment on November 21, 2017.  (See id.).  Approximately 34 of the 37 submitted declarations

19  were signed by employees in July 2017. (See Dkts. 172-32–172-37, 172-39 at Exhs. 122-45, 147-

20  53, 158-59, 161, 183-85, Employee Declarations).

21      The Secretary brings the instant Application because of defendants' and their counsel's

22  alleged misconduct related to "solicit[ing] from their clients' employees statements that contradict

23  what the video evidence would have shown to be true." (Dkt. 185-1, Secretary's Memorandum

24

25      [2]  Defendants have filed objections to this order, (see Dkt. 107, Defendants' Objections to

26  Special Master's Order Re Plaintiff's Request for Sanctions for Spoliation of Evidence), on which the court has not yet ruled.  Defendants' objections are "limited to the inferences the Special

27  Master made in her Order," namely "the adoption of any presumption against Defendants[.]" (See id. at 1).  Should the court not concur with or accept the findings and conclusions of the Special

28  Master, it may revisit this Order.

of Points and Authorities ("Memo.") at 2) (emphasis omitted).  The Secretary contends that: "Defendants' counsel was well aware that they do not represent the employees and that their clients' interests are adverse to the [workers'] interests[;]" defendants are "keenly aware of the economic power their clients had over the employee declarants and that these workers were required to speak with defense counsel on work time and as a condition of employment[;]" "the Secretary had identified specific damages for each of the employee declarants and thus . . . defense counsel was seeking waivers that are unenforceable[;]" and, "the declarations were coercive, and thus Defendants were potentially securing false testimony from their employees[.]" (See id.).  According to the Secretary, the "information gathered to date . . . suggests that defense counsel abandoned their ethical duties and failed to safeguard the integrity of the fact-finding process [and that] Defendants and their counsel should be enjoined from discussing this case with employees or soliciting declarations while the Secretary completes his investigation." (Id.).  Based on "Defendants' intentional spoliation of evidence and defense counsels' bad faith attempts to further obscure the factual record in this case[,]" (see id. at 9), and the alleged violation of the FLSA these actions constitute, the Secretary asks for a temporary restraining order and preliminary injunction.  (See id. at 2-3, 9).

## **LEGAL STANDARD**

Rule 65 provides courts with the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held.  See Wahoo Intern., Inc. v. Phix Doctor, Inc., 2014 WL 2106482, *2 (S.D. Cal. 2014).  The standards for a temporary restraining order and a preliminary injunction are the same.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); Rowe v. Naiman, 2014 WL 1686521, *2 (C.D. Cal. 2014) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.").

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 376 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id., 555 U.S. at 20, 129 S.Ct. at 374; Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (same). The Ninth Circuit also employs a "sliding scale" formulation of the preliminary injunction test under which an injunction could be issued where, for instance, "the likelihood of success is such that serious questions going to the merits [are] raised and the balance of hardships tips sharply in plaintiff's favor[,]" Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks and alteration marks omitted), provided the other elements of the Winter test are met. See Angelotti Chiropractic, Inc. v. Baker, 791 F.3d 1075, 1081 (9th Cir. 2015), cert. denied, 136 S.Ct. 2379 (2016) ("Serious questions going to the merits and hardship balance that tips sharply towards plaintiffs can also support issuance of a preliminary injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest.") (internal quotation marks and alteration marks omitted).

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997) (emphasis in original) (internal quotation marks omitted); Silvas v. G.E. Money Bank, 449 F.Appx. 641, 644 (9th Cir. 2011) (same). Indeed, the moving party bears the burden of meeting all prongs of the Winter test. See Alliance for the Wild Rockies, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776 (9th Cir. 2011), cert. denied 132 S.Ct. 1162 (2012) ("To warrant a preliminary injunction, [plaintiff] must demonstrate that it meets all four of the elements of the preliminary injunction test established in Winter[.]"). The decision of whether to grant or deny a preliminary injunction is a matter of the district court's equitable discretion. See Winter, 555 U.S. at 32, 129 S.Ct. at 381.

## DISCUSSION

As an initial matter, there is an issue as to the timeliness of the disclosures of the subject

5

declarations.  As noted above, even though the vast majority of the declarations were signed by the employees in July 2017, (see Dkts. 172-32–172-37, 172-39 at Exhs. 122-45, 147-53, 158-59, 161, 183-85, Employee Declarations), defendants did not disclose them until November 21, 2017, approximately four months later, (see id.; Dkt. 188, Opposition at 2), and three months after the fact discovery cutoff of August 11, 2017.  (See Dkt. 62, Court's Order of January 23, 2017, at 2). Defendants argue that the employee declarations are work product and not responsive to any document requests because they are testimony, so there was no need to disclose them.  (See Dkt. 188, Opposition at 12-13).  However, signed declarations from third party witnesses are not protected work product.  See Kuhl v. Guiter Center Stores, Inc., 2008 WL 5244570, *6 (N.D. Ill. 2008) ("Because they do not contain any legal advice, litigation strategy, or confidential communications, this Court cannot determine how the signed Statements could be protected by the work product doctrine or any related privilege."); Camilotes v. Resurrection Health Care Corp., 2012 WL 245202, *7 (N.D. Ill. 2012) ("Defendants have failed to establish that the signed declarations are protected from disclosure by the work product doctrine, which protects attorney impressions but does not protect non-privileged facts."); Gonzalez v. State of Fla. Dep't of Mgmt. Servs., 124 F.Supp.3d 1317, 1326-27 (S.D. Fla. 2015) (disagreeing with contention that declaration constituted work product).  What's more, it is clear that defendants should have produced the declarations and the names, addresses and telephone numbers of the employee declarants as soon as defendants and/or their counsel determined that the declarations and employee declarants contained discoverable information that defendants were considering using to support their defenses in this action.  See, e.g., Fed. R. Civ. P. 26(a)(1)(A)(i)&(ii); Fed. R. Civ. P. 26(e).

I.      LIKELIHOOD OF SUCCESS ON THE MERITS.

"The first factor under Winter is the most important – likely success on the merits."  Garcia, 786 F.3d at 740.  The Ninth Circuit has recognized that an injunction may be granted if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor[,]" so long as the moving party demonstrates irreparable harm and shows that the injunction is in the public interest.  See Alliance for the Wild Rockies, 632 F.3d at 1131 (internal quotation

marks and alteration marks omitted).

The FLSA provides that it is unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). This anti-retaliation provision prevents "fear of economic retaliation from inducing workers quietly to accept substandard conditions." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 12, 131 S.Ct. 1325, 1333 (2011) (internal quotation marks omitted). The FLSA's anti-retaliation provision "should be interpreted broadly, to give effect to the statute's remedial purpose." In re Majewski, 310 F.3d 653, 655 (9th Cir. 2002).

To establish a violation of the FLSA's anti-retaliation provision, a party must show that: (1) an employee "engaged in or was engaging in activity protected under federal law," (2) the employee was subjected to "an adverse employment action[,]" and (3) the protected activity was a "motivating reason" for the adverse action. See Avila v. Los Angeles Police Dep't, 758 F.3d 1096, 1102-04 (9th Cir. 2014); see also 29 U.S.C. § 215(a)(3).

Here, the court is persuaded that the Secretary has established likelihood of success on the merits with respect to the FLSA's anti-retaliation provision. First, the 37 employees who signed declarations regarding their wages and working conditions are potential witnesses in this litigation engaged in protected activity by "testif[ying] or [being] about to testify in" a proceeding under the FLSA. See 29 U.S.C. § 215(a)(3); Mitchell v. Robert DeMario Jewelry, 361 U.S. 288, 292, 80 S.Ct. 332, 335 (1960) ("effective enforcement could thus only be expected if employees felt free to approach officials with their grievances"); Perez v. Fatima/Zahra, Inc., 2014 WL 2154092, *2 (N.D. Cal. 2014) ("These threats, although taken in anticipation of employees engaged in protected activity, are 'no less retaliatory than action taken after the fact.'") (quoting Sauers v. Salt Lake Cnty., 1 F.3d 1122, 1128 (10th Cir. 1993)); see also Lambert v. Ackerley, 180 F.3d 997, 1005 n. 3 (9th Cir. 1999), cert. denied, 528 U.S. 116 (2000) (If the FLSA "is to function effectively, inspectors must be free from the threat of retaliatory discharge for identifying safety and quality problems.") (internal quotation marks omitted).

1    Second, defendants' actions constitute an adverse action because those actions are

2    "reasonably likely to deter employees from engaging in protected activity."  See, e.g., Ray v.

3    Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) (holding that because Title VII "does not limit its

4    reach only to acts of retaliation that take the form of cognizable employment actions such as

5    discharge, transfer, or demotion[,]" "decreas[ing an employee's] ability to influence workplace

6    policy" qualified as an adverse employment action) (internal quotation marks omitted); Perez v.

7    J&L Metal Polishing, Inc., 2016 WL 7655766, *5 (C.D. Cal. 2016) ("[T]hreats of retaliation are also

8    a basis for injunctive relief."); Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57,

9    63-64, 126 S.Ct. 2405, 2409, 2412 (2006) ("the antiretaliation provision [of Title VII] does not

10   confine the actions and harms it forbids to those that are related to employment or occur at the

11   workplace."); Arias v. Raimondo, 860 F.3d 1185, 1190-92 (9th Cir. 2017), cert. denied, 2018 WL

12   311387 (2018) (discussing Burlington and applying it's reasoning to the FLSA; United States v.

13   Oregon State Med. Soc., 343 U.S. 326, 333, 72 S.Ct. 690, 695 (1952) ("All it takes to make the

14   cause of action for relief by injunction is a real threat of future violation or a contemporary violation

15   of a nature likely to continue or recur.").  As discussed below, the Secretary has provided sufficient

16   evidence that defendants' "intimidation tactics are reasonably likely to deter [their] employees from

17   participating in the investigation."  J&L Metal Polishing, Inc., 2016 WL 7655766, at *6; see Harris

18   v. Acme Universal, Inc., 2014 WL 3907107, *2 (D. Guam 2014) (enjoining employer who urged

19   former employees to withdraw their FLSA complaints, made threats, and coerced them into

20   signing false statements about their working conditions); (see, e.g., Dkt. 184-10, Declaration of

21   Jean Lui ("Lui Decl.") at ¶ 9).  Thus, the court finds that soliciting and extracting coerced

22   declarations, which may include false and/or misleading testimony, constitutes an adverse

23   employment action for purposes of the FLSA's anti-retaliation provision.[3]

24

25   [3] Intimidating interviews and signed, coerced declarations are reasonably likely to deter
     employees from engaging in the protected activity of testifying or otherwise asserting their rights

26   under the FLSA.  For example, an employee may believe that she will face termination at work for
     failure to comply with the company's "request" to sign a declaration – as the evidence shows

27   occurred here, (see Dkt. 184-10, Lui Decl. at ¶ 9) ("the employee told me that he signed it because
     he felt he would lose his job or have his hours cut if he did not sign.") – or for stating that she has

28   violated a company policy.  (See, e.g., Dkt. 172-32, at Exh. 123, Declaration of Antonio Rodriguez)

Third, causation is established as defendants sought and obtained signed declarations only two months after the Special Master sanctioned them for intentionally destroying evidence.  (See Dkt. 99, Special Master's Order of May 2, 2017; Dkts. 172-32–172-37, 172-39 at Exhs. 122-45, 147-53, 158-59, 161, 183-85, Employee Declarations (approximately 34 of 37 declarations signed in July)); Whalen v. Roanoke Cty. Bd. of Sup'rs, 769 F.2d 221, 225 (4th Cir. 1985), on reh'g, 797 F.2d 170 (4th Cir. 1986) (upholding a jury's finding of causation where a three-year interval occurred between the protected activity and the adverse action).

Defendants do not attempt to rebut the Secretary's contentions regarding protected activity or causation, or that the coerced declarations constitute an adverse employment action.  (See, generally, Dkt. 188, Opposition).  Instead, defendants argue only that the "Secretary has not and cannot meet its burden to show abuse or coercion by Defendants."  (Id. at 6).  Defendants assert that the consent form "described the nature of the instant action, and the fact that the employee may be eligible to collect money or obtain other remedies" and stated that any information an employee shares "may be used in the lawsuit in a way that could affect their rights in the lawsuit."  (Id. at 7).  The form also states that "the interview and/or giving a written statement are voluntary, and that there will be no retaliation against the employee if he or she declines to participate."  (Id.).

_____

("One of the company's policies is that if we are working we have to be punched in . . . and I have always followed it.").  An employee may also be deterred from participating in an ongoing DOL investigation if, for instance, she believes that the coerced declaration can subsequently be used against her to claim (albeit mistakenly) that the employee perjured herself.  See Talavera v. Leprino Foods Co., 2016 WL 880550, *5 (E.D. Cal. 2016) ("the mandatory nature of the meetings, the fact that they were conducted at the workplace during working hours, and the linking of the lawsuit with the possibility of criminal perjury charges created a risk of coercion and potential for chilling participation. Regardless of Mr. Tuttrup's true intent, his role as the head onsite manager can transform suggestions, requests, or observations into directives or threats."); (see also Dkts. 172-32–172-37, 172-39 at Exhs. 122-45, 147-53, 158-59, 161, 183-85, Employee Declarations) (employees signed declarations "under penalty of perjury").  The Ninth Circuit has broadly interpreted FLSA's anti-retaliation provision, bringing into its ambit not only terminations, but also other threatening or intimidating actions by the employer or its attorneys.  See Arias, 860 F.3d at 1186-88 (holding that worker may proceed with retaliation action against employer's attorney, who allegedly contacted Immigration and Customs Enforcement during the pendency of a wage and hour lawsuit); id. at 1190 (The FLSA's retaliation provision's "purpose is to enable workers to avail themselves of their statutory rights in court by invoking the legal process designed by Congress to protect them.").

Finally, defendants argue that "the form emphasizes that the interviewer only wants to hear truthful information, and, if preparing a written statement, wants the statement to be completely accurate." (See id.).   According to defendants, the "consent forms are not waivers" and "the factual declarations themselves are not waivers either[.]"   (See id. at 8).   Defendants' assertions are unpersuasive.

While the forms make a vague reference that "[a]t some point, you may be eligible to collect money and/or obtain other remedies[,]" (see Dkt. 184-4, Declaration of Nancy E. Steffan ("Steffan Decl.") at Exh. C ("Voluntary Interview Consent Forms")), they fail to inform employees that they are among a group of workers on whose behalf the Secretary seeks back wages and/or that the Secretary has already computed wages owed to them.  (See, generally, id.); see, e.g., Sjoblom v. Charter Comm'ns, LLC, 2007 WL 5314916, *3 (W.D. Wis. 2007) (sanctioning employer who obtained affidavits from potential FLSA class members in "blitz campaign" that included a consent form describing litigation but failing to "notify them that they might be entitled to become a part of the lawsuit").   The consent forms also do not reveal that defendants were found to have intentionally destroyed video evidence of the employee working off the clock, or even that the information they share might adversely affect their rights in the lawsuit.  (See, generally, Dkt. 184-4, Voluntary Interview Consent Forms; id. (stating only that it "could affect" their rights)).  Moreover, despite the consent forms' representation that a worker's decision to speak to defense counsel is voluntary, there is no analogous statement as to whether signing a declaration is voluntary or involuntary.  (See, generally, id.).  Under the circumstances, defendants' "failure to provide sufficient information relating to [the Secretary's and the employees'] claims so that the employees could make an informed decision" raises serious concerns as to whether the employee declarants were misled and/or whether the employees voluntarily and intelligently understood and agreed to sign the consent form and declaration.  See Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 WL 4466605, *2 (C.D. Cal. 2012); id. ("Omission of important information relating to a plaintiff's case or claims is misleading."); id. at *1 (granting motion to order defendants to release names and contact information of individuals from whom defendant attempted to extract releases that "did not state when this unnamed lawsuit was filed, the name of the former employee, the

1   names of the employee's attorneys, the attorneys' contact information, or the period of time

2   covered by the release" as it "was misleading in many ways.").

3          Further, the Secretary has put forth evidence of coercive circumstances surrounding the

4   interviews and the signing of the consent forms and declarations.  (See Dkt. 184-10, Lui Decl.; Dkt.

5   184-11, Declaration of Patricia Gatica ("Gatica Decl."); Dkt. 184-12, Declaration of Maribel M.

6   Tapia ("Tapia Decl."); Dkt. 184-13, Declaration of Claudia R. Cotne-Martinez ("Cotne-Martinez

7   Decl.")).  Employees were instructed by their managers to attend meetings with defense counsel

8   on work time, to "sign papers" or provide a declaration, and some employees were even driven

9   to the meetings by company representatives.  (See Dkt. 184-10, Lui Decl. at ¶ 5; Dkt. 184-11,

10  Gatica Decl. at ¶ 5; Dkt. 184-12, Tapia Decl. at ¶ 5; Dkt. 184-13, Cotne-Martinez Decl. at ¶ 5); see

11  also Perez v. Blue Mountain Farms, 961 F.Supp.2d 1164, 1171 (E.D. Wash. 2013) ("the interviews

12  that have occurred may have been tainted by the presence of supervisors and video cameras").

13  "The caselaw nearly universally observes that employer-employee contact is particularly prone

14  to coercion[.]"  Camp v. Alexander, 300 F.R.D. 617, 624 (N.D. Cal. 2014).

15         Employees were not told that the Secretary had already concluded that they were owed

16  back wages.  (See Dkt. 184-10, Lui Decl. at ¶¶ 6, 9; Dkt. 184-13, Cotne-Martinez Decl. at ¶¶ 5,

17  10).  Nor were the employees  provided with a copy of any of the documents they signed.  (See

18  Dkt. 184-10, Lui Decl. at ¶¶ 7, 9, 10; Dkt. 184-13, Cotne Decl. at ¶¶ 7, 10); see Guifi Li v. A Perfect

19  Day Franchise, Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010) (in concluding that meetings with

20  employees "were inherently coercive[,]" court considered the failure "to provide copies of the

21  opt-out forms to workers to take away with them").  The court also has serious concerns as to not

22  only the written consent forms, but also the verbal representations made to the employees and

23  whether the employees were misled or otherwise coerced into believing the "interview" was

24  "voluntary."  For example, one employee stated that he was called into the car wash office directly

25  by defense counsel, was not told the meeting was optional, and signed the declaration for fear he

26

27

28

would lose his job or have his hours cut.[4]  (See Dkt. 184-10, Lui Decl. at ¶ 9).  Another employee relayed that "a car wash manager held a meeting with all of the employees [and] told the employees that the company's attorneys wanted to meet with them."  (See Dkt. 184-13, Cotne-Martinez Decl. at ¶ 9).  The employee was then driven by the same manager to meet with attorneys at a hotel on a subsequent day.  (See id.).  For another employee who was driven to and from the car wash to another office, the round-trip, interview, preparation, review and signing of both the declaration and consent form took about one hour; for another, the entire "meeting with the attorney lasted at most five minutes[,]" (Dkt. 184-13, Cotne-Martinez Decl. at ¶¶ 7, 10; see Dkt. 184-10, Lui Decl. at ¶ 5), casting doubt on the integrity of the alleged fact-gathering process and the resulting declarations.  Finally, employees have come forward to state that testimony in their solicited declarations is false or, at a minimum, misleading.  (See, e.g., Dkt. 184-10, Lui Decl. at ¶ 7) (declaration stated "the employee never had to wait to clock in" but employee told investigator that currently he did have to wait to clock in and counsel did not ask about the past).

Based on the largely undisputed evidence before the court, the court concludes that defendants' conduct, especially as it relates to the meetings between defendants' counsel and the employees and content of the consent form, was inherently coercive.[5]  See, e.g., Guifi Li, 270

---

[4]  Defendants argue that the Secretary's proffered evidence, four declarations from DOL investigators, "consist solely of hearsay[,]" "do not identify the individuals who allegedly claim they were coerced" and "are not admissible or competent evidence[.]"  (See Dkt. 188, Opposition at 8).  However, it is "within the discretion of the district court to accept this hearsay for purposes of deciding whether to issue [a] preliminary injunction."  Republic of the Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc).

[5]  Defendants claim that one employee did not sign a declaration and thus did not feel coerced.  (See Dkt. 188, Opposition at 10) ("this employee refused to sign what he was given . . . and he is still employed, as Cotne-Martinez refers to this unidentified individual as a current employee.").  However, "[e]ven though [one employee] was offered the [declaration], rejected it, and contacted [the Secretary], this does not mean that every employee who received the [declaration] was sufficiently informed."  Gonzalez, 2012 WL 4466605, at *3.  In fact, the Secretary has provided evidence that at least three employees felt pressured and intimidated into signing.  (See Dkt. 184-10, Lui Decl. at ¶¶ 9, 10; Dkt. 184-13, Cotne-Martinez Decl. at ¶ 10); see also O'Connor v. UBER Techs., Inc., 2016 WL 122943, *1, 3 (N.D. Cal. 2016) (declining to stay an order enjoining defendant's communications with putative class members, and requiring a corrective cover letter and revised arbitration agreement, where defendant sent an agreement to current employees that caused actual confusion and could preclude putative class members from

F.R.D. at 518 ("Defendants admit that they presented opt-out forms to workers during required, one-on-one meetings with managers during work hours and at the workplace . . . [and] that they failed to provide copies of the opt-out forms to workers to take away with them[.]  Based on these undisputed facts, the Court concludes that these meetings were inherently coercive.").  Each of the individual factors noted above could have led to coerced declarations. But the number of factors here leaves little doubt that the signed declarations and consent forms were collected under coercive circumstances.  Further, the sequence and context of the interviews – which took place after the Special Master found that defendants intentionally destroyed video evidence of the subject of solicited employee testimony – only serves to underscore the coercive nature of defendants' conduct.

In short, the court finds that plaintiff is likely to prevail on his claim that defendants violated FLSA's anti-retaliation provision.  In the alternative, the court finds that plaintiff raised "serious questions going to the merits[.]"  See Alliance for the Wild Rockies, 632 F.3d at 1131.

Plaintiff is also likely to prevail on his claim under § 11(a) of the FLSA, which gives the Secretary the power to: (1) "investigate and gather data regarding the wages, hours, and other conditions and practices of . . . employment"; (2) "enter and inspect" workplaces and records; and (3) "question [] employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated" the FLSA.  29 U.S.C. § 211(a).  The FLSA grants the Secretary these investigatory powers because the statute's enforcement relies "not upon continuing detailed federal supervision or inspection of payrolls, but upon information and complaints received from employees seeking to vindicate rights claimed to have been denied."  Kasten, 563 U.S. at 11, 131 S.Ct. at 1333 (internal quotation marks omitted).

The Secretary argues that defendants violated the FLSA's investigations and inspections provision "by securing declarations from their current employees under inherently coercive circumstances . . . precisely the kind of employer intimidation that chills employees' cooperation with a wage and hour litigation."  (See Dkt. 185-1, Memo. at 14).  As the court found above, the

_____

participating in ongoing litigation).

circumstances surrounding the collection of declarations demonstrates a strong likelihood of coercion or duress.  See supra at § I.  Thus, the court finds that there is a strong likelihood of success on the merits for plaintiff's claims of violations of § 11(a) of the FLSA.  In the alternative, the court finds that plaintiff raised "serious questions going to the merits" as to whether defendants interfered with the Secretary's investigatory powers under § 11(a) of the FLSA.  See Alliance for the Wild Rockies, 632 F.3d at 1131.

II.      IRREPARABLE HARM.

As a general rule, plaintiff must demonstrate that he is likely to suffer irreparable harm in the absence of the temporary restraining order or preliminary injunction.  See Winter, 555 U.S. at 20, 129 S.Ct. at 374.  However, "the standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175-76 (9th Cir. 2010), cert. denied, 563 U.S. 956 (2011) (internal quotation marks and alteration marks omitted).  The Secretary seeks to enjoin defendants from violating the FLSA, which specifically provides for injunctive relief, see 29 U.S.C. § 217, so the Secretary need not prove irreparable harm.  See Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir.), cert. denied, 464 U.S. 846 (1983); Marxe v. Jackson, 833 F.2d 1121, 1128 n. 3 (3d Cir. 1987) (collecting cases in which the court "appl[ied] federal statutes expressly providing injunctive relief without a showing of irreparable injury").

However, even assuming the Secretary was required to show irreparable harm, the court is satisfied that the Secretary has done so.[6]  It is well-established that "allegations of retaliation

_____

[6]  Defendants argue that the Secretary delayed in filing the instant Application and that it should be denied or heard on a regularly noticed motion schedule because the "application for a TRO was ultimately filed . . . eight weeks and six days after the Secretary first received the declarations in question."  (See Dkt. 188, Opposition at 1-4).  The court is not persuaded, because, as defendants admit, (see id. at 3), the Secretary only received the consent forms on January 11, 2018, 12 days before the filing of the instant Application.  (See id.).  Further, the Secretary promptly met and conferred with defendants to attempt to informally resolve the issues raised, investigated the circumstances to determine whether emergency injunctive relief was justified, and filed the Application after the government shut down ended on January 23, 2018.  (See Dkt. 189, Reply at 2, 4).

for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss . . . because retaliatory action for protected activity carries with it the risk that employees may be deterred from engaging in legitimate conduct." Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 938-39 (9th Cir. 1987) (footnote and citation omitted).   Indeed, "[u]nchecked retaliation . . . and the resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application." Mullins v. City of New York, 626 F.3d 47, 55 (2d Cir. 2010) (internal quotation marks omitted).   The Secretary has provided evidence that his investigation and the employees' exercise of their FLSA rights have been impaired by defendants' conduct. (See Dkt. 184-10, Lui Decl. at ¶¶ 4-9; Dkt. 184-11, Gatica Decl. at ¶¶ 4-5; Dkt. 184-12, Tapia Decl. at ¶¶ 4-5; Dkt. 184-13, Cotne-Martinez Decl. at ¶¶ 4-10); see also Perez, 2014 WL 2154092, at *3 ("Plaintiff will not be able to gather the information necessary to conduct the investigation.").   The court is also persuaded that the Secretary's complainants – all of whom are low wage workers – will be irreparably harmed if the "fear of economic retaliation [] induc[es] workers quietly to accept substandard conditions." Kasten, 563 U.S. at 12, 131 S.Ct. at 1333 (internal quotation marks omitted); see Socias v. Vornado Realty, L.P., 297 F.R.D. 38, 40 (E.D.N.Y. 2014) ("Low wage employees . . .  often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion[.]").

III.     BALANCE OF HARDSHIPS.

The harm that will be caused to plaintiff should defendants be allowed to interfere with the Secretary's investigation, and deny employees their rights to testify and be free from retaliation, far outweighs the harm to defendants.   Defendants will suffer no hardships, as the Secretary merely "seeks only an order requiring Defendants to comply with the law[.]"   (See Dkt. 185-1, Memo. at 16); Carrillo v. Schneider Logistics, Inc., 823 F.Supp.2d 1040, 1046 (C.D. Cal. 2011) ("Plaintiffs request only that defendants be required to comply with . . . federal and state law. Defendants will suffer no hardships other than those associated with bringing their recordkeeping procedures and paycheck information into compliance with state and federal requirements – costs that defendants should already be incurring.").

Based on the conduct of defendants and their counsel throughout the course of this case – conduct for which the Special Master has imposed sanctions – and the record before the court, the court could institute a complete prohibition on contacting employee witnesses. Nonetheless, the court will, in an abundance of caution, narrow the proposed temporary restraining order. See Consumer Fin. Prot. Bureau v. Gordon, 819 F.3d 1179, 1198 (9th Cir. 2016), cert. denied, 137 S.Ct. 2291 (2017) (finding that the district court did not abuse its discretion because it "carefully considered the scope of the injunction and tailored it to match the risk of harm it identified and minimize the impact on [defendant's] legal business"). Defendants will be able to continue to seek out and obtain employee testimony to support their defense, but given the evidence of incomplete and/or misleading information and the coercive circumstances surrounding the interviews, defendants will be prohibited from meeting with the employees in connection with this lawsuit outside the presence of counsel for the Secretary.[7]

In short, the court concludes that balance of hardships tips sharply in favor of plaintiff.

IV.   PUBLIC INTEREST.

The court gives substantial weight to the fact that "'the Secretary seeks to vindicate a public, and not a private right.'" Perez v. Jie, 2014 WL 1320130, *2 (W.D. Wash. 2014) (quoting Marshall v. Chala Enterprises, Inc., 645 F.2d 799, 808 (9th Cir. 1983)). There is a strong public interest in favor of enforcement of the FLSA, which seeks to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" of workers. 29 U.S.C. § 202(a). Defendants thus have no legitimate interest in preventing plaintiff from conducting what appears to be a reasonable and lawful investigation. See Perez, 2014 WL 2154092, at *3.

The court concludes that the Secretary has, by a clear showing, carried his burden of

---

[7]   Given that the court's order will not prevent defendants from talking to their employees about this case, defendants' prior restraint arguments are unpersuasive. (See Dkt. 188, Opposition at 15-16). The limited order balances any alleged First Amendment rights of the employers against its employees' rights under federal statutes designed to protect them. See Horizon Air Indus., Inc. v. Nat'l Mediation Bd., 232 F.3d 1126, 1136 (9th Cir. 2000), cert. denied, 533 U.S. 915 (2001) ("An employer's free speech right . . . is not absolute, however, and must be balanced against the employees' rights to associate freely and to be free of coercion, which can sneak in through seemingly-neutral employer communications").

persuasion of showing that a temporary restraining order should issue. See Mazurek, 520 U.S. at 972, 117 S.Ct. at 1867. The Secretary has established that he is likely to succeed on the merits of his claims under both 29 U.S.C. §§ 211(a) and 215(a)(3). See supra at § I. In the alternative, the Secretary has at a minimum raised "serious questions going to the merits" of his claims under both 29 U.S.C. §§ 211(a) and 215(a)(3). See supra at § I.; Alliance for the Wild Rockies, 632 F.3d at 1131. Although the Secretary is not required to demonstrate irreparable harm when he seeks "to prevent the violation of a federal statute [the FLSA] which specifically provides for injunctive relief[,]" see Trailer Train Co., 697 F.2d at 869; 29 U.S.C. § 217, the Secretary has established that he and the employee complainants are likely to suffer irreparable harm in the absence of a temporary restraining order. See supra at § II. Finally, the balance of equities tips sharply in plaintiff's favor, see supra at § III.; Alliance for the Wild Rockies, 632 F.3d at 1131, and an injunction is in the public interest. See supra at § IV.

V.   SCOPE OF TEMPORARY RESTRAINING ORDER.

The court adopts only the provisions that are necessary to prevent retaliation and interference by defendants. See Perez, 2014 WL 2154092, at *3 ("The Court adopts only those provisions that are reasonably necessary to accomplish this goal before the preliminary injunction motion can be heard."); J&L Metal Polishing, Inc., 2016 WL 7655766, at *6–8 (narrowing the scope of a temporary restraining order in case involving FLSA violations). Although this is not a class action in the traditional sense, the court heeds the Supreme Court's instruction that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 101, 101 S. Ct. 2193, 2200 (1981). Given "the finding of actual or imminent abuse" the court has made here, see supra at § I.; Gulf Oil, 452 U.S. at 98, 101 S.Ct. 2198, the court will issue "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Gulf Oil, 452 U.S. at 102, 101 S.Ct. at 2201.

Finally, the court is troubled by the allegations leveraged against defendants' counsel. (See, generally, Dkt. 185-1, Memo.). The court is persuaded that the circumstances here,

particularly in light of the Ninth Circuit's recent <u>Arias</u> decision, may justify an order permitting defendants' counsel to be deposed.[8]  <u>See</u> 860 F.3d at 1186.  At this time, the court will not impose such an order.  In their response to the Order to Show Cause Why a Preliminary Injunction Should Not Issue, the parties shall address this issue and apply the test set forth in <u>In re Subpoena Issued to Dennis Friedman</u>, 350 F.3d 65, 71-72 (2d Cir. 2003).  <u>See</u> <u>Boeing Co. v. KB Yuzhnoye</u>, 2015 WL 12803452, *9 (C.D. Cal. 2015) ("The Ninth Circuit Court of Appeals has not adopted the Eighth Circuit's reasoning in <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1327-28 (8th Cir. 1986) and its progeny[.]  Rather, the Court finds the Second Circuit's reasoning in [<u>Friedman</u>] to be the persuasive authority in allowing attorney deposition[.]") (internal citation omitted).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue **(Document No. 184)** is **granted** in part and **denied** in part, as set forth herein**.**

2.  The Secretary shall be awarded attorneys' fees and costs incurred in connection with the instant Application.  The Special Master shall make the determination as to amount of attorneys' fees and costs.

3.  Defendants, their agents, and their counsel are hereby enjoined from taking any further steps to retaliate or discriminate in any way against any current or former employee of the 12 car washes at issue in this litigation, or any potential witness in this litigation, including communicating with any non-managerial worker regarding any underpayment or nonpayment of wages due or other violation of the FLSA outside the presence of counsel for the Secretary.  Defendants and their counsel shall not coerce or otherwise encourage any employee to sign any declaration or other document purporting to or having the potential effect of relinquishing the employee's rights

---

[8]    In their Opposition, defendants claim that the Secretary provides no authority justifying deposing counsel.  (<u>See</u>, <u>generally</u>, Dkt. 188, Opposition at 14-15).  In fact, the Secretary provides ample authority, including <u>Arias</u>, 860 F.3d at 1191-92.  (<u>See</u> Dkt. 185, Application at 10; <u>see also</u> Dkt. 189, Reply at 8-9).

under the FLSA.  See J&L Metal Polishing, Inc., 2016 WL 7655766, at *6-8 (court enjoined defendants from: "retaliating or discriminating in any way, including threatening to terminate, actually terminating or threatening physical violence against any employee or witness cooperating in the Secretary's litigation or investigation because the employee or witness exercises any right protected under the FLSA[;]" "communicating with any worker regarding underpayment or nonpayment of wages due or other violation of the [FLSA] outside the presence of counsel for the Secretary[;]" and "coercing any of their employees to sign waivers or other document[s] purporting to relinquish their rights under the FLSA[.]").

     4.  Defendants shall, no later than **February 23, 2018**, produce all documents associated with securing or attempting to secure declarations from non-managerial employees, including all notes, memos, forms, communications, recordings, statements, declarations (whether signed or unsigned), signature pages, and drafts thereof, to the Secretary.  Defendants shall also provide the Secretary with a list of all employees (and their contact information) interviewed, and/or for whom defendants drafted, solicited, or obtained declarations, no later than **February 16, 2018**.

     5.  For any document that is withheld and/or redacted on the basis of the work-product protection, defendants shall provide a privilege log at the time the documents are produced, i.e., by the deadline set forth in paragraph four above.  The privilege log shall contain sufficient information to enable the court to determine whether each element of the work product protection has been satisfied.  The privilege log shall comply with Form No. 11:A as set forth in the California Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2017).  Any document that contains both protected and responsive information shall be redacted to eliminate any reference to the work-product protection.  However, defendants may not redact information that they believe is irrelevant.  See Flynn v. Goldman, Sachs & Co., 1991 WL 238186, at *2 (S.D.N.Y. 1991) ("[I]f material really is irrelevant, it will be inadmissible at trial and little harm can flow from discovery except the expense of production[.]"); Seafirst Corp. v. Jenkins, 644 F.Supp. 1160, 1165 (W.D. Wash. 1986) (party must disclose whole report even if parts are irrelevant; disclosure of irrelevant material causes no harm and "partial disclosure may tend to distort the tenor of the reports[]").

     6.  Defendants shall, no later than **February 23, 2018**, submit for in camera review to the

Special Master all documents[9] that defendants claim are entitled to the work-product protection. After reviewing the documents and conducting whatever proceedings the Special Master deems appropriate, the Special Master shall prepare written findings as to the applicability of the work-product protection as to each document produced by defendants.

7.  The Special Master shall also conduct proceedings with respect to the 37 declarations that are the subject of the instant Application.  Given that the vast majority of the declarations were signed in July 2017, and not produced until November 2017, the Special Master shall determine whether defendants' violated their discovery obligations under, among other things, Fed. R. Civ. P. 26 and 37 (e.g., supplementing disclosures and discovery responses) by failing to produce the declarations and/or provide the names and addresses of the subject declarants for approximately four months.  If the Special Master determines that defendants have violated any of their discovery obligations, the Special Master may impose and/or recommend the appropriate sanctions to be imposed.  In particular, the Special Master shall address whether defendants should be precluded from using at trial or in support of or in response to any motion the aforementioned 37 declarations, including whether the declarations should be stricken, whether the court should exclude the 37 witnesses at trial, whether and the amount of attorney's fees and costs to be awarded, and any other appropriate sanction(s) the Special Master deems appropriate.  The Special Master shall conduct whatever proceedings she believes are appropriate to decide these issues.

8.  The parties are reminded that they must comply with the court's previous orders relating to the appointment of the Special Master.  (See, e.g., Dkt. 69, Court's Order of February 13, 2017; Dkt. 87, Court's Order of April 4, 2017; Dkt. 110, Court's Order of May 26, 2017).

9.  Defendants shall provide a copy of this Order to each individual named defendant and the President and General Counsel for each corporate entity or business no later than one business day from the filing date of this Order.  No later than three business days from the filing

---

[9]   The court has already concluded that signed declarations are not subject to the work product doctrine's protection.

date of this Order, defendants' counsel shall provide a declaration, under penalty of perjury, setting forth the name and business address of each person who received a copy of this Order.

10.  Defendants shall forthwith provide a copy of this Order to all persons acting in concert or participating with defendants in business operations.  Defendants shall provide all necessary information about this Order to such parties.  Defendants shall keep a log with the names and addresses of all persons who have been provided with a copy of this Order.

11.  Defendants shall file their written response to the Order to Show Cause why a preliminary injunction should not be issued no later than **5:00 p.m.** on **February 6, 2018**.  Plaintiff shall file his reply to defendants' written response no later than **5:00 p.m.** on **February 10, 2018**.  Counsel for the parties shall attend a hearing regarding the Order to Show Cause on **February 13, 2018**, at **2:30 p.m.**

12.  The Clerk shall serve a copy of this Order on the Special Master.

Dated this 2nd day of February, 2018.

/s/
Fernando M. Olguin
United States District Judge