REBECCA M. ARAGON, Bar No. 134496
raragon@littler.com
JESSICA S. KANG, Bar No. 273221
jkang@littler.com
Littler Mendelson, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
Telephone:  213.443.4300
Facsimile:   213.443.4299

ANGELA J. RAFOTH, Bar No. 241966
Littler Mendelson, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
Telephone:  415.433.1940

Attorneys for Defendants
SOUTHWEST FUEL
MANAGEMENT, INC., VAHID
DAVID DELRAHIM, MARTIN
LIZARRAGA, GOLDENWEST
SOLUTIONS GROUP, INC.,
CALIFORNIA PAYROLL GROUP,
INC. AND SHANNON DELRAHIM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST FUEL MANAGEMENT, INC., dba BREA CAR WASH & DETAIL CENTER, a California corporation; GOLDENWEST SOLUTIONS GROUP, INC., a California corporation; CALIFORNIA PAYROLL GROUP, INC., a California corporation; VAHID DAVID DELRAHIM, an individual, and as managing agent of the Corporate Defendants; SHANNON DELRAHIM, an individual, and as managing agent of the Corporate Defendants; and MARTIN LIZARRAGA, an individual, and as managing agent of the Corporate Defendants;<br><br>Defendants. | Case No.  2:16-cv-4547 FMO (AGRx)<br><br>*HON. FERNANDO M. OLGUIN*<br>*HON. MAGISTRATE ALICIA G. ROSENBERG*<br>*HON. ROSALYN CHAPMAN (Ret.), Special Master*<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S FEBRUARY 2, 2018 ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE.**<br><br>Original Complaint Filed: June 23, 2016<br>FAC Filed: November 29, 2016<br>SAC Filed: May 22, 2017<br>Trial Date:  July 17, 2018 |

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ...................................................................................... 1

II.  DEFENDANTS ACTED PROPERLY IN INTERVIEWING
EMPLOYEE WITNESSES AND  GATHERING DECLARATIONS ............. 2

    A.  Defendants Did Not Engage In Coercion Or Retaliation In
Facilitating Interviews ................................................................ 4

    B.  Defendants' Counsel Made Extensive Disclosures And Conducted
Only Informed, Voluntary Interviews ....................................... 6

    C.  The Law Allows And Recognizes Employee Interviews And
Declarations With Precautions And Disclosures Such As Those
Employed By Defendants ............................................................ 7

        1.  The Law Supports Interviews Of Disclosed Fact Witnesses .......... 7

        2.  Defendants Provided Extensive, Legally Sufficient
Disclosures To Ensure Voluntary Participation .......................... 8

III.  THE FACTS AND EVIDENCE DO NOT SUPPORT ISSUANCE OF A
PRELIMINARY INJUNCTION; DO NOT ESTABLISH A
LIKELIHOOD OF SUCCESS PROVING RETALIATION ....................... 11

    A.  Interviewing And Collecting Declarations From Employee
Witnesses Is Not An "Adverse Action." ................................... 11

    B.  There Is No Evidence Or Facts Showing Participation Has Been,
Or Would Be "Chilled" By Defendants' Preparation and Litigation
Of Their Defense ....................................................................... 13

        1.  The Secretary's Investigator Declarations Are Insufficient
To Support A Preliminary Injunction ...................................... 13

        2.  Defendants' Investigation And Preparation Of Its Defense
Does Not Risk Irreparable Harm To The Secretary ................... 15

IV.  THE EXTRAORDINARY SCOPE OF ORDER REQUESTED BY THE
SECRETARY IS OVERBROAD AND IS NOT SUPPORTED BY
LEGAL AUTHORITY; REQUESTED RELIEF WOULD BE
IRREPARABLE HARM TO DEFENDANTS ........................................ 16

    A.  An Order Prohibiting Defendants From Communicating With
Employees Outside The Presence Of Counsel For The Secretary Is
Overbroad And Not Supported By The Law ............................. 17

    B.  The Facts And Evidence Do Not Justify The Extraordinary
Remedy Of Deposing Defendants' Counsel ............................. 19

    C.  Other Provisions Of The Court's TRO Are Overbroad And/Or
Infringe Upon Defendants' Counsel's Work Product Privilege ............. 24

LITTLER
MENDELSON, P.C.
633 WEST 5TH
STREET
63RD FLOOR
LOS ANGELES, CA  90071
213.443.4300

DEFS' RESPONSE TO ORDER TO SHOW
CAUSE

i.

# TABLE OF CONTENTS
## (CONTINUED)

**PAGE**

V.    CONCLUSION ............................................................................................25

LITTLER
MENDELSON, P.C.
633 WEST 5TH
STREET
63RD FLOOR
LOS ANGELES, CA 90071
213.443.4300

DEFS' RESPONSE TO ORDER TO SHOW
CAUSE

ii.

## I.     INTRODUCTION

The Court has ordered Defendants to show cause why the temporary restraining order ("TRO") issued on February 2, 2018, should not be extended as a Preliminary Injunction.   The TRO prohibits Defendants' counsel from even speaking with its Defendants' own employees, who are non-party witnesses in this litigation, unless done in the presence of opposing counsel for the Secretary. The TRO, and any similar preliminary injunction, would fundamentally eviscerate Defendants' counsel's rights and ability to prepare and present their defense at the upcoming trial in this action set for July 17, 2018.

Defendants (and their counsel) acted entirely properly in interviewing employees – all identified by the Secretary of Labor ("Secretary") as *unrepresented employee witnesses,* and gathering declarations from them in a voluntary and non-coercive manner.  Submitted herewith are declarations under oath from Defendants' manager and attorneys attesting to  the interview and declaration process used by them, showing the many steps and efforts undertaken to ensure Defendants collected only voluntary testimony.  The evidence shows that employees were advised of the nature and purpose of the interviews and declarations; that employees could (and did) decline to be interviewed and/or decline to provide a statement following interview; and that the declaration accurately described what the employees reported.  This direct detailed evidence substantially and probatively outweighs the declarations of DOL investigators offering only conclusory hearsay statements by anonymous employees.

Most importantly, the terms of the TRO and suggested preliminary injunction are overbroad, punitive and impose an unreasonable impediment to Defendants' ability to develop their defenses and prepare for trial.  Far from preventing irreparable harm—the irreducible standard for injunctive relief—continuance of the TRO will eliminate any possibility of a fair trial.  As discussed more fully below, Defendants have done nothing more than appropriately gather and present evidence in this case, within their Constitutionally guaranteed rights.  The Secretary is free to try to counter

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

1 | or impeach testimony from employee witnesses in due course and as presented at trial;
2 | the prejudice and irreparable harm in the Court's order lie entirely against Defendants
3 | who would be deprived of any meaningful opportunity to identify and prepare
4 | nonparty witnesses for trial without Court-sanctioned interference from opposing
5 | counsel.

6 | Defendants respectfully request this Court discharge its Order to Show Cause
7 | and the underlying TRO without issuing any Preliminary Injunction and permit the
8 | parties to proceed to trial in the accepted ordinary course.

9
10 | **II.    DEFENDANTS ACTED PROPERLY IN INTERVIEWING EMPLOYEE WITNESSES AND GATHERING DECLARATIONS.**

11 | At the core of the Secretary's application for a TRO and the Court's OSC is a
12 | foundational premise that Defense counsel should not have interviewed and taken
13 | declarations from Defendants' employees because prior video of employees at work
14 | no longer exists, having been over-taped.  But this premise is fundamentally flawed.

15 | In its reply in support of the TRO, the Secretary critically concedes:  "To be
16 | clear, the Secretary is not arguing ... that under normal circumstances, an employer
17 | can never solicit declarations from current employees about their working conditions."
18 | (TRO Reply, at 1:3-5.)  The Secretary, however, goes on to argue that because video
19 | had earlier been destroyed, that "defense counsel's conduct in securing declarations
20 | from the current employees stating that off-the-clock work never occurred is both
21 | inherently coercive and ethically problematic." (TRO Reply, at 5-10.)  The Court in
22 | granting the TRO seems to have accepted this argument.

23 | The Special Master in his May 2, 2017 ruling found that video created after
24 | August 31, 2016 should have been retained and not taped over, and while the Special
25 | Master further presumed the lost information on the tapes was unfavorable, the sole
26 | evidentiary sanction the Special Master imposed on Defendant for the spoliation was a
27 | limited one, that:
28 | ///

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

2.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

> "*Defendants shall be precluded from using any Brea videos in any motion, at any hearing, and at the bench trial*; however in the event Plaintiff uses any Brea videos he obtained in discovery from Defendants in any motion, at any hearing or at the bench trial, Defendants may use the same video's to rebut Plaintiff's claims".

(Special Master Order at 28:2-7, emphasis added.)  The Special Master did not award terminating sanctions (and denied the Secretary's request for them), and did not award issue sanctions (that any employee be conclusively deemed to have worked off-the clock).  Other than Defendants not being able to use any video, nothing in the Special Master's order in any way limited Defendants right to thereafter obtain and use other forms of evidence – including employee declarations – with which to defend the Secretary's claims. Thus, any foundational premise that the Special Master's spoliation Order somehow made Defendants' counsel's conduct in securing declarations to be "inherently coercive and ethically problematic" is not only wholly unwarranted, it is simply wrong.

Indeed, the Secretary's affront over Defense counsels' decision to take taking employee declarations in this case  rings particularly hollow in light the fact that Defendants originally sought by motion to be able to depose a sufficient number of these employee witnesses, but the Secretary opposed the motion and the Special Master denied it.  (That motion is now pending before the Court.)[1]  Had the Secretary agreed to Defendants request to depose a reasonable cross-section of the employees on whose behalf the Secretary had sued, these interviews and the taking of declarations would not have been necessary.  Instead, as noted, the Secretary opposed Defendants' motion, specifically by making the argument that "Defendants have had abundant opportunities to talk to [employees] and prepare for trial."  [Dkt 135-1 Jt. Stip re Defts' Motion for Leave to Take Addl Depos.)  *The Secretary took this position after the Special Master's ruling regarding video preservation, and the Secretary expressed*

---

[1] Docket Nos. 135-1 (Motion), 154 (S.M. Ruling), and 159x, 161, 166 (Motion for Review).

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

*no concerns or position that the ruling or discovery history should restrict the circumstances under which Defendant could interview those witnesses.*[2]

Given that Defendants were refused leave to take the depositions of representative swath of employee witnesses during discovery, Defendants properly proceeded in preparation for dispositive motions and, ultimately trial, by conducting interviews and obtaining declarations from these prospective witnesses.

### A. Defendants Did Not Engage In Coercion Or Retaliation In Facilitating Interviews.

Defendants recognize and understand the inherent dynamic present when defense attorneys interview current-employee witnesses. However, the law recognizes that that dynamic alone *cannot and does not preclude* employer defendants from interviewing and obtaining statements from employees. Were the law otherwise, employer defendants in class action litigation simply would not be able to defend themselves. *See Gulf Oil Company v. Bernard*, 452 U.S. 89 (1981).

Here, Defendants and their counsel took extensive precautions to ensure, to the extent objectively and reasonably feasible, that all employee participation in the interview and declaration process was non-coercive, voluntary, and truthful. Not only did attorneys verbally explain and provide written disclosures to – and obtain signed consents from – any participant who was interviewed, but both attorneys and the company employee soliciting interviewees emphasized multiple times that the employees were not required to participate and that employees' choice on whether or not to participate would have no impact whatsoever on their employment.[3]

---

[2] On numerous occasions throughout this litigation counsel for the DOL also justified the DOL's refusal to identify its witnesses on the ground that Defendants could easily talk to their own employees. ([Dkt 188] Defs' Response to Appl. for TRO, 4:9-5:26; [Dkt 188-1] Aragon Decl. ISO Opposition to Appl. for TRO, ¶¶ 7-10, Exhs. E-H).)

[3] Three of the 37 declarations are from former employees. The Secretary does not appear to challenge the circumstances or voluntariness of those declarations, which were obtained outside the "inherently coercive" dynamic of current employment.

4.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

Defendants' substantial evidence of this voluntary process and the employees' consent, as filed herewith and set forth below, demonstrates a legally compliant process that cannot be undone or outweighed by conclusory, hearsay from adversarial DOL investigators regarding the after-the-fact differing assessment *of a very few* anonymous employee witnesses.

The interviews of employee witnesses by Defendants' counsel were facilitated by Stephen Zarate, an administrative manager for Defendant Golden West Solutions Group, whose responsibilities since June 2016, has involved the purchase and installation of car wash equipment, rather than the management of any car wash locations or staff.  (Zarate Dec., ¶¶ 6-7.)

Mr. Zarate approached individual car wash employees who he knew from earlier being  a car wash location manager, who he thought might be willing to meet with company lawyers to discuss the litigation.  He purposefully did not approach anyone he believed could be intimidated by the process or an interview, and did not approach anyone in a group setting.  Mr. Zarate asked each employee that he approached if they would be willing to meet with a company lawyer to discuss the DOL's lawsuit.  He specifically told each employee that (1) the interview was voluntary; (2) the lawsuit related to claims by the DOL for wages the government claimed were owed; (3) the interview would related to hours, schedules, and paychecks; (4) that the employee would not be fired, disciplined, demoted or retaliated against in any way if they chose not to go to an interview; and (5) other than remaining on the clock to be paid for the time, there would be no benefit to the employee for participating the interview.  (*Id.*, ¶¶ 8,10.)

Mr. Zarate offered the employees transportation to the interview locations, but did not require they use it.  (*Id.*, ¶ 14.)He expressed no opinions to the employees about the DOL's lawsuit, and made no inquiries of employees regarding whether they had spoken to the DOL or were interested in speaking to the DOL.  Mr. Zarate did not inform any of the car wash managers about the purpose of the interviews, but only told them that some employees would be attending meetings and should remain on the

5.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

clock for the time.  Each employee affirmatively agreed to go to the interview *after* being told by Mr. Zarate that it was with the company lawyers and concerned a wage lawsuit by the DOL.  (*Id.*, ¶¶ 12, 14, 15, 19.)

### B. Defendants' Counsel Made Extensive Disclosures And Conducted Only Informed, Voluntary Interviews.

The interviews of employee witnesses were conducted by five bilingual attorneys from Littler Mendelson.  These attorneys have extensive training and experience conducting interviews with employee witnesses, including putative class members (the group most analogous to the employee witness population here).  (*See, e.g.*, Cole Decl., ¶ 3, Rodriguez Decl., ¶ 3, Aragon Decl. ¶ 3.)  These attorneys took substantial and significant steps to ensure that employees (who had already been initially told the purpose of the interview by Mr. Zarate) understood the voluntary nature of the interviews, and were fully apprised of the purpose of the interview, any potential adverse impact their evidentiary statements might have on an employee's financial interests under the litigation, and that the attorneys' represented the Defendants.  Indeed, the attorneys' emphasis in the interviews was the *actual voluntary and truthful participation of employees*:

- The attorneys ensured that employees were made fully aware that their participation was voluntary, with no retaliation if they declined to participate (and with no benefit if they did). (Cole Decl., ¶¶ 5,6, Santana Decl. ¶¶ 3,4,6,7, Urteaga Decl., ¶¶ 3,4, Rodriguez Decl., ¶¶ 7,9,10,15,17, Aragon Decl. ¶¶ 4,6,7.)

- All of the attorneys were fluent in Spanish, enabling the discussion to occur in Spanish if that was the preferred language of the employees.  (Cole Decl., ¶ 4 , Santana Decl. ¶ 3, Urteaga Decl., ¶ 3, Rodriguez Decl., ¶ 4, Aragon Decl. ¶ 3.)

- If an attorney determined that the employee was unable to read, he or she concluded the interview. (Cole Decl., ¶ 8,9, Santana Decl. ¶ 4, Aragon Decl. ¶¶ 4,14.)

- Each of the attorneys described who they were, who they represented, and explained that they were there because the Department of Labor had brought a lawsuit against the Company. (Cole Decl., ¶ 5, Santana Decl. ¶¶ 3,6, Urteaga Decl., ¶¶ 3,4, Rodriguez Decl., ¶¶ 5,6, Aragon Decl. ¶¶ 4,5,6,15.)

- They also made clear that information the employee provided might affect the employee's ability to recover money in the lawsuit later on. (Cole Decl., ¶5 , Santana Decl. ¶ 5,6, Urteaga Decl., ¶¶ 3,4, Rodriguez Decl., ¶ 8, Aragon Decl. ¶ 5.)

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

6.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

- The attorneys made every effort to ensure the employees knew why the interview was being conducted, and that it might later result in the employee also being deposed or testifying in court. (Cole Decl., ¶¶ 5,7, Santana Decl. ¶¶ 3,4,5, Urteaga Decl., ¶5,6, Rodriguez Decl., ¶¶ 5,6,13, Aragon Decl. ¶¶ 4,5,6.)

- If an employee declined to be interviewed, his or her wishes were respected. (Cole Decl., ¶¶ 5,6,8, Santana Decl. ¶ 9, Urteaga Decl., ¶ 3,4, Rodriguez Decl., ¶¶ 9,10,17.) If an employee became nervous or emotional during an interview, the interview was immediately ended and no attempt was made to obtain a declaration from that employee (Aragon Decl. ¶ 11)

- The attorneys stressed that they only wanted to learn the truth, and that, if a declaration was prepared, the employee must be comfortable with the final written statement as true. (Cole Decl., ¶¶ 5,10, Santana Decl. ¶ 8,11, Urteaga Decl., ¶ 6, Rodriguez Decl., ¶¶ 11,12, Aragon Decl. ¶¶ 4,11.)

- When the attorneys spoke with employees who declined to be interviewed, no interview or statement-taking took place. (Cole Decl., ¶¶ 8-9, Santana Decl. ¶ 9, Urteaga Decl., ¶ 3,4, Rodriguez Decl., ¶ 17.)

- If an employee asked for a copy of anything the employee during the interview, he or she was given a copy. (Cole Decl., ¶ 9 (consent form), Urteaga Decl., ¶ 7 (consent form), Aragon Decl. ¶ 13.)

The attorneys' statements and actions reflect that the consent forms executed by the employee witnesses were more than just theoretical. The voluntariness of the process was thoroughly explained and employees had a real option of declining at any point to participate or sign a statement – and several did.  There is no evidence – or any reason to infer – that *any* adverse consequences of any kind resulted from the interview process, whether an employee chose or declined to participate.

### C. The Law Allows And Recognizes Employee Interviews And Declarations With Precautions And Disclosures Such As Those Employed By Defendants.

#### 1. The Law Supports Interviews Of Disclosed Fact Witnesses.

There is no law prohibiting Defendants from speaking to percipient non-party witnesses outside the presence of the Secretary.  Indeed, as the court noted in *Holak v. Kmart Corp.*, 2014 WL 2565902, *11 (E.D. Cal. 2014):

> when a fact witness is disclosed, all parties are on notice that the disclosing side contends the witness has relevant knowledge . . . [and] are thus on notice that the disclosing side may well have interviewed the witness and may have even obtained a statement. . . . All parties are free to contact the fact witness and obtain their own statements.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

7.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

In *Holak*, the defendant collected declarations of several employees which supported its defense of the wage and hour allegations against it. As here, the defendant in *Holak* did not previously disclose the employee declarations to the plaintiff, until they were filed with the court as part of a pre-trial motion.  As the court noted, "[t]he Federal Rules of Civil Procedure do not require a party who has disclosed potential witnesses to reveal the declarations signed by said witnesses for use in an impending summary judgment motion." Id. at 2014 WL 2565902, at *10, *quoting Joseph v. Las Vegas Metro. Police Dep't*, 2011 WL 2295071 (D. Nev. June 10, 2011).  "Such declarations are considered work product up until the moment they are filed." *Id*., *citing Intel Corp. v. Via Technologies*, 204 F.R.D. 450, 451-52 (N.D. Cal. 2001).[4]

### 2. Defendants Provided Extensive, Legally Sufficient Disclosures To Ensure Voluntary Participation.

"Any orders limiting communications between parties and potential class members 'should be based on a clear record and specific findings that reflect a weighing of the need for the limitation and the potential interference with the rights of the parties.'" *Id*. (quoting *Gulf Oil Co., v. Bernard*, 452 U.S. 89, 101 (1981).  Both factually, and as a matter of law, Defendants' communications with current and former employees have not been deceptive or coercive, as Defendants informed the employees about "(1) the details underlying the lawsuit, (2) the nature and purpose of the communications, and (3) the fact that any defense attorneys conducting the communications represent the employer and not the employee." *Javine v. San Luis Ambulance Serv., Inc.*, No. CV1307480BROSSX, 2014 WL 12496988, at *4-5 (C.D. Cal. Dec. 12, 2014).[5]  In *Javine* the court found the plaintiff failed to provide

---

[4] Both the Secretary and Defendants disclosed *all* of Defendants' non-party employee witnesses as being potential witnesses in supplemental Rule 26(a) disclosures. (Aragon Decl., ¶ 22.)

[5] Notably, as this is not a class action, the "pre-certification" guidelines on communications are not strictly applicable.  For instance, as these individuals are not clients of the Secretary – and will not be at any point in the litigation – there is no attorney-client relationship or bar on communication with a represented party at any point.  Nonetheless, in an abundance of caution and with the intend of ensuring full

8.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

1   sufficient factual basis for the court to conclude that defendant's communications
2   were misleading and that restrictions on party communication were warranted. *Id.*
3   at 4.  As occurred here,  the court found that the employer apprised its employees of
4   the lawsuit as well as their beneficiary status as potential members.  *Id.*  Specifically
5   regarding the resulting declarations, the court noted that the declaration stated that it
6   was given freely and voluntary under penalty of perjury.  *Id*.  The declarants were also
7   informed that the purpose of the declaration was to help the defendant.  *Id.*  And the
8   court noted that there was no indication that the defendant sought to mislead the
9   declarants.  *Id.*

10          As in *Javine*, the voluntary witness interview consent forms submitted here by
11   Defendants affirmatively warn putative class member witnesses that any responses
12   they provided to Defendants' counsel "may be used by the Defendants in a way that
13   may adversely affect any claim brought, or that could be brought, by the DOL on
14   [their] behalf." Consent Form [Aragon Decl., Exhibit A], ¶ 5 and "Witness
15   Acknowledgment"][6]  Defendants also affirmatively informed the witnesses regarding
16   the details underlying the lawsuit. Consent Form [Aragon Decl., Exhibit A], ¶ 1 ("The
17   lawsuit claims that the Defendants failed to correctly calculate and pay overtime, did
18   not pay employees all wages due and failed to timely pay employees all wages or to
19   maintain accurate time and wage records").   Further, Defendants informed the
20   witnesses that they might be entitled to recover money therefrom.  Consent Form
21   [Aragon Decl., Exhibit A], ¶ 1 ("At some point, you may be eligible to collect money
     and/or obtain other remedies").  Defendants' consent form further warned witnesses

22
23   voluntary consent from interviewed employees whose rights could be impacted by the
24   facts they shared, Defendants followed the law on precertification communications
     with class members as analogous.

25   [6] In issuing its TRO Order, the Court mistakenly found that Defendants Consent
26   Forms' supposedly did not reveal "that the information [employees] share might
     <u>adversely</u> affect their rights in the lawsuit." (TRO Order at 10:15-16, emphasis in
27   Court's Order).   However, as accurately quoted above, the Consent Form did
     expressly advise the employees that information they provided could "adversely
28   affect" potential claims they might bring or have brought on their behalf – in *two*
     places. (Consent Form [Aragon Decl., Exhibit A], ¶¶ 5, Witness Acknowledgment.)

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

9.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

1    that the interview was not confidential and participation in the interview could

2    adversely affect witnesses' rights with respect to the claims brought by the Secretary.

3    Consent Form [Aragon Decl., Exhibit A], ¶ 5 ("information you share with me may be

4    shared with the Defendants and used in the lawsuit in a way that could adversely

5    affect any potential claim that was brought, or could be brought, on your behalf by the

6    DOL").  Finally, the witness consent form also informs the witnesses that they may be

7    asked to sign a statement regarding their employment, which could affect the

8    witnesses' rights in the lawsuit, including the witnesses' right to receive any money as

9    a result.  Consent Form [Aragon Decl., Exhibit A], ¶ 7. The consent form also informs

10   witnesses that the interview process, which included the signing of any statement[7], is

11   entirely voluntary and they will not be subject to any adverse action or obtain any

12   benefit for speaking with Defendants' counsel.  Consent Form [Aragon Decl., Exhibit

13   A], ¶¶ 3, 6, Witness Acknowledgment.

---

[7] The Court's TRO also emphasized that Defendants did not inform the employees of
the Special Master's spoliation order. (TRO Order at 10:14-15), but, as previously
noted, the Special Master's Order did not in any way require that, or even suggest that
the found spoliation should have any relevance to any future evidence gathering and
use - other than Defendants' future use of *video*.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

10.

**III.   THE SIGNED CONSENT FORMS, SUPPORTED BY VERBAL DISCLOSURES BY THE ATTORNEYS, WERE LEGALLY SUFFICIENT TO ESTABLISH THAT COUNSEL PROPERLY ADVISED THE EMPLOYEES OF THE PURPOSE AND EFFECT OF THE COMMUNICATION, AND OF ITS VOLUNTARY NATURE. FURTHER, AS OUTLINED ABOVE, BOTH DEFENDANTS' PERSONNEL AND THE ATTORNEYS CONDUCTING THE INTERVIEWS TOOK FURTHER, SUBSTANTIAL STEPS BEYOND THE LEGAL DISCLOSURES TO ENSURE THAT NO EMPLOYEES WERE INTERVIEWED WHO DID NOT UNDERSTAND OR FULLY CONSENT, AND THAT EMPLOYEES WERE COMFORTABLE PROVIDING TRUTHFUL INFORMATION. [8] THE FACTS AND EVIDENCE DO NOT SUPPORT ISSUANCE OF A PRELIMINARY INJUNCTION; DO NOT ESTABLISH A LIKELIHOOD OF SUCCESS PROVING RETALIATION.**

**A.   Interviewing And Collecting Declarations From Employee Witnesses Is Not An "Adverse Action."**

Conducting interviews and obtaining declarations from employee witnesses under the circumstances of this matter is entirely lawful, and does not constitute an adverse employment action under the FLSA.  The Secretary's assertion to the contrary is based on misapplication of law.

In *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 490 (C.D. Cal. 2006), relied on by the Secretary, the court limited communications with class members by defendant, *where class action had been certified*, rendering class members *represented parties.*  In contrast, in this case we do not have a represented class, have no allegations of terminations or other adverse actions being taken, as found in that case, have no allegations or evidence of threats made against employees, and no

---

[8] To the extent the DOL indicates that one employee told them her declaration was incomplete - but truthful, the investigator's declaration offers no explanation why the employee did not tell that to the Defendants' attorney and ask for changes. Indeed, investigator Liu's declaration, on which the Court's OSC bases its concerns that Defendants solicited false or misleading testimony, is clear that the individual alleging an incomplete declaration *did not advise the interviewing attorney of the omitted fact.* ("[H]e did not tell her that in the past when there was no schedule he had to wait to clock in." Liu Decl., 2:4-5).  Moreover, if the unnamed employee now belatedly feels a need for additional information to clarify or contextualize the declaration, that would certainly be something that could be explored by the Secretary at trial; but does not support a finding of implicit coercion or deception of any kind during the interview process.

11.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

statements discouraging employees from participating in the lawsuit or talking to the DOL. *Wang* is inapplicable.

Similarly, in *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014), cited by the Secretary, the defendant-employer distributed a letter, along with an attached opt-out declaration. *Id*. at 620.  The letter suggested that the employees would be personally involved through depositions and subpoenas, described the impact on the personal lives of the owners, and suggested that the class action lawsuit would cause the business to close, with the obvious implication that the employees would lose their jobs. *Id*. The court found the "dramatic statement of the potential loss of employment should employees join the lawsuit . . . problematic, as [was] the accompanying opt-out declaration," in the context of obtaining opt-outs prior to class certification. *Id*. at 624, 625. Even under these circumstances, the court *declined* to limit communication between the defendant and putative class members, as there was no evidence that any particular putative class member was coerced. *Id*. at 626.  Here, as with *Camp*, there is no evidence that any employee was discouraged from speaking with the Secretary, nor is there inflammatory language in the voluntarily interview consent form or evidence of coercive statements sufficient to invalidate the declarations and/or prohibit Defendants and/or their counsel from speaking with non-party percipient witnesses.

The Secretary further relies on *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F.Supp.2d 1053 (N.D. Cal. 2007) for the proposition that employer's suggestions, requests and observations can become directives or threats. However, the court in *In re Wells Fargo* makes no such conclusion. Rather, the court noted that *both* the plaintiff and defendant's declarations, submitted in the context of a motion for class certification, had reliability concerns.  *Id*. at 1061. The court neither struck declarations nor restricted communications with class members.

The Secretary also misrepresents the holding of *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010).  In *Guifu*, the court found the mandatory in-person, one-on-one meetings with managers were inherently coercive where employees were presented with opt-out forms that were not translated into the

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

12.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

workers' primary language.   Here, employees were provided with a voluntary interview consent form, in their primary language, and they were explicitly informed that the meeting was *not* mandatory, and they could (and some did)  decline to participate or stop the interview whenever they wished, without any adverse consequence or.[9]

Although "the existence of an employer/employee relationship increases the possibility of coercion, '[i]t is not enough that a *potentially* coercive situation exists." *In re M.L. Stern Overtime Litigation,* 250 F.R.D. 492, 498, *quoting Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997) (emphasis original).  In *Gulf Oil Company v. Bernard*, 452 U.S. 89 (1981), the Supreme Court held, "the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Id*. at 104.   Because the Secretary has failed to demonstrate any sufficiently coercive and improper conduct beyond an "inference" of coercion that might exist in any case involving an ongoing employer/employee relationship, Defendants and their counsel should not be restricted from freely speaking with any non-party employee witnesses.

**B.      There Is No Evidence Or Facts Showing Participation Has Been, Or Would Be "Chilled" By Defendants' Preparation and Litigation Of Their Defense.**

**1.      The Secretary's Investigator Declarations Are Insufficient To Support A Preliminary Injunction.**

The declarations submitted by the Secretary are insufficient to support a

---

[9] The Secretary's reliance *Sjoblom v. Charter Communications*, LLC, 2007 WL 5314916 (W.D. Wis. Dec. 26, 2007), *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005), and *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797 (N.D. Cal. June 15, 2012), is similarly inapposite.  In material contrast to those actions, here employees were advised that they might be able to participate in or recover from the Secretary's lawsuit (*Sjoblom*), were advised that the information collected might be used in a manner adverse to their interests (*Mevorah*), and there were no communications impugning the Secretary's motives in the litigation or implying personal or financial costs to employees by participating in the lawsuit (*Wright*).

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

13.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

preliminary injunction against Defendants or their counsel.  Even if taken at face value, the declarations allege little more than that: three or four unnamed employees signed documents but did not receive copies (the declarations notably do not specify whether they asked for copies[10]); one refused to sign (demonstrating voluntariness); one employee objects to how signatures at the company are *generally obtained* (but says nothing about the declaration process at issue here); one states he omitted providing facts during his interview, which he now claims make his declaration incomplete or inaccurate; a few of the 37 declarants have indicated that they subjectively felt they had to sign documents to remain employed (but point to nothing said or did that would objectively give rise to such fear); and that Defendants did not provide *additional* disclosures about the Special Master's video order.  None of these assertions even amount to misconduct, let alone "coercion, intimidation, or retaliation."

Moreover, the declaration making even those allegations consist solely of hearsay of conversations between the Secretary's investigators and unnamed employees.  Hearsay alone is "generally is considered insufficient to support a motion for a preliminary injunction."  11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2949 (3d ed. 2017 update).  Moreover, even if considered, such hearsay should be given very little consideration against declarations made on the basis of first-hand knowledge, such as the six declarations made by Defendants' personnel and attorneys, and submitted herewith. *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 357 (5th Cir. 1971).  The declarations submitted in connection with this Response set forth how Defendants and their counsel conducted interviews and prepared declarations.  In both substance and specificity, the declarations submitted by Defendants substantially outweigh the

---

[10] If they had been asked for, the declarations submitted herewith by Defendants' counsel evidence that they would have been provided.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

hearsay declarations from DOL investigators about what they were told by anonymous employees.

In addition to being hearsay, the DOL investigators' declarations are deficient because they do not identify the employees whose allegations are being reported. Issuing an injunction without granting Defendants the chance to examine their accusers would be a due process violation.  "Defendants [] need to know the identity of persons making statements on Plaintiffs' behalf, and the content of those statements." *Guifi Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 516 (N.D. Cal. 2010) (holding that despite class action plaintiffs' fear of termination or reduced assignments, they could not proceed anonymously). *See also 4 Exotic Dancers v.*

///

*Spearmint Rhino*, 2009 WL 250054, *2 (C.D. Cal. 2009); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1070-71 (9th Cir. 2000).[11]

### 2.     Defendants' Investigation And Preparation Of Its Defense Does Not Risk Irreparable Harm To The Secretary.

The Secretary is required to demonstrate irreparable harm for a preliminary injunction to issue, and the Secretary cannot do so.  First, Defendants disagree that the FLSA's injunction authority obviates this requirement.  Although the FLSA allows the Secretary to seek injunctive relief to prevent an employer from violating the FLSA, the injunction here relates to conduct in defense of litigation and limiting access to witnesses, rather than preventing statutory violations. The Secretary's

---

[11] Should the Secretary rely on his asserted informant's privilege to shield the identifies of the employees discussed in the investigator declarations, the privilege is inapplicable.  The informants' privilege operates only to shield the identities of employees *who have not otherwise been identified in the litigation*. ("Where the identity of the informer has been disclosed, the [informant's] privilege no longer applies . . ." *Perez v. Sunshine Motel Inn, LLC*, No. 1:15-CV-3197-RMP, 2016 WL 10586147, at *3 (E.D. Wash. Sept. 12, 2016) (*citing Roviaro v. U.S.*, 353 U.S. 53, 60 (1957)). Here, the employees were *previously identified by Defendants and submitted declarations*; their identities and participation are known and the privilege does not apply to their subsequent alleged statements to the investigators.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

15.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

request is beyond the parameters of 29 U.S.C. §§ 211 and 217. *See Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (requiring a showing of irreparable harm to enjoin the police department from conducting internal affairs investigations concerning the statements during FLSA litigation).[12]

Furthermore, the Secretary cannot establish that he will suffer irreparable harm if an injunction is not issued. There has been no showing of any expressly threatened or actual retaliation in this case; only unsupported allegations of a generalized and remote potential of implied coercion and retaliation, which relies on anonymous hearsay.  "[T]he *possibility* that intimidation may occur does not mean that it has occurred." *Marxe v. Jackson*, 833 F.2d 1121, 1126 (3d Cir. 1987) (emphasis added). Simply put, the evidence presented by the Secretary addresses at most  *speculative* harm, and does not demonstrate irreparable harm.

Lastly, Defendants have only procured statements from a small subset of employees, when there are 789 individuals at issue in this case.  The Secretary has provided no evidence of how Defendants' contact with a small sub-set of the employees has caused irreparable harm to the Secretary's ability to litigate this case. Obviously, the Secretary has continued to speak to the employees, and was able to procure the statements it submits through its investigators in support of this request. There has been no showing of irreparable harm to warrant a preliminary injunction.

**IV.  THE EXTRAORDINARY SCOPE OF ORDER REQUESTED BY THE SECRETARY IS OVERBROAD AND IS NOT SUPPORTED BY LEGAL AUTHORITY; REQUESTED RELIEF WOULD BE IRREPARABLE HARM TO DEFENDANTS.**

The scope of the Order contemplated by the Court goes far beyond simply requiring that Defendants not retaliate or discriminate against employees.  Defendants

---

[12] The cases cited by the Secretary at pages 8-9 of his TRO brief) (*Antoninetti, Odessa Union Warehouse, Trailer Train Co., Marxe*, and *Atchison, Topeka and Santa Fe Railway Co.*) do not even relate to the FLSA.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

have met this standard all along.   The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V.I*, 590 F.3d 1091, 1094 (9th Cir. 2010); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) ("A preliminary injunction, of course, is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment. ")).   Preliminary injunctive relief should not be punitive.  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("[t]he historic injunctive process was designed to deter, not to punish"); *see also First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.,* 155 F. Supp. 2d 194, 235–36 (M.D. Pa. 2001) ("[A]ny irreparable harm alleged by Plaintiff must be prospective. A preliminary injunction is not a vehicle through which a plaintiff can seek correction of past wrongs.")

///

Here, the relief requested by the Secretary does not address any risk of *prospective* harm.   Instead it seeks to punish Defendants for unrelated alleged discovery misconduct by *entirely precluding them* from summoning evidence or preparing a defense for the upcoming trial.   *See Martin v. International Olympic Comm*., 740 F.2d 670, 675 (9th Cir. 1984) ("In cases .... in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo… courts should be extremely cautious about issuing a preliminary injunction.").

### A.   An Order Prohibiting Defendants From Communicating With Employees Outside The Presence Of Counsel For The Secretary Is Overbroad And Not Supported By The Law.

A temporary restraining order, or other relief, restricting free contact with fact witnesses is supported only in cases of egregiously unethical conduct, not remotely alleged or supported in this matter.   For example, in *Perez v. J&L Metal Polishing, Inc.*, 2016 WL 7655766 (C.D. Cal. May 9, 2016), the business owner engaged in repeated egregious misconduct, where he expressly threatened employees with termination or other retaliation for speaking with the Secretary, instructed his

17.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

employees to tell the Secretary false facts, and forced his employees to sign waivers saying they were willing to work overtime without overtime pay – all of which actions, and more, the Secretary averred made it difficult for his investigators to communicate with J&L employees. *Id.* at *2-3.

Here, there is no comparable conduct. There are, in fact, *no* allegations of any objective acts or statements of actual retaliation or coercion by Defendants or their counsel in this matter. The allegations are, at most, the subjective notions of a few employees, which the Secretary claims as "implied" coercion. There simply is no comparison to the specific showing of egregious, explicit retaliatory statements and directly coercive conduct by the defendant in *J&L Metal*.

Moreover, in *J&L Metal*, ordering that the Defendant could not talk with employees about their claims outside the presence of counsel for the Secretary, did not address or in any way prejudice the ability of *defense counsel* to communicate with prospective non-party witnesses to prepare the employer's ongoing defense in the litigation. The case addressed only the owner Navarro's conduct, and nothing in the case talks about, let alone explicitly addresses, the ability of *defense counsel* to meet independently with prospective witness so as to fully prepare a defense in advance of trial.[13]

On the contrary, courts have found orders requiring opposing counsel to be

---

[13] Similarly, in *Perez v. FatimaZahra, Inc.*, 2014 WL 2154092 (N.D. Cal. May 22, 2014), the business owner yelled at the Secretary's investigator, and was overheard telling an employee to "get [the investigator] out of there or you will be fired!" *Id.* at *1. The owner called the police, and requested that they remove the investigator, and allegedly instructed the employees that it they talked to the investigator, they would "not have a job." *Id.* Again, the court noted the Secretary's inability to speak with the witnesses, because the business owner discouraged the employees from providing information to the investigator. Again, the court's order did not implicate the ability of *defense counsel* from communicating with prospective non-party witnesses without opposing counsel present. Here, not only is there no allegation of any statements or conduct discouraging employees from talking to the DOL or participating in the lawsuit, there is no evidence that the Secretary is being hindered from speaking with prospective non-party witnesses, including those who spoke to Defendants.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

present during witness interviews to be unduly restrictive and impairing of the right to effective counsel.  First, "[i]t is generally understood that "'[w]itness interviews, conducted in private, are routine components of nearly every attorney's case preparation.'" *Thomas v. 1156729 Ontario Inc.*, 979 F.Supp.2d 780, 786 (E.D. Mich. 2013), *quoting In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 946 F.Supp.2d 512, 514 (S.D. W.Va. 2013). "'Unless impeded by privilege, an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows.'" *Id., quoting Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983). Stated another way, "[a]s a general rule, in the absence of a specific prohibition, potential witnesses are fair game for informal discovery by either side of a pending action." *In re Am. Med., at 514, citing International Bus. Mach. Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975).

Moreover, "[w]hile the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the ex parte interview of a witness willing to speak." *Martin v. Posey*, 2017 U.S. Dist. LEXIS 13214, *24-25 (S.D. Ohio 2017). A such, the courts have <u>rejected</u> the concept that interviews should only be conducted in the presence of opposing counsel.   *See IBM v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975) (reversing court requirement that all interviews with trial witnesses be conducted in presence of opposing counsel and court reporter as impairing the right to effective counsel); *In re Am. Med. Sys.*, 946 F. Supp. 2d 512, 514 (S.D.W.V. 2013) ("Witness interviews, conducted in private, are routine components of nearly every attorney's case preparation. As a general rule, in the absence of a specific prohibition, potential witnesses are fair game for informal discovery by either side of a pending action." (*citing International Bus. Mach. Corp v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975).).

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

Here, any order preventing Defendants counsel from further meeting with prospective witnesses (and/or obtaining any declarations from them) in advance of trial without the added involvement of counsel from the Secretary, is both factually unwarranted and improperly impairs Defendants' ability to prepare their defense.

**B.    The Facts And Evidence Do Not Justify The Extraordinary Remedy Of Deposing Defendants' Counsel.**

This Court has asked the parties to address the merits depositing defense counsel in light of the Ninth Circuit's decision in *Arias v. Raimondo*, 860 F.3d 1185, 1190-92 (9th Cir. 2017), applying the standard for deposing counsel set forth in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003) ("*Friedman*").[14]

First, it bears noting that *Arias* involved a lawyer as a party. The facts of *Arias* are also far afield of this case. The *Arias* court recounts that plaintiff José Amulfo Arias filed a claim against his employer, Angelo Dairy, but Angelo Dairy's lawyer, Anthony Raimondo, threatened to report Arias to U.S. Immigration and Customs Enforcement ("ICE") to induce dismissal of the case. Arias settled the wage claim against Angelo Dairy out of fear, and then filed a lawsuit against Raimondo personally for retaliation under the FLSA. Arias obtained emails between Raimondo and ICE, and had evidence that Raimondo had a pattern and practice of reporting his clients'

---

[14] Defendants do not believe that the test set forth in *Friedman* is binding or appropriate. The decision is an advisory opinion based on *no facts* because the appeal had been mooted before the decision was issued. *See Friedman*, 350 F.3d at 72-73 (Wesley, concurring) ("This appeal has been properly dismissed as moot and therefore no adjudication of the rights of the parties is necessary or proper. The majority produces an odd result—a careful discussion of an issue that would have resolved a dispute but for the fact that it no longer exists."). While Defendants will address the *Friedman* factors per this Court's instructions, Defendants submitted that *Shelton* provides a more appropriate guard against the abuses inherent in deposing opposing trial counsel. *See Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA LB, 2012 WL 5988617, at *4 (N.D. Cal. Nov. 26, 2012) (noting "that trial counsel is different than in-house counsel when issues of litigation strategy are implicated (even if privilege is not)", holding that *Shelton* applies to deposing *trial counsel*, rather than *Friedman* that applies to deposing *in house counsel*).

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

20.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

employees to ICE to coerce them into settling, so his lawsuit was well-founded in fact. When Raimondo urged the court to dismiss the FLSA retaliation case based on the fact he was not an employer, the Ninth Circuit held that *anyone* (including but not limited to lawyers) could be liable under the FLSA for retaliation.

Make no mistake, Raimondo's behavior was despicable; but Defense counsel herein has done nothing remotely similar. Further, Raimondo could have been an accountant, subcontractor, or third party vendor for any service and the analysis would have been the same. Anyone can be liable for retaliation. The case has nothing specifically to do with *deposing* lawyers.[15]

Second, the *Friedman* factors weigh against depositions of Defendants' counsel. In *Friedman*, a liquidation trustee sued former members of a bankrupt corporation's board of directors for breaching fiduciary duties in approving a certain merger transaction. *Id.* at 66. The defendants argued that they had satisfied their fiduciary duties *based on their attorney's advice. Id.* The District Court quashed the deposition subpoena of the attorney, relying on *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1986), but the Second Circuit advised (despite the appeal being dismissed) that the prerequisite exhaustion of other sources of information prescribed by *Shelton* was not required in the Second Circuit. Though the *Friedman* factors generally concern deposing attorneys from prior events, *not* opposing counsel in the instant action. *Friedman*, 350 F.3d at 72.

Taking into account "all of the relevant facts and circumstances," the Court should start with Plaintiff's purpose in deposing Defense counsel here. The Secretary offers one central reason it needs to depose defense counsel: "the Secretary needs to depose defense counsel to complete his investigation into their declaration-gathering

---

[15] Plaintiff cites to *Arias* for the proposition that "deposing counsel is the 'most reasonable avenue to pursue evidence' for a Section 15(a)(3) claim." (Dkt. 189, p. 8:27-28.) Defendants do not know where that quoted language comes from, but it certainly is not *Arias*. *Arias* has absolutely nothing to do with deposing counsel.

21.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

1   and to determine whether grounds exist for amending the complaint [to add defense

2   counsel as defendants]."  (Secretary's Reply in Support of Application for Temporary

3   Restraining Order, Dkt. 189, p. 8.)  Put in other words, Plaintiff claims it needs to

4   depose Defense counsel in order to make a determination whether Defense counsel

5   may have suborned perjury by coercing possibly false statements.

6          If the "need" to depose Defense counsel is for the Secretary to be able to make

7   a determination whether Defense counsel coerced false statements, or whether they

8   retaliated against employees for protected activity, then Plaintiff no longer "needs"

9   that deposition testimony. Filed herewith are declarations made under oath from each

10  attorney who participated in gathering declarations.  Plaintiff has both sides of the

11  story—what its investigators say they have been vaguely told  by unnamed

12  employees, and the detailed accounts of Defense counsel.  If the "need" is to

13  determine whether to add Defense counsel as defendants, the declarations provided

14  herewith make clear that any such claim would be unfounded.  If the "need" is to

15  determine whether employees were induced into "waiving their rights under the

16  FLSA," that question must be directed entirely to the employee declarant, i.e., was the

17  sworn testimony in the declaration false?  None of the investigator declarations reflect

18  such an allegation. Defense counsel simply wanted truthful information from the

19  employees it interviewed.  If that information was not true, that means the employee

20  chose to provide false information to Defense counsel, and *signed the statement*

21  reflecting that false or mistaken information.

22         Plaintiff posits that "the lawyer's role in connection with the matter on which

23  discovery is sought and in relation to the pending litigation" is a factor in his favor

24  because "defense counsel are the best percipient witnesses to their declaration

25  campaign." (Dkt. 189, p. 9.)  This argument does not take "the lawyer's role" into

26  account at all, and ignores the employees themselves as the source of this information.

27  *See Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, No. CV132747DMGAGRX,

28  2014 WL 12591805, at *3 (C.D. Cal. May 29, 2014) (*Friedman* and *Shelton* tests not

22.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

satisfied where there is "no showing that any relevant facts could not be obtained from other sources"). The "lawyer's role" here is active trial counsel rather than former in-house counsel or counsel who provided advice that a party now invokes in an affirmative defense. *See Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA LB, 2012 WL 5988617, at *4 (N.D. Cal. Nov. 26, 2012). Deposing opposing trial counsel is highly prejudicial and far afield of the facts in *Friedman*. *Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, No. 3:16CV00544(JCH), 2017 WL 3228120, at *5 (D. Conn. July 31, 2017) (finding attorney's role weighed against deposition, noting "there is a clear risk of disrupting the litigation and chilling the relationship between counsel and client, where [the attorney] has been trial counsel for [the party] throughout.").

The risk of encountering work-product privileged information is plain. Plaintiff is not entitled to Defense counsel's mental impressions, theories, or strategies. *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S. Ct. 677, 688, 66 L. Ed. 2d 584 (1981) ("The notes and memoranda sought by the Government here, however, are work product based on oral statements. . . . such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.") The very discovery of which employees Defense counsel chose to speak to, and which ones were selected to provide declarations (and which ones were not) constitutes "mental impressions, theories, or strategies."[16] Moreover, the notes and drafts of declarations ordered disclosed by this Court constitute protected attorney work product.[17] Likewise, any deposition of Defense counsel to inquiring into how

---

[16] For this reason, Defendants contend that Paragraph 4 of the Court's TRO, ordering Defendants' counsel to turn over, *inter alia*, notes, memoranda, drafts and list of employees interviewed, impermissibly infringes upon their work product privilege.

[17] The question isn't whether the facts as stated by a witness are attorney work-product. Rather, it's that the act of speaking to, recording notes on, and then ultimately *deciding to get a declaration from* an employee that is the act of attorney strategy. Saying the filed declarations themselves are discoverable is not tantamount to saying the process of picking those specific declarants and the underlying logic supporting

23.

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

Defense counsel chose to decide what questions to ask, and which interviews would be made into declarations, constitutes "mental impressions, theories, or strategies." The signed declarations taken by Defense counsel and submitted to the Court are already in the record and speak for themselves as to their content.  Whether or not they accurately reflect working conditions at Defendants' operations will ultimately be determined at trial after all of the trial evidence is presented.

Finally, the "extent of discovery already conducted" factor weighs against deposing Defense counsel.  Discovery is complete and the parties have filed motions for summary judgment.   Plaintiff is free to controvert any declaration used by Defendants at trial, and there is no indication that the declarants will not be available for trial.  Defense counsel did not ask employee witnesses to say anything other than the truth, so any "waiver" argument is unfounded, provided the employee witnesses spoke truthfully to Defense counsel as they were asked to  do.

There is no merit to Plaintiff's request to depose Defense counsel, and certainly no need following the Secretary's now receipt of declarations from each of Defendants' counsel who were involved in gathering declarations from employees.

## C.     Other Provisions Of The Court's TRO Are Overbroad And/Or Infringe Upon Defendants' Counsel's Work Product Privilege.

Defendants further object to other provisions in the Court's TRO and proposed Preliminary Injunction.

Defendants object to Paragraphs 4, requiring them to produce all documents associated with their efforts to gather declarations from non-managerial employees, including (but not limited to) notes, memoranda, drafts, and lists of employees who were interviewed but from whom declarations were not sought.  (Order [Dkt. 190], ¶

those litigation decisions becomes unprotected.  The attorney work product doctrine protects trial preparation materials *that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews*. FRCP 26(b)(3); *Hickman v. Taylor* 329, U.S. 495, 510-11 (1947); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig*., 293 F.3d 289, 294 (6th Cir. 2002); *Menasha Corp. v. U.S. Dept. of Justice,* 707 F.3d 846, 852 (7th Cir. 2013).

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

4.)    As set forth in more detail in Defendants' Opposition to the Secretary's Application for a TRO and OSC [Dkt. 188], they are work product until they are filed and thus protected from disclosure by the privilege. *Joseph v. Las Vegas Metropolitan Police Dept.*, 2011 WL 2295071 *1 (D. Nev. 2011) ("Such declarations are considered work product up until the moment they are filed"). Even more clearly, the notes, draft, memoranda and other documentation surrounding the witness interview and preparation of such declarations, constitute attorney work product, as they reveal and contain attorneys' mental impressions, theories and strategies. *See infra* at pp. 22-23, and fn 16.

In addition, Paragraph 10 of the Court's TRO and proposed Preliminary Injunction instructing Defendants to provide a copy of the Court's Order "to all persons acting in concert or participating with defendants in business operations" is overbroad to the extent it appears to require Defendants to provide the Order to all suppliers, vendors, and arguably even customers. Although Defendants believe that the Court likely did not intend the scope of Paragraph 10 to be so broad (and instead intended it merely to extend to other businesses with a common ownership interest or entities with other significant business ties), they are compelled to object to this provision on the grounds of its potential overbreadth.

## V.    CONCLUSION

For all of the above reasons, Defendants respectfully submit that the present TRO should be immediately dissolved, and the Order to Show Cause dismissed with no  Preliminary Injunction to be entered

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

25.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE

1    Dated:  January 25, 2018

2

3

4

5

6

7    Firmwide:152721693.5 090117.1001

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Rebecca M. Aragon*
REBECCA M. ARAGON
LITTLER MENDELSON, P.C.
Attorneys for Defendants
SOUTHWEST FUEL MANAGEMENT,
INC., GOLDENWEST SOLUTIONS
GROUP, INC., CALIFORNIA
PAYROLL GROUP, INC., VAHID
DAVID DELRAHIM, MARTIN
LIZARRAGA AND SHANNON
DELRAHIM

LITTLER MENDELSON, P.C.
333 BUSH STREET
34TH FLOOR
SAN FRANCISCO, CA  94104
415.433.1940

26.

DEFS' RESPONSE TO ORDER TO SHOW CAUSE